# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                )
JUDICIAL WATCH,                                  )
                                                )
                    Plaintiff                    )
                                                )
                                                ) Civil Action No. 07-0506 (RJL)
          v.                                     )
                                                )
U.S. DEPARTMENT OF HOMELAND                       )
SECURITY, et al.                                 )
                                                )
                    Defendants.                  )
_____)

### DEFENDANT UNITED STATES DEPARTMENT OF HOMELAND SECURITY'S MOTION FOR AN OPEN AMERICA STAY ON PLAINTIFF'S FOIA REQUEST

Defendant United States Department of Homeland Security ("DHS") hereby moves for a stay

of proceedings, pursuant to <u>Open America v. Watergate Special Prosecution Force</u>, 547 F.2d 605

(D.C. Cir. 1976).  The grounds for defendant's motion are set forth in the memorandum and

supporting declaration submitted herewith.  Pursuant to Local Rule 7(m), the undersigned counsel

has attempted to contact plaintiff's counsel Paul Orfanedes but was unable to discuss this motion

with him.  A proposed order is also attached.

Respectfully submitted,


____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


____/s/_____
QUAN K. LUONG
Special Assistant United States Attorney

555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | |
| JUDICIAL WATCH, | ) |
|  | ) |
| Plaintiff | ) |
|  | ) |
|  | ) Civil Action No. 07-0506 (RJL) |
| v. | ) |
|  | ) |
| U.S. DEPARTMENT OF HOMELAND | ) |
| SECURITY, et al. | ) |
|  | ) |
| Defendants. | ) |
| _____ ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNITED STATES DEPARTMENT OF HOMELAND SECURITY'S MOTION FOR AN OPEN AMERICA STAY ON PLAINTIFF'S FOIA REQUEST

## I. INTRODUCTION

Defendant United States Department of Homeland Security ("DHS") moves this Court for a stay of the proceedings pursuant to Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976).  As set forth more fully below, although defendant is exercising due diligence in responding to plaintiff's request under the Freedom of Information Act ("FOIA"), exceptional circumstances have prevented it from processing the request within the statutory time limit.  Pursuant to 5 U.S.C. § 552 (a) (6) (C), which provides for additional time under these circumstances, the Court should stay these proceedings until defendant DHS processes plaintiff's requests, which as explained herein, should be completely processed by May 2008.

3

## II.  STATEMENT OF FACTS

A.    Background

On or about January 24, 2007, plaintiff Judicial Watch, Inc., sent a FOIA request to the

Director of the Departmental Disclosure Unit for the Department of Homeland Security.

Declaration of Nikki Gramian, FOIA Paralegal for the United States Department of Homeland

Security, Office of Inspector General, Attachment A ("Gramian Decl.") at ¶11; *see also Compl at*

*¶7.*  By letter dated February 6, 2007, the DHS Departmental Disclosure Office indicated it had

determined that any responsive records would reside within the DHS Office of Inspector General

("OIG").  *Gramian Decl. at ¶12.*  Consequently, by memorandum dated February 6, 2007, the

DHS Departmental Disclosure Office referred Judicial Watch's FOIA request to OIG's FOIA

unit.  *Id.*  On February 13, 2007, OIG sent an acknowledgment letter to plaintiff, acknowledging

receipt of its FOIA request and informing plaintiff that its FOIA request had been placed in the

queue for processing in the order in which it was received.  *Gramian Decl. at ¶13*; *see also*

*Compl. at ¶10.*  On March 16, 2007, plaintiff filed the instant lawsuit against defendant DHS and

other parties seeking the production of any and all non-exempt records responsive to its FOIA

request and other related relief.  *Docket Entry 1.*

B.    Factual Basis for Open America Stay on FOIA Request

OIG has three different tracks for processing FOIA requests:  (1) expedited; (2) simple

(requests which do not involve voluminous records or lengthy consultations); and (3) complex

(voluminous records, lengthy consultations, sensitive records).  *Gramian Decl. at ¶6.*  Given the

nature of OIG's mission, its workload often involves complicated requests that implicate

multiple offices and require consultation with various DHS components, as well as other federal

4

agencies. *Gramian Decl. at ¶18*. In this case, OIG determined that the documents requested by plaintiff would require intra- and inter-agency consultations. *Gramian Decl. at ¶14*. OIG also learned that the criminal case referred to in plaintiff's FOIA request is being appealed and that some responsive documents may have been under seal by court order and thus would require a thorough review to ensure compliance with the court order. *Id*. As a result, plaintiff's request was placed into the complex track for processing. *Id*.

To ensure fairness and to equitably administer the FOIA/Privacy Act program, requests are processed within each track, on a "first in/first out" basis premised on the date the request is received. *Gramian Decl. at ¶¶ 6, 19*. This multi-tracking, coupled with the OIG's "first in/first out" policy, permits requests to be addressed in the order in which they are received, while obviating the inequities to other requesters whose interests relate only to a small number of documents. *Id*. Presently, the OIG unit has 105 requests pending open of which approximately fifty-nine are complex requests and forty-six are simple requests. *Gramian Decl. at ¶15*. Of the fifty-nine complex requests, plaintiff's request is number forty nine. *Id*.

Though the OIG's Office of Counsel is normally authorized and staffed with two FOIA paralegal specialists and an administrative officer, at the present time, there is only one paralegal presently in the OIG FOIA unit. *Gramian Decl. at ¶8*. The administrative officer left the agency in November 2006, and one of the two paralegal specialists left in February 2007. *Id*. In addition to the loss of staff, the OIG's FOIA workload has steadily increased since DHS was created in 2003. *Id*. In fiscal year ("FY") 2003, OIG received 23 FOIA requests; in FY 2004, 64 requests; and in FY 2005, OIG received 98 requests. *Id*. FY 2006 ended with another increase – 120 requests. *Id*. Finally, in just the first six months of FY 2007 alone, OIG has already received

218 requests. *Id*. Moreover, OIG investigations into several matters have been the focus of media attention in recent months, resulting in an increased demand for information from OIG. *Id*.

