**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  07-0506 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, *et al.* | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT U.S. DEPARTMENT OF
HOMELAND SECURITY'S MOTION FOR AN *OPEN AMERICA* STAY**

Plaintiff, Judicial Watch, Inc. ("Judicial Watch"), respectfully submits this opposition to

Defendant U.S. Department of Homeland Security's ("DHS") motion for an *Open America* stay.

As grounds therefor, Judicial Watch states as follows:

**MEMORANDUM OF LAW**

I.    **Introduction.**

On January 24, 2007, Judicial Watch sent a FOIA request to DHS seeking access to the

following records:

    a.    Communications between DHS (and its subordinate
          agencies) and any/all officers, agencies and/or
          representatives of the Government of Mexico concerning
          Osbaldo Aldrete-Davila, a Mexican national who testified
          in the prosecution of U.S. Border Patrol Agents Ignacio
          "Nacho" Ramos and Jose Alonso Compean over a shooting
          incident in Texas on February 17, 2005.

    b.    Communications between DHS and the U.S. Department of
          Justice (to include the Office of U.S. Attorney Johnny
          Sutton of the Western District of Texas) and/or the
          Department of State concerning Osbaldo Aldrete-Davila, a
          Mexican national who testified in the prosecution of U.S.
          Border Patrol Agents Ignacio "Nacho" Ramos and Jose

Alonso Compean over a shooting incident in Texas on February 17, 2005.

c.      The participation of DHS personnel in coordinating, facilitating and/or approving the lawful entry(ies) of Osbaldo Aldrete-Davila into the United States (reportedly for the last time in February 2006). Mr. Aldrete-Davila reportedly entered the United States lawfully (with the approval of the U.S. Government) to obtain medical treatment, meet with federal investigators and to testify in court in El Paso, Texas.

Judicial Watch also sent substantially similar FOIA requests to Defendant U.S. Department of Justice ("DOJ") and Defendant U.S. Department of State ("DOS") on that same date. DHS acknowledged receipt of Judicial Watch's FOIA request by letter dated January 31, 2007. By letter dated February 13, 2007, DHS granted Judicial Watch a fee waiver. However, as of March 16, 2007, DHS failed to produce records responsive to Judicial Watch's request. Neither DOJ nor DOS produced records.

On or about April 18, 2007, the parties respective counsel began negotiating dates for Defendants DHS, DOJ and DOS to respond to Judicial Watch's FOIA requests. Nonetheless, at the time of Defendants' counsel's first communication with Judicial Watch, only DOS had Judicial Watch's request in queue, the status of DHS was unknown and DOJ was unable at the time to even locate the request. Judicial Watch advised Defendants' counsel that it was amenable to allowing Defendants a reasonable amount of additional time in which to search for and produce all non-exempt responsive records. In fact, Judicial Watch sent a draft stipulation and agreed order to Defendants' counsel to that effect. Over the next month or so, the parties worked towards identifying mutually agreeable processing dates for the agencies to respond to

Judicial Watch's requests.  DHS' motion for an *Open America* stay abruptly ended those

negotiations, at least in terms of DHS.

## II.    Argument.

### A.    DHS' Failure to Comply with Local Rule 7(m).

Local Civil Rule 7(m) requires a party filing any nondispositive motions in a civil action

to "discuss the anticipated motion with opposing counsel, either in person or by telephone, in a

good-faith effort to determine whether there is any opposition to the relief sought and, if there is

opposition, to narrow the areas of disagreement."  LcvR 7(m).  The purpose of Rule 7(m) is "'for

litigants to attempt to resolve, or ... narrow, the disputed issues to prevent unnecessary waste of

time and effort on any given motion,' not 'to simply determine whether the motion will be

opposed.'" *Canady v. Elektromedizin*, 271 F. Supp. 2d 64, 75 (D.D.C. 2002) (quoting *Alexander

v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999)).  Rule 7(m) requires a good-faith effort, which

means the parties must take "real steps to confer;" the rule is not satisfied by "perfunctory

action."  *United States ex rel. K & R Limited Partnership v. Massachusetts Housing Fin. Agency*,

