UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 07-0506 (RJL) |
| | ) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, et al. | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT UNITED STATES DEPARTMENT OF HOMELAND SECURITY'S REPLY TO PLAINTIFF'S OPPOSITION TO AN OPEN AMERICA STAY**

### A.   DHS Has Demonstrated "Exceptional Circumstances" and "Due Diligence"

Plaintiff argues in conclusory fashion only that the Agency's increased FOIA workload was "entirely predictable." *Pl. Opp. at 7-8*. However, it is undisputed that DHS' FOIA requests increased nearly ten fold between 2003 and 2007, going from 23 requests in FY 2003 to 218 requests in the first six months of FY 2007 alone. *Def's Motion to Dismiss, Gramian Decl at ¶ 8*. Between FY 2006 and only the first six months of FY 2007, the number of FOIA requests increased from 120 to 218, a nearly 100 percent increase. *Id*. Contrary to the Plaintiff's claim, such an increase in workload is not "entirely predictable," but rather represents a significant and unexpected increase.

Moreover, Defendant has demonstrated that its "existing resources are inadequate to deal with the volume of such requests..." Summers v. Dep't of Justice, 925 F.2d 450, 452 n.2 (D.C. Cir. 1991). As discussed in the Gramian declaration, DHS' FOIA unit has suffered severe and unforeseen staffing shortages in the months surrounding receipt of Plaintiff's FOIA request,

losing two-thirds of its FOIA staff and thus left with only one paralegal to handle its backlog of requests. *Def's Motion to Dismiss, Gramian Decl at ¶ 8*. Notably, Plaintiff does not specifically address DHS' staffing shortages, but merely cites <u>Leadership Conference on Civil Rights v. Gonzalez</u>, 404 F.Supp. 2d 246, 259 (D.D.C. 2005) for the proposition that "personnel issues and investigations garnering media attention have been found to be non-issues in determining 'exceptional circumstances." However, in <u>Electronic Frontier Foundation v. Department of Justice</u>, 2007 WL 1334973, *6 (D.D.C. 2007), this Court held that <u>Leadership Conference</u> involved a case of "unspecified 'personnel issues'..." In <u>Electronic Frontier</u>, on the other hand, the Court found that the Agency established that its increase in FOIA requests "has been coupled with a significant and unexpected decrease in the staff available to process those requests" and that it was facing more than just "ordinary personnel problems." <u>Id</u>. In the instant case, like <u>Electronic Frontier</u>, DHS has provided a detailed affidavit setting forth its specific and unusual personnel issues. DHS has recently suffered the loss of two-thirds of its FOIA staff and is left with only one paralegal to address its backlog of FOIA requests. *Def's Motion to Dismiss, Gramian Decl at ¶ 8*. The inadequacy of DHS' staffing resources, in conjunction with the unexpected increase in FOIA requests, demonstrates exceptional circumstances.

      Defendant has also demonstrated that it is exercising "due diligence" in addressing its backlog of FOIA requests on a "first-in, first-out" basis. In her declaration, Ms. Gramian speaks in detail about the measures DHS has undertaken to address its backlog, including assigning a part-time attorney to head the FOIA staff, streamlining its FOIA response process with standardized language, developing standard policies for FOIA issues that arise repeatedly, and hiring of additional paralegals and contractors. *Def's Motion to Dismiss, Gramian Decl at ¶ 9*.

She also discusses DHS' efforts to hire additional staff, including contracting for a FOIA processor to address its backlog. *Id*. DHS' FOIA office did not have any such prior contracting personnel and this new position is emblematic of DHS' diligent efforts to address its backlog of requests. Though DHS has made significant progress in advertising and evaluating applicants, Ms. Gramian further explains that given the additional time necessary to process the interim security clearance for any new personnel and other normal delays, she does not anticipate any additional personnel coming on board prior to mid-September. *Def's Motion to Dismiss, Gramian Decl at ¶ 15*.

Plaintiff attempts to rebut DHS' showing of due diligence by claiming, unconvincingly, that DHS' efforts to dtreamline the FOIA request process and to add new positions do not constitute due diligence. *Pl. Opp. at 8*. However, in Electronic Frontier, the Court specifically found that the Agency, in seeking additional funding for new FOIA positions and moving to paperless processing of FOIA requests, did in fact demonstrate due diligence. 2007 WL 1334973, *6. The Court also noted that the Agency's use of a "first-in, first-out" policy for handling FOIA requests has been "adopted by the D.C. Circuit as [a] sufficient showing of due diligence." *Id*. citing Edmond v. United States Attorney, 959 F. Supp 1, 3 (D.D.C.1997). In this case, DHS' efforts to improve and streamline its FOIA processes and to secure additional personnel demonstrates due diligence. Moreover, DHS' use of a first-in, first-out process for processing its FOIA requests also demonstrates due diligence. *Def's Motion to Dismiss, Gramian Decl at ¶ 18*.