OIG has made a number of changes to its FOIA processing in order to reduce its backlog and response time. In the past year, OIG assigned a part-time attorney to head the FOIA staff, streamlined its FOIA response process with standardized language, and developed standard policies for FOIA issues that arise repeatedly in the OIG context. *Gramian Decl. at ¶ 9.*

OIG is also contracting to obtain a FOIA processor to address OIG's backlog. *Gramian Decl. at ¶9.* In January, 2007, OIG began drafting a statement of work to elicit contract proposals and issued a request for proposals seeking contractors to provide one or more FOIA specialists to assist in the processing of FOIA requests currently in OIG's backlog. *Id*. Responsive proposals were received and a contract awarded in early May, 2007. *Id*. On May 8, 2007, OIG received a request for security clearance on a contract employee proposed by the contractor. *Id*. The OIG Office of Security is now conducting a background investigation on the suitability of this proposed contractor. *Id*. In the meantime, on May 9, 2007, OIG requested that proposed contractor employees' resumes be submitted for OIG review/vetting. *Id*.

OIG is also in the process of hiring two more full-time paralegal specialists whose primary duties will be FOIA processing. *Gramian Decl. at ¶9.* The paralegal positions have been advertised and closed in March, 2007. *Id*. As of May 9, 2007, the Agency produced certificates of eligibles and Counsel to the Inspector General is currently reviewing them. *Id*. Defendant anticipates that the selection of the two paralegals will occur around the end of May, 2007. *Gramian Decl. at ¶15.* Due to the additional estimated time of six to eight weeks required

for a selectee(s) to receive interim security clearance and other normal delays (e.g. providing

notice to current employers), the earliest that defendant can reasonably anticipate an additional

paralegal or paralegals coming on board is mid-September. *Id*.

Given the resource constraints in the OIG FOIA office and the plaintiff's position in the

backlog, OIG estimates that it will take approximately eleven months to process the plaintiff's

FOIA request. *Gramian Decl. at ¶17*.

## III.  ARGUMENT

A.    Proceedings with Respect to Plaintiff's FOIA Request Should be Stayed Pending Further
      Order of the Court

An agency receiving a FOIA request generally must determine whether to comply with

the request within twenty working days.  5 U.S.C. § 552(a)(6)(A)(i).  However, the court may

"allow the agency additional time to complete its review of the records" upon a showing that

"exceptional circumstances exist and that the agency is exercising due diligence in responding to

the request."  Id. § 552(a)(6)(C)(i).  This provision "was designed and inserted specifically as a

safety valve for [FOIA]."  Open Am. v. Watergate Special Prosecution Force, 547 F.2d 605, 610

(D.C. Cir. 1976).

"Exceptional circumstances" permitting the granting of additional time do not include

delays resulting from a "predictable workload" of FOIA requests, "unless the agency

demonstrates reasonable progress in reducing its backlog of pending requests."  5 U.S.C.

§ 552(a)(6)(C)(ii).[1]  However, "exceptional circumstances" do include "any delays encountered in

---

[1]  The text of 5 U.S.C. § 552(a)(6)(C)(ii) reads:

(ii)  For purposes of this subparagraph [i.e., 552(a)(6)(C)], the term "exceptional
circumstances" does not include a delay that results from a predictable agency workload

responding to a request as long as the agencies are making good-faith efforts and exercising due diligence in processing requests on a first-in, first out basis." <u>Appleton v. FDA</u>, 254 F. Supp. 2d 6, 9 (D.D.C. 2003). In addition, "exceptional circumstances" include delays encountered when an agency is "'deluged with a volume of requests for information vastly in excess of that anticipated by Congress'"; "'the existing resources are inadequate to deal with the volume of such requests within the time limits of [5 U.S.C. § 552(a)(6)(A)]'"; and "'the agency can show that it is exercising due diligence in processing the requests.'" <u>Edmonds v. FBI</u>, 2002 WL 32539613, at *1 (D.D.C. Dec. 3, 2002) (quoting <u>Open Am.</u>, 547 F.2d at 616) (internal quotation marks omitted).

If a requester refuses to modify the scope of a request when given the opportunity to do so, the refusal "shall be considered a factor in determining whether exceptional circumstances exist." 5 U.S.C. § 552(a)(6)(C)(iii).[2] As President Clinton said when he signed the legislation enacting § 552(a)(6)(C)(iii): "[This legislation] establishes procedures for an agency to discuss with requesters ways of tailoring large requests to improve responsiveness. This approach explicitly recognizes that FOIA works best when agencies and requesters work together." Statement of the President Upon Signing H.R. 3802, 32 Weekly Comp. Pres. Doc. 1949 (Oct. 7,

---

of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

[2] The text of 5 U.S.C. § 552(a)(6)(C)(iii) reads:

(iii) Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing the request (or a modified request) under clause (ii) after given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exists for purposes of this subparagraph.

1996).

The issuance of orders extending the time for agencies to respond to FOIA requests is not uncommon. E.g., Piper v. U.S. DOJ, 2004 WL 2165930, at *1 (D.D.C. July 29, 2004) (discussing a stay of two years given to the FBI); Williams v. FBI, 2000 WL 1763680 (Nov. 30, 2000), at *3 (giving the FBI until May 2, 2001, to review records requested prior to August 21, 1998); Judicial Watch of Fla. v. U.S. DOJ, 102 F. Supp. 2d 6, 9 & n.1 (D.D.C. 2000) (discussing an order giving the FBI until June 8, 2000, to respond to a request dated July 15, 1997); Edmond v. U.S. Att'y, 959 F. Supp. 1, 4 (D.D.C. 1997) (giving the U.S. Attorney's Office until April 1, 1998, to respond to a request filed August 14, 1992); Rabin v. U.S. Dept. of State, 980 F. Supp. 116, 123-24 (S.D.N.Y. 1997) (granting DOS motion for Open America stay); Jiminez, 938 F. Supp. at 31 (four-year stay to process 700 pages); Ohaegbu v. FBI, 936 F. Supp. 7, 8 (D.D.C. 1996) (one-year stay to process 175 pages); Schweihs v. FBI, 93 F. Supp. 719, 721-22 (N.D. Ill. 1996) (exceptional circumstances justify four years to process undefined number of pages "over 1500"; dismissing action without prejudice). This Court, therefore, should join the numerous other courts granting Open America stays in situations such as this.