456 F. Supp. 2d 46, 52 (D.D.C. 2006).

DHS performed only a perfunctory act toward satisfying a rule it referred to as "just a

formality."[1]  When Judicial Watch received the email notification of DHS' motion for an *Open

America* stay on May 21, 2007, counsel for Judicial Watch, Meredith Di Liberto, was surprised,

as she had received no communication from DHS prior to the filing.  Ms. Di Liberto was

particularly surprised due to the fact that she had spoken with counsel for DHS, Quan Luong, on

---

[1]    On May 22, 2007, during a telephone conversation with DHS counsel Quan
Luong, Mr. Luong referred to Rule 7(m) as being "just a formality."

or about May 17, 2007 regarding DHS' request for additional time to process the FOIA request, and, in fact, had extended an offer of additional time to Mr. Luong's client at that time.

After looking into the matter, it was discovered that DHS attempted to contact Judicial Watch attorney Paul J. Orfanedes on May 21, 2007, but was told he was out of town. Mr. Luong, knowing that Mr. Orfanedes was out of town, and knowing there was an outstanding stipulation offer on the table from Judicial Watch, chose to send an email to Mr. Orfanedes rather than contact Ms. Di Liberto, with whom he had spoken only days prior. Additionally, Mr. Luong sent the email to Mr. Orfanedes a few minutes before 5:00 P.M. on May 22, 2007.[2] Mr. Luong filed the motion for *Open America* stay at approximately 5: 41 P.M., less than one hour after sending the email.

DHS clearly did not satisfy the good faith effort required by Rule 7(m). Despite DHS' characterization of the rule as being "just a formality," this Court regards the rule as a very real and very necessary requirement. In fact, the parties had been engaged in the very activity Rule 7(m) promotes: resolution of litigation disputes where possible, or at least narrowing the issues. When DHS's counsel contacted Judicial Watch the week prior to the filing of the motion, Mr. Luong expressed DHS' position that it required additional time to process Judicial Watch's FOIA request. In fact, the parties had already agreed on dates for a stipulation and agreed order for DOS, and were in the process of discussing such dates for DOJ. Ms. Di Liberto proposed an

---

[2] Mr. Luong's email stated clearly that he has assumed Judicial Watch's position on the *Open America* stay. This cuts to the heart of Rule 7(m). It is not for DHS to presume whether Judicial Watch will oppose the motion, indeed, that is not the purpose of the rule. The purpose of the meet and confer was to attempt to resolve or narrow the issues. Because Judicial Watch had already demonstrated its willingness to work with DHS by offering additional time, DHS' failure to meet and confer in good faith is especially perplexing.

additional five to six months for DHS to process the FOIA request and additional time for the
production of a *Vaughn* index.  However, DHS never responded to Judicial Watch's offer, and,
instead, filed a motion for an *Open America* stay.

In a similar case, *United States ex rel. K & R Limited Partnership v. Massachusetts
Housing Fin. Agency*, the Court denied the defendant's motion to strike because it had "merely
genuflected to the letter of the Rule instead of trying in good faith to achieve its objectives."  456
F. Supp. 2d at 52.  In particular, the court found that the defendant's "cursory attempts" to
contact the plaintiff through a last minute email were not satisfactory in demonstrating good
faith.  In addition to assuming the plaintiff's position, the defendant's email gave plaintiff only
one business day to respond.  Considering these facts, the court held:

> Had [defendant's] counsel taken real steps to confer with [plaintiff], such as
> contacting [plaintiff's] counsel by telephone or within a reasonable period prior to
> filing the motion, the parties may have been able to resolve or at least narrow the
> issues that the motion presents.

*Id.; see also Ellipso v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006) (discovery motions denied
for failure to comply with Rule 7(m)); *Canady*, 271 F. Supp. 2d at 75 (court refused to consider
plaintiff's motion, due in part to his failure to comply with Rule 7.1(m)); *Alexander*, 186 F.R.D.
at 187 (plaintiff's motion to compel denied for failure to comply with Rule 108(m)).[3]

In this case, DHS allowed Judicial Watch less than one hour – clearly an unreasonable
amount of time – to respond.  Additionally, knowing lead counsel was out of town, counsel for
DHS failed to contact Ms. Di Liberto, with whom he had been speaking only days prior to the
filing.  DHS' failure to exercise good faith resulted in a short-circuiting of what had been

---

[3]    Rule 7.1(m) and 108(m) are previous formulations of the "meet and confer" rule.

ongoing negotiations regarding the very subject matter of its *Open America* stay motion.  For these reasons, DHS' motion for an *Open America* stay should be denied.