    **B.**    **DHS Made a Good Faith Effort to Comply with Local Rule 7(m)**

Plaintiff also argues that DHS' motion for an *Open America* stay should be denied

because DHS allegedly failed to comply with Local Rule 7(m). Though Plaintiff acknowledges that the undersigned DHS counsel did contact Judicial Watch counsel Paul Orfanedes about the stay, it argues that he did not do so in good faith. Contrary to Plaintiff's claims, DHS did make a good faith effort to comply with Local Rule 7(m).

In the weeks leading up to DHS' *Open America* stay, the Parties were engaged in discussions regarding DHS' need for additional time to process Plaintiff's FOIA request. The undersigned DHS counsel and Judicial Watch counsel exchanged various drafts of scheduling orders in this regard. On May 10, 2007, DHS provided Judicial Watch with a draft scheduling order, which set forth a proposed time line for responding to Plaintiff's FOIA request. Specifically, DHS advised Judicial Watch that DHS required until approximately May, 2008 to process the FOIA request. DHS indicated that the proposed length of time was "necessary in light of DHS' current situation regarding its staff and the numbers and types of requests it currently has." DHS also advised Judicial Watch that it was willing to provide "additional details of DHS' current circumstances if that would be helpful."

In a telephone discussion on or around May 17, 2007, the Parties discussed DHS' proposed time line. The undersigned DHS counsel explained to Judicial Watch counsel that the length of time requested was needed because DHS was experiencing staffing shortages and other difficulties (e.g. increased workload) impacting DHS' ability to timely process Plaintiff's FOIA request. The Parties also discussed that DHS was in the process of hiring additional staff, but that it did not anticipate getting that staff on board for at least a few months. Judicial Watch counsel indicated, however, that it would not agree to an extension beyond September/October, 2007. DHS counsel advised that he would discuss Judicial Watch's proposed shorter time line

with DHS, but indicated that if the Parties could not agree, DHS would need to file a stay.

On May 21, 2007, the same date that Defendant's answer was due, the undersigned counsel was advised by DHS that it could not respond to Judicial Watch's FOIA request within the shorter time frame proposed by Judicial Watch. As Defendant's answer was due on that date, the undersigned DHS counsel began drafting a motion for a stay. At or around 4:45PM, pursuant to Local Rule 7(m), the undersigned counsel contacted Judicial Watch counsel Paul Orfanedes to advise of the motion.[1] A receptionist advised that Mr. Orfanedes was not in the office and recommended sending him an e-mail message. Thus, the undersigned DHS counsel sent Mr. Orfanedes an e-mail advising of the motion and asking for Judicial Watch's consent. However, in light of Judicial Watch's prior statements that it would not agree to an extension beyond September/October, 2007 and the fact that DHS had already advised that it would file a stay if the Parties could not agree, the undersigned DHS counsel indicated in the e-mail that he presumed that Judicial Watch would oppose the motion. DHS then filed its motion shortly thereafter.

---

[1] Judicial Watch claims that the undersigned DHS counsel knew "that Mr. Orfanedes was out of town." *Pl. Opp. at 5*. DHS does not dispute that Ms. Di Liberto had earlier advised that Mr. Orfanedes would be out of town that week, however, the undersigned counsel did not recall this fact at the time he contacted Mr. Orfanedes. Also, though the undersigned DHS counsel had discussed this case with Ms. Di Liberto on one or two earlier occasions, Mr. Orfanedes was the Plaintiff's attorney of record at that time and the primary individual that DHS had been dealing with. In a telephone conversation on May 22, 2007, the undersigned DHS counsel explained this to Ms. Di Liberto. It also bears noting that Ms. Di Liberto did not enter an official appearance in this matter until June 6, 2007, after the filing of DHS' *Open America* stay.

Also, the undersigned DHS counsel did not indicate that Rule 7(m) was "just a formality." *Pl. Opp. at 3, fn 1*. To the best of his recollection, the undersigned DHS counsel recalls advising Ms. Di Liberto that he presumed that Judicial Watch would oppose the motion because it had previously indicated that it would not agree to an extension of time beyond September/October, 2007.

DHS acknowledges the importance of Local Rule 7(m) and the valuable goals that it seeks to achieve. While DHS counsel regrets not being able to actually speak with Judicial Watch counsel on the date that it filed its motion, the Parties had previously discussed at length DHS' need for additional time beyond that proposed by Judicial Watch. Morever, Judicial Watch had also made clear that it would not consent to any additional time beyond September/October, 2007. Finally, DHS had earlier advised Judicial Watch counsel that if the Parties could not agree on the time frame, DHS would need to file a stay. In light of these circumstances, DHS asserts that it did make a good faith effort to comply with Local Rule 7(m).

## CONCLUSION

For the foregoing reasons, DHS respectfully requests that its motion for stay of proceedings should be granted.

Respectfully submitted,

\_\_\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

\_\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

\_\_\_/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)