In this case, the issuance of an order extending the time for defendant DHS to respond to the plaintiff's FOIA request is fully warranted. Over these past few years, OIG's FOIA workload has steadily increased from 23 requests in FY 2003 to 64 requests in FY 2004 to 98 requests in FY 2005 to 120 requests in FY 2006 to 218 requests in FY 2007, to date. *Gramian Decl at ¶8.* The OIG currently has a large backlog of pending FOIA requests, including 48 requests in the "complex" category that were received prior to the date of plaintiff's request. *Gramian Decl. at ¶15.* OIG has worked diligently to respond to its requests, but its workload often involves

9

complicated requests that implicate multiple DHS components and federal Agencies. *Gramian Decl. at ¶18*. In this case, in fact, plaintiff's FOIA request implicates multiple components and requires internal coordination and review. *Id*. When fully staffed during FY 2006, the OIG FOIA office was able to close 154 requests. *Gramian Decl. at ¶15*. However, due to the unforeseen loss of two-thirds of its staff in the last six months (i.e. administrative officer and a second paralegal specialist), the OIG currently only has one paralegal to handle the backlog of FOIA requests, while at the same time attempting to deal with the large number of incoming requests. *Gramian Decl. at ¶8*. Given this volume of FOIA requests and the insufficient staff resources at OIG, exceptional circumstances are demonstrated in this case.

Defendant has also clearly exercised due diligence in attempting to address its backlog of FOIA requests on a "first-in, first out" basis. In the past year, OIG has assigned a part-time attorney to head the FOIA staff, streamlined its FOIA response process with standardized language, and developed standard policies for FOIA issues that arise repeatedly within OIG. *Gramian Decl. at ¶9*. OIG is also in the process of hiring two additional full-time paralegals and private contractors to assist with the FOIA requests. *Id*. OIG decided to hire two full-time paralegals, who will share the administrative duties, in lieu of hiring one full-time paralegal and administrative assistant, so that its office could dedicate more resources to FOIA processing. *Id*. All positions have been advertised or solicited and OIG expects to fill them shortly. *Id*. However, due to the background/clearance investigations that will be necessary for the selectees and other normal administrative delays, OIG does not anticipate such staff additions until mid-September, 2007. *Gramian Decl at ¶¶ 9, 17*.

In view of the foregoing, defendant DHS asks that an order be issued staying all

proceedings as to the FOIA request pending in this law suit pending such further order as the Court may issue.[3]

<u>CONCLUSION</u>

For the foregoing reasons, defendant DHS' motion for stay of proceedings should be granted.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

---

[3] Even if the Court were to find that defendant DHS has not demonstrated that it has exercised due diligence in exceptional circumstances, the Court nonetheless has the power to, and should, grant DHS additional time to process plaintiff's requests.  As Judge Leventhal noted in <u>Open America</u>, "there certainly is some room for a court in equity to stay its hand, and to forbear from enforcing a declared right in cases where the defendant is called upon to do the impossible." <u>Open America</u>, 547 F.2d at 620 (Leventhal, J., concurring).  Perhaps recognizing this latitude, even courts (outside of this Circuit) which had held "that a great number of requests, insufficient funding, and inadequate staff do not constitute 'exceptional circumstances,'" have not "ordered immediate responses to the FOIA requests." <u>Cohen v. FBI</u>, 831 F. Supp. 850, 853 (S.D. Fla. 1993).  <u>See</u> <u>also</u> <u>Califano v. Wampler</u>, 588 F. Supp. 1392, 1394-95 (N.D. Ill. 1984) (no reasonable remedy to address violation of 10-day response limit or to vindicate requester's rights; court "can only direct that defendants continue to work diligently and expeditiously in a good faith manner to respond to plaintiff's request").

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07CV00506 |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HOMELAND SECURITY, et al. | ) | |
| | ) | |
| Defendants | ) | |

## DECLARATION OF NIKKI GRAMIAN

I, Nikki Gramian, hereby declare and state as follows:

(1)  I am the Freedom of Information Act (FOIA) paralegal for the Department of
Homeland Security (DHS), Office of Inspector General (OIG) in Washington, D.C.
20528. I assumed this position in October 2005.

(2)  Before joining DHS/OIG, I was a FOIA paralegal at the Department of Justice,
Executive Office for U.S. Attorneys from November 1999 through February 2005.  Prior
to joining the Federal Government, I worked in various private law firms as a litigation
paralegal.

### DHS/OIG Freedom of Information Office

(3)      My primary duties at DHS/OIG involve the day to day activities of the
FOIA/Privacy Act unit, including the administrative functioning of the FOIA unit as well
as processing FOIA requests received by all OIG offices.  In addition to processing FOIA
requests, I review completed audit, inspection, and other OIG reports for website posting;

assist in responding to Congressional and media requests; and perform legal research as needed.

(4)    With respect to processing of FOIAs, I request that relevant offices conduct a search for responsive records, and I process records received from the OIG's Office of Investigations, Office of Audits, Office of Inspections, Office of Information Technology (IT) Audits, Office of Administration, the Front Office (Inspector General and Deputy Inspector General), and the newly formed Office of Disaster Assistance Oversight. Consequently, I am familiar with procedures followed by DHS/OIG in responding to requests for information from its files pursuant to the FOIA. I make this declaration on personal knowledge and on information I have received in the performance of my official duties.