**B.     DHS's Circumstances Do Not Require a One-Year Stay.**

The Freedom of Information Act ("FOIA") permits an agency to seek additional time to comply with a FOIA request if the agency can make a showing that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."  5 U.S.C. § 552(a)(6)(C)(i).  The agency must make a showing of both "exceptional circumstances" and "due diligence."

First and foremost, it must be reiterated that Judicial Watch has not acted unreasonably or been unsympathetic to DHS' backlog of FOIA requests.  In fact, just prior to DHS filing its motion for an *Open America* stay, Judicial Watch was negotiating with DHS regarding additional time and had proposed allowing DHS an additional five to six months to process its three-item request.  Judicial Watch was willing to sign a stipulation and agreed order to that effect.  DHS, not Judicial Watch, has acted unreasonably and had failed to demonstrate either the "exceptional circumstances" or the "due diligence" necessary for a one-year stay.

**1.     DHS Has Not Demonstrated "Exceptional Circumstances"
Warranting A One-Year Stay.**

The FOIA defines "exceptional circumstances" as situations in which an agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress," and its resources are "inadequate to deal with the volume of such requests with the time limits," and the agency is "exercising due diligence in processing the requests."  5 U.S.C. § 552(a)(6)(A); *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C.

6

Cir. 1976). In 1996, Congress passed the Electronic Freedom of Information Act Amendments.

As a part of these amendments, Congress defined what "exceptional circumstances" do *not*

include:

> For the purposes of this subparagraph, the term 'exceptional circumstances' does
> not include a delay that results from a predictable agency workload of requests
> under this section, unless the agency demonstrates reasonable progress in reducing
> its backlog of pending requests.

5 U.S.C. § 552(a)(6)(C)(ii).[4] Thus, if an agency fails to show "exceptional circumstances," it

may still obtain a stay by demonstrating that it is making reasonable progress in reducing its

backlog of pending requests.

    DHS has not demonstrated "exceptional circumstances" such that a one-year stay is

necessary. First, DHS has not demonstrated that the volume of requests it has received is

anything more than a predictable agency workload. DHS demonstrates this fact in both its

memorandum and in the Declaration of Nikki Gramian ("Gramian Decl."). DHS points out that

workload of the Office of Inspector General ("OIG") has "steadily increased since the

Department of Homeland Security was created in 2003." Memorandum of Points and

Authorities in Support of Defendant U.S. Department of Homeland Security's Motion For an

Open America Stay ("DHS Mem.") at 9; Gramian Decl. at ¶ 8. The number of FOIA requests

---

[4] Several cases relied on by DHS were decided prior to the enactment of the E-
FOIA Amendments, including: *Jimenez v. FBI*, 938 F. Supp. 21 (D.D.C. 1996), *Ohaegbu v. FBI*,
936 F. Supp. 7 (D.D.C. 1996), and *Edmond v. U.S. Attorney*, 959 F.Supp. 1 (D.D.C. 1997). This
is significant because the Court in those cases was operating under a different definition of
"exceptional circumstances." These cases were decided before courts were required to consider
whether the circumstances described by the agency were simply a "predictable backlog."

received from 2003 through the first half of 2007, however, shows that this steady increase was entirely predictable. Predictable increases yield nothing more than predictable backlog.[5]

Without being able to show "exceptional circumstances," DHS must demonstrate that it is making reasonable progress in reducing its backlog of pending requests. DHS attempts to demonstrate such "progress" by discussing the recent personnel and private contractor decisions it has made and by asserting various numbers of closed and pending requests. However, neither of these two points demonstrates that DHS is making reasonable progress in reducing its backlog of pending requests. First, the added personnel and "streamlining" of the FOIA request process affects only pending and future FOIA request – it has nothing to do with whether DHS *has been* making reasonable progress in reducing its backlog of pending requests.[6]