## OIG FOIA Processing

(5) Within OIG, I process FOIA requests by determining which office(s) within OIG may have responsive documents. If I determine the requested records are documents within OIG's purview, I open a case file and log the request into OIG's FOIA database. The request then becomes part of the OIG FOIA staff's workload. I also handle various initial tasks for FOIA processing, including sending letters to acknowledge requests and advising requesters when no responsive records are located. These include tasks to "perfect" a FOIA/Privacy Act request, including advising a requester to verify his or her identity by submitting a notarized signature/Privacy Act waiver or a Certificate of Identity. A request is considered "perfected" when all administrative tasks have been completed and all responsive documents have been located. Once a request has been "perfected," it is placed in the queue for processing. I then request searches be

accomplished in the appropriate OIG offices for identifiable records, confirm responsive documents, address fee issues and expedited review requests, and respond to status inquiries.

(6)  After the search is completed, I determine to which track to assign the request based on the records requested and nature of the request.[1] OIG has three tracks – expedited, simple (requests which do not involve voluminous records or lengthy consultations), and complex (voluminous records, lengthy consultations, sensitive records).  To ensure fairness and to equitably administer our FOIA/Privacy Act program, requests are processed within each track, on a "first in/first out" basis premised on the date the request is received.  This multi-tracking, coupled with the OIG's "first in/first out" policy, permits requests to be addressed in the order in which they are received, while obviating the inequities to other requesters whose interests relate only to a small number of documents. As a customer service and to promote efficiency, OIG also telephones, writes, or emails individuals whose requests have been placed in the complex track, to inquire whether they wish to reduce the scope of their requests and thereby accelerate their requests by relocating them into a more advantageous queue.

(7)  I am also responsible for processing decisions that include the line-by-line, word-by-word examination of responsive records.  If a request is determined to be a high profile matter involving other DHS Components or one that will necessitate consultation with many other DHS Components, I also am responsible for coordinating and/or consulting with those Components to assure consistency of response.

---

[1] See 5 U.S.C. § 552(a) (6) (D) (i) and 6 C.F.R. § 5.5.

## OIG's Backlog

(8) Presently, I am the only paralegal in the OIG Office of Counsel and the FOIA unit. The Office of Counsel is authorized two FOIA Paralegal Specialists and an Administrative Officer. The Office of Counsel's Administrative Officer left the agency in late November 2006, and one of OIG's two Paralegal Specialists left in February 2007. Additionally, OIG's FOIA workload has steadily increased since the Department of Homeland Security was created in 2003. In Fiscal Year (FY) 2003, OIG received 23 requests; in FY 2004, 64 requests; and in FY 2005, OIG received 98 requests. FY 2006 ended with another increase— 120 requests. Finally, in just the first six months of FY 2007 alone, OIG has already received 218 requests. While the number of incoming requests has escalated dramatically, because of attrition, staffing has not been sufficient to handle the demand. Moreover, OIG investigations into several matters have been the focus of media attention in recent month, resulting in an increased demand for information from OIG.

(9) OIG has made a number of changes to its FOIA processing in order to reduce its response time. In the past year, OIG has assigned a part-time attorney to head the FOIA staff; streamlined its FOIA response process with standardized language; and developed standard policies for FOIA issues that arise repeatedly in the OIG context. OIG is also in the process of hiring two full-time Paralegal Specialists whose primary duties will be FOIA processing, to replace the employee who left in February 2007. OIG is also contracting to obtain a FOIA processor to work on the OIG backlog. These hiring actions are pending as follows:

4

- OIG is planning to hire two full-time paralegals, who will share the administrative duties, in lieu of hiring one full time paralegal and one Administrative Assistant. We believe this will enable our office to dedicate more resources to FOIA processing.

- The full-time Paralegal positions have been advertised and closed in March of 2007. As of May 9, 2007, Certificates of Eligibles have been produced and are currently under review by the Counsel to the Inspector General.

- OIG's hiring of a FOIA contractor is also in process. OIG began drafting a Statement of Work to elicit contract proposals in January of 2007. A request for proposals was issued seeking contractors to provide one or more FOIA specialists to assist in the processing of FOIA requests currently in OIG's backlog. Responsive proposals were received and a contract awarded in early May 2007. On May 8, 2007, OIG received a request for security clearance on a contract employee proposed by the contractor but not yet vetted by OIG. The OIG Office of Security is now conducting a background investigation on the suitability of this proposed contractor. In the meantime, OIG requested on May 9, 2007, that proposed contractor employees' resumes be submitted for OIG review/vetting.

Any personnel brought onboard by OIG for FOIA processing – including contractors and permanent employees – must have proper security clearances, a requirement which can considerably slow the contracting/hiring process. Therefore, it may take several months (especially where the new hire has no security clearance) before the FOIA unit actually has the necessary additional staff on board.

(10) With this new staff, OIG will continue its progress in reducing its backlog on a first-

in, first-out principle. When at full staff during the FY 2006, we were able to close 154

requests. We have closed all requests from FY 2003 and 2004. We anticipate

significant and continued progress in reducing our backlog.

### Judicial Watch, Inc. January 24, 2007 FOIA Request

(11) Plaintiff Judicial Watch, Inc. ("Judicial Watch") submitted a FOIA request to the

Director of the Departmental Disclosure Unit for the Department of Homeland Security.

Judicial Watch enumerated three specific requests in its FOIA request:

> (1)    Communications between DHS (and its subordinate agencies) and any
> officers, agencies and/or representatives of the Government of Mexico concerning
> Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of
> U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean
> over a shooting incident in Texas on February 17, 2005;

> (2)    Communications between DHS and the U.S. Department of Justice (to
> include the Office of U.S. Attorney Johnny Sutton of the Western District of
> Texas) and/or the Department of State concerning Osbaldo Aldrete-Davila, a
> Mexican national who testified in the prosecution of U.S. Border Patrol Agents
> Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting incident in
> Texas on February 17, 2005.

> (3)    The Participation of DHS personnel in coordinating, facilitating and/or
> approving the lawful entry (ies) of Osbaldo Aldrete-Davila into the United States
> (reportedly for the last time in February 2006). Mr. Aldrete-Davila reportedly
> entered the United States lawfully (with the approval of the U.S. Government) to
> obtain medical treatment, meet with federal investigators and to testify in court in
> El Paso, Texas.