Second, DHS' numbers do not compute. Ms. Gramian states that all of the 2003 and 2004 FOIA requests have been closed, and that, during 2006, 154 FOIA requests were closed. Gramian Decl. at ¶ 10. OIG received 98 requests in 2005 and 120 in 2006, totaling 218 FOIA requests for 2005-2006. *Id.* If, as DSH asserts, OIG closed 154 requests in 2006, then 64 requests should remain pending from 2006. *See id.* If, as OIG asserts, it received 218 FOIA

---

[5]    Additionally, personnel issues and investigations garnering media attention have been found to be non-issues in determining "exceptional circumstances." In *Leadership Conference on Civil Rights v. Gonzalez*, 404 F. Supp. 2d 246, 259 (D.D.C. 2005), the Court held that a "large backlog of requests, including 16 requests in the 'project category,' disruptions by court orders and personnel issues were not adequate to demonstrate 'exceptional circumstances.'" The Court further held that it would "not get involved in personnel and project management difficulties" and found that the agency demonstrated nothing more than a predictable backlog. *Id.*

[6]    Incidentally, the personnel additions highlight the absurdity of a one-year stay. If a fully staffed 2006 OIG FOIA Office consisting of three people could close 154 request, how much more quickly could a staff of four and a contractor close? *See* Gramian Decl. at ¶¶ 8-9.

requests in the first half of 2007, then OIG would have a total of 282 FOIA requests are still open

as of the first half of 2007. *See id.* However, DHS states that OIG currently has only 105

requests pending. *Id.* at ¶ 15. Clearly, something is amiss with DHS' own numbers. DHS also

fails to state how many, if any, FOIA requests have been closed in 2007. As a result, no

meaningful conclusion can be drawn from DHS' assertions about its own backlog.

**2.     DHS Has Not Demonstrated "Due Diligence" Warranting a One-Year Stay.**

Even if DHS could demonstrate "exceptional circumstances," and Judicial Watch asserts

it cannot, DHS must also demonstrate "due diligence" -- namely, that it is exercising due

diligence in responding to the request. 5 U.S.C. § 552(a)(6)(C)(I). First and foremost, DHS

failed to respond to Judicial Watch's FOIA request in the time required by the statute. Nor did it

avail itself of the extension of time provision contained in the statute. 5 U.S.C. 552(a)(6)(A),

(B). Such failures fail to demonstrate due diligence.

In addition, Ms. Gramian states that OIG contacts requesters who have been placed on the

"complex track" to inquire whether "they wish to reduce the scope of their requests and thereby

accelerate their requests by relocating them into a more advantageous queue." Gramian Decl. at

¶ 6. Similarly, DHS makes a point in its brief to discuss the implications of a requester who

refuses to modify the scope of the request when given the opportunity. DHS Mem. at 8-9.

However, DHS *never* contacted Judicial Watch to notify it that its three- item request had been

designated as complex, much less inquire about a modification of the request. In fact, the first

time Judicial Watch learned its request had been placed on a "complex" track was in DHS'

motion. Even DHS' letter acknowledging receipt of Judicial Watch's FOIA request failed to

9

make mention of which track the request had been placed, nor did it permit Judicial Watch an opportunity to modify its request.

In addition to violating Rule 7(m)'s good faith requirement, DHS has not demonstrated the "exceptional circumstances" or "due diligence" required for a one-year *Open America* stay.

**III.    Conclusion.**

For the foregoing reasons, DHS' motion for an *Open America* stay should be denied and DHS should be required to produce all non-exempt records responsive to Judicial Watch's FOIA request and a Vaughn index of withheld records by a date certain, not to exceed six (6) months from the date Judicial Watch initiated this action.

June 11, 2007                                Respectfully Submitted,

                                            JUDICIAL WATCH, INC.


                                            /s/ Paul J. Orfanedes
                                            D.C Bar No. 429716
                                            Meredith L. Di Liberto
                                            D.C. Bar No. 487733
                                            Suite 500
                                            501 School Street, S.W.
                                            Washington, DC 20024
                                            (202) 646-5172

                                            Attorneys for Plaintiff