Judicial Watch also requested waiver of both search and duplication fees. (A copy of this

request letter is appended to this declaration as Attachment A).

(12) By letter dated February 6, 2007, to Judicial Watch, the DHS Departmental

Disclosure Office indicated it had determined that any responsive records would reside

within the DHS Office of Inspector General. (Attachment B) Consequently, by

memorandum dated February 6, 2007, the DHS Departmental Disclosure Office referred

Judicial Watch's FOIA request to OIG's FOIA unit. (Attachment C.)

(13) On February 13, 2007, OIG sent an acknowledgment letter to Judicial Watch, acknowledging receipt of its FOIA request, assigned tracking number 2007-47 to the request, and informing Judicial Watch that its FOIA request had been placed in the queue for processing in the order in which it was received.  In its acknowledgment letter, OIG also granted Judicial Watch's request for a fee waiver.  (Attachment D).

## Action on the Judicial Watch Request

(14) Our office received the Judicial Watch FOIA request via electronic mail from the DHS Departmental Disclosure Unit on February 7, 2007.  I reviewed the content of the plaintiff's FOIA request, and determined documents responsive to this request would be located at OIG's Office of Investigations in El Paso, Texas.  I requested a search from this office to provide the documents enumerated in Plaintiff's request.  The documents requested require intra- and inter-agency consultations.  Additionally, I have been informed that the criminal case which is referred to in Judicial Watch's request is being appealed.  I am also aware that some of the documents, which may be responsive to Judicial Watch's request, have been placed under seal by court order, and will require a thorough review to ensure compliance with the court order. As a result, this request has been placed in the complex track for processing.

(15) Currently, the OIG FOIA unit has 105 requests pending open of which approximately 59 are complex requests and 46 are simple requests.  Of the 59 complex requests, plaintiff's request is number 49. We cannot predict precisely when the two Paralegals or a FOIA contractor will be able to enter on duty.  Selections of the two Paralegals are not anticipated until end of May.

7

(16)    After a selectee is identified, it takes approximately 6-8 weeks, assuming no

security issues are identified, for the individual to receive an interim clearance. Only

after an interim clearance is received can a formal offer be extended. An individual is

permitted to enter on duty with an interim clearance, and while most do so, their

continued employment is contingent upon the satisfactory completion of the background

investigation, which can take several additional months. Assuming an individual accepts

the offer contingent on the continued processing of their clearance, the selectee then must

provide notice to their current employer, typically two to four weeks.

(17) Thus, the earliest we can reasonably predict a second paralegal would be on-board

would be mid-September. Based on our resource constraints and plaintiff's place in the

backlog, our office foresees a delay in the completion of processing this FOIA request of

approximately eleven additional months.

(18) Our office has made a concerted effort to address its FOIA workload through policy,

process, and staff changes, including our ongoing recruiting of additional staff. We have

also worked diligently to respond to the requests we have received. Because of the nature

of OIG's mission, however, our workload often involves complicated requests that

implicate multiple offices, thereby requiring consultation with multiple DHS

Components, as well as other Federal agencies. In this case, in fact, the responsive

documents implicate multiple components that will require, at a minimum, internal

coordination and review. We are committed to providing as thorough a response as

possible to this and every FOIA request, but given the number of pending FOIA requests

ahead of plaintiff's, the significant workload of the agency generally, and the substantial

FOIA workload of the OIG FOIA unit, I believe that a stay of these proceedings to allow

8

for the orderly processing of this document-intense request is warranted.

(19) There are other FOIA requesters that deem their requests to be of equal urgency and are ahead of Judicial Watch in the queue. The first-in-first-out process for handling such requests was established out of necessity as a fair and reasonable means by which to manage FOIA caseloads. While extenuating circumstances may and often do arise, I believe it is important to preserve the orderly nature of this processing standard in order to treat all FOIA requesters equitably and in a way that does not encourage litigation. Permitting this request or any other one to be processed ahead of those now in line simply because the plaintiff has filed suit would send the wrong message to the FOIA community and potentially clog the courts with lawsuits. For these reasons, I believe a stay of these proceedings for one year, to allow for the orderly completion of the work on plaintiff's request, is necessary and appropriate. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Signed this 14th day of May 2007.

Nikki Gramian



# Judicial Watch

*Because no one is above the law!*

January 24, 2007

**VIA CERTIFIED MAIL & FAX (571-227-1125)**
Catherine M. Papoi
Director, Departmental Disclosure, D-3
U.S. Department of Homeland Security
601 South 12th Street
Arlington, VA 22202

### Re: Freedom of Information Act Request

Dear Ms. Papoi:

Pursuant to the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Judicial Watch, Inc. hereby requests that the U. S. Department of Homeland Security (DHS) produce any and all agency records concerning the following subjects within twenty (20) business days:

1. Communications between DHS (and its subordinate agencies) and any/all officers, agencies and/or representatives of the Government of Mexico concerning Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting incident in Texas on February 17, 2005.

2. Communications between DHS and the U. S. Department of Justice (to include the Office of U.S. Attorney Johnny Sutton of the Western District of Texas) and/or the Department of State concerning Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting incident in Texas on February 17, 2005.

3. The participation of DHS personnel in coordinating, facilitating and/or approving the lawful entry(ies) of Osbaldo Aldrete-Davila into the United States (reportedly for the last time in February 2006). Mr. Aldrete-Davila reportedly entered the United States lawfully (with the approval of the U.S. Government) to obtain medical treatment, meet with federal investigators and to testify in court in El Paso, Texas.

---

501 School Street, SW · Suite 725 · Washington, DC 20024 · Tel: (202) 646-5172 · Fax: (202) 646-5199

Declaration - Att A

**Department of Homeland Security**
**FOIA Request**
**January 24, 2007**
**Page 2 of 7**

The timeframe for this request is February 17, 2005 through the present.

For purpose of this request, the term "record" shall mean: (1) any written, printed, or typed material of any kind, including without limitation all correspondence, memoranda, notes, messages, letters, cards, telegrams, teletypes, facsimiles, papers, forms, records, telephone messages, diaries, schedules, calendars, chronological data, minutes, books, reports, charts, lists, ledgers, invoices, worksheets, receipts, returns, computer printouts, printed matter, prospectuses, statements, checks, statistics, surveys, affidavits, contracts, agreements, transcripts, magazine or newspaper articles, or press releases; (2) any electronically, magnetically, or mechanically stored material of any kind, including without limitation all electronic mail or e-mail, meaning any electronically transmitted text or graphic communication created upon and transmitted or received by any computer or other electronic device, and all materials stored on compact disk, computer disk, diskette, hard drive, server, or tape; (3) any audio, aural, visual, or video records, recordings, or representations of any kind, including without limitation all cassette tapes, compact disks, digital video disks, microfiche, microfilm, motion pictures, pictures, photographs, or videotapes; (4) any graphic materials and data compilations from which information can be obtained; (5) any materials using other means of preserving thought or expression; and (6) any tangible things from which data or information can be obtained, processed, recorded, or transcribed. The term "record" also shall mean any drafts, alterations, amendments, changes, or modifications of or to any of the foregoing.

**If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172.**

If any responsive record or portion thereof is claimed to be exempt from production under FOIA, please provide sufficient identifying information with respect to each allegedly exempt record or portion thereof to allow us to assess the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). In addition, any reasonably segregable portion of a responsive record must be provided, after redaction of any allegedly exempt material. 5 U.S.C. § 552(b).

Judicial Watch also hereby requests a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).

Judicial Watch is entitled to a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it is a member of the news media. Judicial Watch, Inc. regularly obtains information about the operations and activities of government through FOIA and other means, uses its editorial skills to turn this information into distinct works, and publishes and disseminates these works to the public. It intends to do likewise with the records it receives in response to this request.

**Department of Homeland Security**
**FOIA Request**
**January 24, 2007**
**Page 3 of 7**

As a member of the news media, Judicial Watch uses the following means, among others, to publish and disseminate its distinctive work to the public:

(1)     Judicial Watch maintains an Internet site, www.JudicialWatch.org, where the public can review records obtained through FOIA and read editorial works prepared by Judicial Watch, Inc., including news releases, based on FOIA materials. This website is viewed by over 20,000 people per day on average, and on several occasions, has logged up to 1,000,000 visitors in a single day.

(2)     Judicial Watch also publishes a monthly newsletter in which it publishes its own editorial works and presents, analyzes, and explains information it obtains through FOIA. Judicial Watch, Inc.'s newsletter is sent to approximately 140,000 individuals each month. The organization also utilizes an e-mail Infonet service that sends out updates of Judicial Watch's activities over the Internet to almost 18,000 persons.

(3)     Judicial Watch also periodically publishes and disseminates its own distinct works in the form of books and reports. For example:

- September 1998 – Judicial Watch, Inc. published the Interim Report on Crimes and Other Offenses Committed by President Bill Clinton Warranting His Impeachment and Removal from Elected Office. This 145-page report was accompanied by nearly 4,000 pages of supporting documentation and was crafted, in part, from the raw materials obtained by Judicial Watch through FOIA requests, among other regular means.

- August 1999 – Judicial Watch published Filegate Status Report, which is 136 pages long and is supported by nearly 1000 pages of documentation.

- March 2001 – Judicial Watch published The Judicial Watch Florida Recount, an independent, non-partisan analysis of the results of Florida's hotly contested 2000 Presidential election based upon a sampling of ballots reviewed by Judicial Watch pursuant to Florida's version of FOIA.

- February 2002 – Judicial Watch published The Judicial Watch 2002 "State of the Union" Report, Bush Administration Ethics Enforcement: "A Failure of Leadership."

- September 2002 – Judicial Watch published Fatal Neglect: The U.S. Government's Continuing Failure to Protect American Citizens from Terrorists.

- November 21, 2003 – Judicial Watch produced Analysis of GAO Testimony: US Postal Service – Clear Communication With Employees Needed Before

Department of Homeland Security
FOIA Request
January 24, 2007
Page 4 of 7

Reopening of Brentwood Facility. (GAO-04-2057T/October 23, 2003).
Comptroller General of the United States David M. Walker, in a reply to Judicial
Watch's Analysis of GAO Testimony, wrote on December 17, 2003, "We view
Judicial Watch as an important accountability organization in Washington, D.C."

- June 29, 2005 – Judicial Watch produced a special Report US Border Patrol
  Survey Analysis, an analysis of documents produced under FOIA.
  http://www.judicialwatch.org/borderpatrolreport.shtml

- February 3, 2006 – Judicial Watch held an educational panel at the National Press
  Club and published a Special Report of the event, "A Discussion of Ethics in
  Washington."
  http://www.judicialwatch.org/archive/2006/special-report-ethics.pdf

- May 9, 2006 – Judicial Watch produced The Clinton RU-486 Files, a special
  report of the Clinton administration's effort to put the abortion drug RU-486 on
  the market in the United States, based on documents obtained from the National
  Archives at the Clinton Presidential Library and in the course of a five year FOIA
  litigation battle between Judicial Watch and the U.S. Food and Drug
  Administration (FDA). http://judicialwatch.org/archive/2006/jw-ru486-report.pdf

- June 15, 2006 – Judicial Watch publishes "Jesse Jackson Exposed," a special
  report details the intimidation and shakedown tactics of Jackson's so-called civil
  rights organization, the Rainbow Push Coalition.
  http://judicialwatch.org/archive/2006/jackson-report.pdf

- October 30, 2006 – Judicial Watch releases a special report "*Academia Semillas
  del Pueblo* (Seeds of the People Academy): Training the Next Generation of
  Mexican Revolutionaries with American Tax Dollars." The report includes
  excerpts of new documents obtained by Judicial Watch through the California
  Public Records Act that highlight the school's radical agenda.
  http://www.judicialwatch.org/archive/2006/SR_academia%20semillas.pdf

- November 27, 2006 – Judicial Watch publishes New Clinton White House
  Records Raise Disturbing Questions about Hillary Clinton and Abortion. Judicial
  Watch's report includes excerpts of new documents obtained by Judicial Watch
  from the Clinton Presidential Library in Little Rock, Arkansas.
  http://www.judicialwatch.org/archive/2006/SR_Clinton%20abortion.pdf

Judicial Watch also publishes and disseminates its distinctive work by
participating in public conferences and seminars, including its own "Ethics in
Government" conferences held in Pasadena, California (1999), Washington, DC (2000),
and Miami, FL (2001).

Department of Homeland Security
FOIA Request
January 24, 2007
Page 5 of 7

Judicial Watch hold quarterly education panels at the National Press Club in Washington DC that have been televised by C-SPAN. Past panel discussions have been: "Defining 'Judicial Activism' in the Context of the Culture Wars," "A Discussion of Ethics in Washington," "The Case for Open Government," "Conservative Perspectives on the Alito Nomination," "The Role of Grassroots Groups in the Supreme Court Nominating Process," "New Fronts in the Immigration Battle," and "How to Fight Corruption in Government."

Judicial Watch also works with other media organizations to publish and disseminate distinctive work to the public, and representatives of Judicial Watch appear frequently on nationally broadcast television and radio programs. Judicial Watch has been granted press credentials at a number of national conventions and other events.

On February 16, 2005, Judicial Watch was rated by the highly respected capitol newspaper *The Hill* as being on of the nation's top ten "watchdogs."

Consequently, Judicial Watch qualifies for a waiver of search fees as a member of the news media. See *National Security Archive v. U.S. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). In fact, Judicial Watch has been recognized as a member of the news media in other FOIA litigation. See *Judicial Watch, Inc. v. U.S. Department of Justice*, 133 F. Supp.2d 52 (D.D.C. 2000); and, *Judicial Watch, Inc. v. Dep't of Defense*, 2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006).

Judicial Watch also is entitled to a complete waiver of both search fees and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Under this provision, records:

> shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii).

Judicial Watch is a 501(c)(3), not-for-profit, educational organization, and, by definition, it has no commercial purpose. Judicial Watch exists to educate the public about the operations and activities of government, as well as to increase public understanding about the importance of ethics and the rule of law in government. The particular records requested herein are sought as part of Judicial Watch ongoing efforts document the operations and activities of the federal government and to educate the public about these operations and activities. As part of its Transparency Project, Judicial Watch is investigating the Aldrete-Davila shooting and the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean .

Department of Homeland Security
FOIA Request
January 24, 2007
Page 6 of 7

Courts applying the "public interest" fee waiver provision of FOIA typically take into account four factors in determining whether to grant a waiver: (1) whether the subject of the requested records concerns the operations or activities of government; (2) whether disclosure of the requested records is likely to contribute to an understanding of government operations or activities; (3) whether disclosure of the requested records will contribute to a "reasonably broad" audience and whether the requestor has the "ability and intention" to disseminate the information to the public; and (4) whether disclosure of the requested record will contribute "significantly" to the public understanding. See *D.C. Technical Assistance Org. v. HUD*, 85 F. Supp.2d 46, 48-49 (D.D.C. 2000); 28 C.F.R. § 16.11(k)(2)(i)-(iv). Request for "public interest" waivers are to be judged on a case-by-case basis." *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988).

Without question, the subject-matter of the request concerns the operations and activities of government, namely details of DHS involvement in the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean; as well as diplomatic efforts to facilitate Mr. Aldrete-Davila's lawful entry and exit to/from the United States.

Disclosure of the requested records is likely to contribute to an understanding of government operations and activities and will appeal to a "reasonably broad" audience, as the prosecution of Agents Ramos and Compean has been featured on dozens of national news media outlets (print, TV, radio and Internet) as a headline story for weeks. There is keen interest by the American public in the government's exercise of discretionary powers in prosecuting border-related issues – especially with respect to law enforcement officers.

Indeed, the American public deserves full disclosure of the details of DHS activities with respect to Mr. Aldrete-Davila and the prosecution of Agents Ramos and Compean. As reported in the press, Mr. Aldrete-Davila is a known drug smuggler whose testimony was necessary to convict the two agents. DHS actions concerning Mr. Aldrete-Davila are of enormous interest to the American public.

In light of the enormous public debate over border security and illegal immigration in America and the presence of undocumented persons in the country, as well as security concerns for goods and objects being brought into America, full disclosure of these requested records would obviously be of interest to a "reasonably broad" audience of people.

Once Judicial Watch obtains the requested records, it intends to analyze them and disseminate the results of its analysis, as well as the records themselves, as a special written report. Judicial Watch will also educate the public via radio programs, Judicial Watch's website, and/or newsletter, among other outlets. It also will make the records available to other members of the media or researchers upon request. Judicial Watch has a proven ability to disseminate information obtained through FOIA to the public, as

**Department of Homeland Security**
**FOIA Request**
**January 24, 2007**
**Page 7 of 7**

demonstrated by its long-standing and continuing public outreach efforts, including radio and television programs, website, newsletter, periodic published reports, public appearances, and other educational undertakings.

Finally, disclosure of the requested records will contribute significantly to the public's understanding because relatively little is known about DHS involvement with Mr. Aldrete-Davila. Likewise, the impact of DHS work on the prosecution of Agents Ramos and Compean is not well known or understood by the general public. Without question the records requested by Judicial Watch will shed further light on this important matter.

Given these compelling circumstances, Judicial Watch is entitled to a public interest fee waiver of both search costs and duplication costs. Nonetheless, in the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch is willing to pay up to $350.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

We look forward to receiving the requested documents and a waiver of both search and duplication costs within twenty (20) business days. We take the statutory deadlines of the Freedom of Information Act very seriously -- as does the Archivist of the United States:

**"Let's face it, access delayed is access denied."**
Dr. Allen Weinstein
Ninth Archivist of the United States
National Archives and Records Administration
September 26, 2006
American Society of Access Professionals Keynote Speech
Washington, DC

Thank you for your cooperation.

Sincerely,

Christopher J. Farrell
Director of Investigations & Research

**Lockett, Vania**

| | |
|---|---|
| **From:** | Chris Farrell [cfarrell@judicialwatch.org] |
| **Sent:** | Wednesday, January 24, 2007 4:07 PM |
| **To:** | FOIA |
| **Subject:** | FOIA Request |
| **Attachments:** | DHSMexGovComReUSBPAgents.pdf |

RECEIVED
JAN 24 2007
By _____

A copy of this request was faxed to your office earlier today – however, I understand there was a problem wi
the first two pages transmitted. Thanks for following-up with us.
Best regards,
Chris

Christopher J. Farrell
Director of Investigations & Research
Judicial Watch, Inc.
501 School Street, SW
Washington, DC 20024
Tel: 202-646-5172
Fax: 202-646-5199
www.JudicialWatch.org

* * * CONFIDENTIALITY STATEMENT * * *
This message is intended only for the use of the addressee and may contain information that is privileged and confidential. If you
are not the intended recipient, you are hereby requested not to disseminate this communication and destroy it. If you have received
this communication in error, please notify us immediately by telephone at the number shown above. Thank you.

U.S. Department of Homeland Security
Arlington, Virginia 22202



**Homeland Security**

*Privacy Office DHS-D3*

February 6, 2007

Mr. Christopher Farrell
Judicial Watch
501 School Street, SW
Suite 725
Washington, DC 20024

Re:  **DHS/OS/PRIV 07-407/Farrell request**

Dear Mr. Farrell:

This is to advise you of further action taken on your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), dated January 24, 2007, seeking records created from February 17, 2005 to the present, relating to the following:

1. Communications between DHS (and its subordinate agencies) and any/all officers, agencies and/or representatives of the Government of Mexico concerning Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting incident in Texas on February 17, 2005.

2. Communications between DHS and the U.S. Department of Justice (DOJ), including the Office of U.S. Attorney Johnny Sutton and/or the Department of State concerning Osbaldo Aldrete-Davila.

3. The participation of DHS personnel in coordinating, facilitating and/or approving the lawful entries of Osbaldo Aldrete-Davila into the United States.

Our January 31, 2007 letter advised you that we would search the DHS Executive Secretariat and that we were referring your request to the United States Citizenship & Immigration Services National Records Center to be processed for records within the U.S. Border Patrol.

We have since learned that all records responsive to your request will reside within the DHS Office of the Inspector General (OIG). Any records that may have originated within the U.S. Border Patrol would have already been transferred to the OIG. Accordingly, I am referring your request to the OIG for processing and direct response to you. Should you wish to contact the OIG directly, you may write to U.S. Department of Homeland Security, Office of the Inspector

*Declaration – Att B*

General, 245 Murray D  e, Bld. 410, Mail Stop – 2600, Washington, D.C. 20  8 or you may contact that office via t  phone at 202- 254-4001.

This constitutes the final action of this office.  If you have any questions or conce ms regarding this action, you may contact this office at 571-227-3813.

Sincerely,

Vania T. Lockett
Associate Director, Disclosure & FOIA Operations

U.S. Department of Homeland Security
Arlington, Virginia 22202



*Privacy Office DHS-D3*

February 6, 2007

MEMORANDUM FOR:  Nikki Gramian, FOIA Officer, OIG

FROM:            Vania T. Lockett
                 Associate Director, Disclosure & FOIA Operations

SUBJECT:         **DHS/OS/PRIV 07-407/Farrell request**

Attached is a FOIA request received at the DHS FOIA Officer.  The requester is seeking records created from February 17, 2005 to the present, relating to the following:

1.  Communications between DHS (and its subordinate agencies) and any/all officers, agencies and/or representatives of the Government of Mexico concerning Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting incident in Texas on February 17, 2005.

2.  Communications between DHS and the U.S. Department of Justice (DOJ), including the Office of U.S. Attorney Johnny Sutton and/or the Department of State concerning Osbaldo Aldrete-Davila.

3.  The participation of DHS personnel in coordinating, facilitating and/or approving the lawful entries of Osbaldo Aldrete-Davila into the United States.

Per conversation between Richard Reback and Catherine Papoi, Director, Disclosure & FOIA, it was determined that OIG would take the lead on response to such requests.  Accordingly, I am transferring this request to your office for direct response to the requester.

The requester has been notified of this transfer.  A copy of the transmittal letter is attached.

Declaration - Att C

*Office of Inspector General*

**U.S. Department of Homeland Security**
Washington, DC 20528



# Homeland Security

Mr. Christopher J. Farrell
Director of Investigations & Research
Judicial Watch
501 School Street, S.W., Suite 725
Washington, D.C. 20024

**FEB 1 3 2007**

SUBJECT:  Freedom of Information Act File No. 2007-58

Dear Mr. Farrell:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request dated January 24, 2007, which was received by this office on February 7, 2007. The Office of Inspector General (OIG) for the Department of Homeland Security (DHS) has assigned the above-referenced FOIA tracking number to your request.

Your request has been placed in the queue for processing in the order in which it was received. Simple requests are answered more quickly and will be placed on the fast track of our multi-track processing system. More complex requests, including those calling for a particularly large volume of records, are segregated into a group designated as Project Requests. These require significantly more processing time and are processed separately in the order in which received. Unfortunately, we cannot predict exactly when your request will be processed, as we currently have a backlog of such requests. The OIG is devoting additional staff and resources to reducing this backlog and using its best efforts to process all requests with due diligence on a first-in, first-out basis. We appreciate your patience.

As to your fee waiver request, please be advised that OIG is granting your request to waive fees. If you have any questions, you may contact me at (202) 254-4001. Thank you.

Sincerely,

Nikki Gramian
Paralegal Specialist
Office of Inspector General

*Declaration — Att. D*