## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:07-cv-00506 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, *et al.*, | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFF'S APPLICATION FOR INJUNCTIVE RELIEF

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel, and pursuant to Fed.R.Civ.P. 65(a) and LCvR 65.1(c), respectfully requests that the Court enjoin Defendants U.S. Department of Justice ("DOJ") and U.S. Department of State ("DOS") (collectively referred to as "Defendants") and Defendants' agents, attorneys, employees, representatives, and all other persons acting in concert with or providing assistance to DOJ and DOS, from continuing to withhold records requested by Judicial Watch under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* As grounds therefor, Judicial Watch states as follows:

## MEMORANDUM OF LAW

### I.    Factual Background.

On January 24, 2007, Judicial Watch, a not-for-profit, educational organization that obtains and disseminates information about public policy issues and the operations of government, sent a FOIA request to DOS, by facsimile and certified mail, seeking access to any and all records concerning or relating to the following subjects:

a.    Communications between DOS and any/all officers, agencies and/or representatives of the Government of Mexico concerning Osbaldo Aldrete-

Davila, a Mexican national who testified in the prosecution of U.S. Border
Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a
shooting incident in Texas on February 17, 2005.

b.     Communications between DOS and the U.S. Department of Justice (to
include the Office of U.S. Attorney Johnny Sutton of the Western District
of Texas) and/or the Department of Homeland Security (and its
subordinate agencies) concerning Osbaldo Aldrete-Davila, a Mexican
national who testified in the prosecution of U.S. Border Patrol Agents
Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting
incident in Texas on February 17, 2005.

c.     The participation of DOS personnel in coordinating, facilitating and/or
approving the lawful entry(ies) of Osbaldo Aldrete-Davilla into the United
States (reportedly for the last time in February 2006). Mr. Aldrete-Davila
reportedly entered the United States lawfully (with the approval of the
U.S. Government) to obtain medical treatment, meet with federal
investigators and to testify in court in El Paso, Texas.

On January 24, 2007, Judicial Watch also sent a substantially similar FOIA request to

DOJ's Executive Office for U.S. States Attorneys ("EOUSA"), by facsimile and certified mail,

seeking access to the same records sought in the DOS request, as well as any and all records

concerning or relating to the following subjects:

d.     Any/all agreements, deals, promises, settlements, grants, understandings,
memoranda and/or letters granting any form of immunity to Osbaldo Aldrete-
Davila.

e.     Records detailing the terms and conditions permitting Osbaldo Aldrete-
Davila to lawfully enter the United States.

*See* Affidavit of Meredith L. Di Liberto at ¶¶ 2, 3 ("Di Liberto Affidavit"). Both requests sought

a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5

U.S.C. § 552(a)(4)(A)(iii). *Id.* at ¶ 4.

Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), DOJ was required to respond to Judicial Watch's

request by February 26, 2007, and DOS was required to respond by February 27, 2007.   As of

2

March 16, 2007, however, neither DOJ nor DOS had responded to Judicial Watch's January 24, 2007 FOIA requests.  Di Liberto Affidavit at ¶¶ 5, 6.[1]

## II.    Discussion.

### A.    Standard for Injunctive Relief.

Several, well-established factors are to be considered in determining whether to grant injunctive relief.  Those factors are: (1) whether the petitioner is likely to prevail on the merits; (2) whether the petitioner will suffer irreparable harm in the absence of the requested relief; (3) whether the harm to the petitioner if relief is denied outweighs the harm to the other parties interested in the proceedings if relief is granted; and (4) whether the injunction is in the public interest.  *See Washington Metropolitan Area Transit Comm. v. Holiday Tours, Inc.*, 559 F.2d 841, 842 (D.C. Cir. 1977).  No single factor is dispositive.  Rather, a court "must balance the strengths of the requesting party's arguments in each of the four required areas."  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C.Cir. 1995).  Because any analysis of these factors weighs heavily in favor of granting an injunction in this case, such relief must be afforded to Judicial Watch.

### B.    Judicial Watch Will Prevail on the Merits of this Case.

Although Judicial Watch need not demonstrate an absolute certainty of success on the

---

[1]    Both DOJ and DOS acknowledged receipt of Judicial Watch's January 24, 2007 requests after being served with this lawsuit.  In fact, Defendants admit this in their answer. Answer at ¶¶ 11, 12.  FOIA permits a requestor to file suit after the statutory period has elapsed if the agency has not substantively responded.  In this case, neither DOJ nor DOS substantively responded to Judicial Watch's request prior to the filing of this lawsuit.

merits, it is very likely that it will prevail in this matter.[2]  The U.S. Supreme Court has plainly

stated that underlying FOIA is "a general philosophy of *full* agency disclosure."  *U.S. Dep't of*

*Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 754 (1989) (quotation

marks and citations omitted) (emphasis added).  The FOIA "provides that all documents are

available to the public unless specifically exempted by the Act itself."  *Vaughn v. Rosen*, 484

F.2d 820, 823 (D.D.C. 1973).  "Unlike the review of other agency action that must be upheld if

supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the

burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter

*de novo*.'"  *Id.* at 755 (quoting 5 U.S.C. § 552(a)(4)(B)).

In this case, DOJ and DOS both violated FOIA by failing to respond to Judicial Watch's

January 24, 2007 requests.  5 U.S.C. § 552(a)(6)(A)(ii).   DOJ and DOS also failed to avail

themselves of the additional time provision in FOIA.  5 U.S.C. § 552(a)(6)(B).  The answer filed

by DOJ and DOS does not even attempt to explain or excuse their failure to respond.  Judicial

Watch was entitled to have Defendants search for and produce all non-exempt responsive records

and a *Vaughn* index of withheld records, but Defendants have failed to do so.  Therefore, there is

a substantial likelihood that Judicial Watch will prevail on the merits of its FOIA complaint.

Unlike DOS, which failed to do anything other than acknowledge receipt of Judicial

Watch's request, DOJ wrote to Judicial Watch on June 15, 2007 and tacitly admitted that it was

refusing to search for responsive records.  In the letter dated June 15, 2007, William G. Stewart,

---

[2]     See *Udall v. D.C. Transit System, Inc.*, 404 F.2d 1358, 1359 n.3 (D.C. Cir. 1968) ("[O]n a motion for a preliminary injunction it is not necessary and it is not appropriate to make a definitive decision on such a question [*i.e.*, the merits of the claim], but merely to reach the conclusion that there is a strong likelihood that at trial the plaintiff will prevail.") (quotation marks and citation omitted).

II, the Assistant Director of DOJ's EOUSA Freedom of Information and Privacy Staff, asserted

that release of the records sought by Judicial Watch would violate 5 U.S.C. § 552a of the Privacy

Act and §§ (b)(6) and (b)(7)(C) of FOIA.  Di Liberto Affidavit at ¶ 7.  DOJ further asserted that

"all of the records [Judicial Watch is] seeking **would** pertain to the defendants and witness in this

case."  *Id*.  (Emphasis added).  Rather than conducting an actual search for responsive records, it

appears that DOJ merely assumed that any such records would be exempt under 5 U.S.C. § 552a

of the Privacy Act and §§ (b)(6) and (b)(7)(C) of FOIA.  An additional indicator that DOJ has not

yet performed a search is found in its unusual request that Judicial Watch submit a new FOIA

request for "publicly available" records.[3]  *Id.*  Judicial Watch's request did not exclude such

records, however, and if DOJ had bothered to perform a search, it obviously would know

whether such records exist.

　　　The law in the U.S. Court of Appeals for the District of Columbia Circuit ("D.C.

Circuit") regarding an agency's obligation to conduct a search is clear.  In responding to a FOIA

request, an agency is required to show that it made "a good faith effort to conduct a search for the

requested records, using methods that can be reasonably expected to produce the information

requested."  *Nation Magazine v. United States Customs Service*, 71 F.3d 885, 890 (D.C. Cir.

1995) (quoting *Oglesby v. United States Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

--------

[3]　　Judicial Watch's January 24, 2007 request sought communications, records, agreements, deals, promises, settlements, grants, understandings, memoranda and/or letters concerning Osbaldo Aldrete-Davila, among other records.  The request clearly did not exclude public records.  DOJ is essentially suggesting Judicial Watch submit a second request for records it already requested more than 5 months ago.

DOJ's apparent failure to even conduct a search for records constitutes a clear violation of FOIA for which Judicial Watch is likely to prevail on the merits.[4]

Lastly, while Judicial Watch only requests that Defendants be enjoined at this time from continuing to withhold non-exempt responsive records and produce a *Vaughn* index of any claims of exemption, it is likely that Judicial Watch will overcome DOJ's bald claims of exemption. First, the Privacy Act applies only to citizens of the United States or to aliens lawfully admitted for permanent residence. 5 U.S.C. § 552a(a)(2). There is no dispute that Osbaldo Aldrete-Davila is a Mexican national. Therefore, the Privacy Act does not apply to him. Second, FOIA's privacy exemptions offer no more privacy protection for Mr. Aldrete-Davila than does the Privacy Act.

Even if FOIA applies to Mr. Aldrete-Davila, and that is not a foregone conclusion, Judicial Watch can demonstrate that the overwhelming public interest in the subject matter of the requests outweighs any potential privacy interests of Mr. Aldrete-Davila. The case of Mr. Aldrete-Davila and U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean has received widespread public attention. From television news to newspapers, the altercation between Mr. Aldrete-Davila and Agents Ramos and Compean have been widely recounted. The specific subject matter of Judicial Watch's FOIA request – the government-elicited testimony of Mr. Aldrete-Davila used in the prosecution of Agents Ramos and Compean by U.S. Attorney Johnny Sutton and the coordination between U.S. agencies and the Mexican Government – has been of particular interest to the public. From public petitions to proposed

---

[4]    It is unclear whether DOS has searched for responsive records either. Judicial Watch has not received any correspondence asserting that DOS had undertaken a search.

legislation in Congress, the public interest in the subject matter of Judicial Watch's FOIA outweighs any potential privacy interest of Mr. Aldrete-Davila. *See infra*, § II.E.  Di Liberto Affidavit at ¶¶ 9-21.  Judicial Watch will likely succeed on the merits of DOJ's claims of exemption as well.

### C.    Judicial Watch Is Suffering Irreparable Harm as a Result of the FBI's Willful Failure to Comply with the FOIA.

Irreparable harm is an injury for which the court cannot compensate should the movant prevail.  *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Assoc. v. Federal Power Comm.,* 259 F.2d 921, 925 (D.C. Cir. 1958)).  "[I]t is well-established that acts by Government agencies in derogation of statutory rights of the public or certain individual members of the public can constitute irreparable injury."  *Gates v. Schlesinger*, 366 F. Supp. 797, 800 (D.D.C. 1973) (plaintiffs were entitled to a preliminary injunction because plaintiffs demonstrated irreparable injury by being shut out of a public meeting, as was their right to attend under the Federal Advisory Committee Act); *see also Public Citizen v. Nat'l Economic Comm.*, 703 F. Supp. 113 (D.D.C. 1989) (plaintiffs were entitled to a temporary restraining order and eventually granted a permanent injunction because plaintiffs demonstrated irreparable injury by being shut out of a public meeting, as was their right to attend under the Federal Advisory Committee Act.).  As noted, the FOIA "provides that all documents are available to the public unless specifically exempted by the Act itself."  *Vaughn*, 484 F.2d at 823.

In this case, as demonstrated in Section B, *supra*, DOJ and DOS have failed to search for and produce non-exempt records responsive to Judicial Watch's January 24, 2007 FOIA requests.  Nor have DOJ and DOS demonstrated that any responsive records are exempt from

production under the Privacy Act or FOIA Exemptions (6) and (7)(C). Judicial Watch has a

clear, statutory right to receive non-exempt responsive records and has the further right to a

*Vaughn* index of withheld records. Judicial Watch is being irreparably harmed as a result of the

denial of its rights. *See* Di Liberto Affidavit at ¶ 8.

### D.    Entry of an Injunction Will Not Cause Harm to Other Parties.

Any harm to Defendants by requiring them to search for and produce non-exempt

responsive records and a *Vaughn* index of withheld records is slight, if not non-existent. Indeed,

Defendants cannot be harmed in any meaningful sense because Judicial Watch merely seeks to

have them comply with their legal obligation under FOIA. Rather than harming Defendants, an

injunction "will highlight vividly the essence of our democratic society, providing the public its

right to know its government is conducting the public's business." *Public Citizen*, 703 F. Supp.

at 129.[5]

### E.    Entry of An Injunction Is in the Public's Interest.

Entry of an injunction is clearly in the public interest. Not only does the public have an

obvious interest in seeing that the government follows the law, but, as stated above, the case of

Mr. Aldrete-Davila and U.S. Border Patrol Agents Ramos and Compean has received widespread

public attention. A simple LexisNexis® search for news articles regarding the case of Mr.

---

[5]    On or about April 18, 2007, the parties respective counsel began negotiating dates for Defendants U.S. Department of Homeland Security ("DHS"), DOJ and DOS to respond to Judicial Watch's FOIA requests. Since that time, DHS filed a motion for an *Open America* stay and negotiations with DOJ and DOS stalled. Specifically, Judicial Watch and DOS agreed on a date certain for the production of all non-exempt responsive records, but DOS refused to sign a Stipulation and Agreed Order to that effect. As of July 9, 2007, Defendants' counsel had not responded to requests for a date certain for the production of all non-exempt responsive records.

Aldrete-Davila and U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean yielded more than 1,000 stories. Di Liberto Affidavit at ¶ 9. These stories appeared in publications such as the *Los Angeles Times*, the *Chicago Tribune*, the *Washington Times* and the *Houston Chronicle*, as well as smaller, more local publications such as the *Orange County Register*, the *Augusta Chronicle*, the *Fort Worth Star-Telegram*, and the *Arizona Daily Star*. *Id.* References also appeared in *Congressional Quarterly Weekly* and the *Federal News Service*, as well as television transcripts for CNN, FoxNews, and NPR. *Id.* The public's interest in the case of Mr. Aldrete-Davila and Agents Ramos and Compean also can be seen in stories carried in the *University Wire*, *Human Events Online*, and *Investor's Business Daily*. *Id.* It is clear from this vast array of media coverage that the public interest in this case is great.

The tremendous public interest in this matter also is evidenced by the high volume of internet search results. A Google® search for "Osbaldo Aldrete-Davila," yielded approximately 10,300 results. Di Liberto Affidavit at ¶ 10. Included in these 10,300 results are online informational websites such as the Daily Bulletin, World Net Daily, Front Page Magazine, and CNN.com, as well as blog sites for individuals covering the story. *Id.* A Google® search for "Ignacio Ramos and Jose Compean," yielded approximately 35,800 results. *Id.* These results included many of the sources listed above as well as the following: Canada Free Press, American Free Press, and the Federation for American Immigration. *Id.* Included in these results are a variety of online petitions seeking the presidential pardon of Agents Ramos and Compean. *Id.* One petition, promoted on the floor of the U.S. House of Representatives, has

gathered 359,361 signatures as of June 25, 2007.[6]  *Id.; see also* 153 Cong. Rec. H4560, Vol. 153, No. 75.

In addition to the average citizen's interest and involvement in this case, the U.S. Congress has also exhibited a high level of interest.  In 2006, Agents Ramos and Compean were mentioned on the floor of the U.S. House of Representatives at least three (3) times.  Di Liberto Affidavit at ¶ 11.  As of June 25, 2007, Agents Ramos and Compean have been mentioned on the House floor at least thirty-five (35) times.  *Id.*  Additionally, the U.S. House of Representatives has proposed three resolutions relating to the matter of Mr. Aldrete-Davila and Agents Ramos and Compean.  *Id.*  On January 18, 2007, U.S. Representative Duncan Hunter (R-CA) sponsored H.R. 563, which calls for the convictions and sentences of Agents Ramos and Compean to be vacated.  H.R. 563 has 100 co-sponsors who represent 34 different States.  *Id.*  Also on January 18, 2007, U.S. Representative Tom Tancredo (R-CO) sponsored H. Con. Res. 37, which calls for the unconditional pardon of Agents Ramos and Compean, based in part on the U.S. Attorney's reliance on the testimony of Mr. Aldrete-Davila.[7]  *Id.*

---

[6]      This petition can be found on www.pardontheagents.com.

[7]      In 2007, four states also passed legislative resolutions calling for presidential pardons for Agents Ramos and Compean.  New Mexico, Tennessee, Michigan, and Texas all passed measures asking President Bush to pardon the Agents.  New Mexico went even further and called for an official investigation into DOJ's decision to grant immunity to Mr. Aldrete-Davila.  2007 NM S.J.M. 13.  Di Liberto Affidavit at ¶ 16.

On May 9, 2007, U.S. Representative Michael McCaul (R-TX) sponsored H.R. 2250, which expressly seeks to limit the appropriation of funds to pay any claims made by Mr. Aldrete-Davila against the U.S. Government.  Di Liberto Affidavit at ¶ 12.[8]

Lastly, the House Foreign Affairs Subcommittee on International Organization, Human Rights and Oversight agreed to begin hearings on the matter of Mr. Aldrete-Davila and Agents Ramos and Compean.[9]  Congressman Rohrabacher requested the hearing, and the subcommittee's chairman, Congressman Tom Lantos (D-CA), granted the request.  Di Liberto Affidavit at ¶ 13.  These examples help demonstrate the intensity and breadth of the public interest in the issues related to Mr. Aldrete-Davila and Agents Ramos and Compean in general, as well as the public interest in the specific records sought by Judicial Watch in this case.  Quite simply, there has been a substantial public outcry over the allegations that the U.S. Government, through the person of U.S. Attorney Johnny Sutton, elicited the testimony of an illegal drug

---

[8]    Mr. Aldrete-Davila has threatened to sue the U.S. Border Patrol for $5 million.  It is unclear whether a lawsuit has been filed or if a settlement has been reached.  Di Liberto Affidavit at ¶ 12.

[9]    Individual Members of Congress, including Congressman Dana Rohrabacher (R-CA) and Congressman Walter B. Jones, Jr. (R-NC), have written to President George W. Bush and Attorney General Alberto Gonzalez seeking pardons for Agents Ramos and Compean.  Di Liberto Affidavit at ¶ 14.  Several Members of Congress also wrote to DOJ requesting that Agents Ramos and Compean be released on bond pending their appeals.  This request came after Agent Ramos was viciously assaulted by five illegal immigrant inmates.  *See* 153 Cong. Rec. H2662, Vol. 153, No. 47.  Additionally, on or about February 7, 2007, Senator Diane Feinstein (D-CA) wrote to the Chairman of the Judiciary Committee, Senator Patrick Leahy (D-VT), requesting a committee investigation into the convictions of Agents Ramos and Compean and the U.S. Attorney's reliance on the testimony of Mr. Aldrete-Davila.  *See* 153 Cong. Rec. H2421, Vol. 153, No. 42.  Senator Leahy later approved Senator Feinstein's request.  *See* 153 Cong. Rec. H4027, Vol. 153, No. 66.  Di Liberto Affidavit at ¶ 15.

smuggler to prosecute two U.S. Border Patrol Agents and apparently coordinated with the Mexican Government in doing so.

The public interest in this matter is multi-faceted. Another facet of the public's concern is the treatment of Agents Ramos and Compean. On or about February 3, 2007, Agent Ramos, who had been placed in the general population of the Yazoo City Federal Correction Complex in Yazoo City, Mississppi, was assaulted and beaten by five inmates. Di Liberto Affidavit at ¶ 17. These inmates reportedly were illegal immigrants and allegedly knew that Agent Ramos was a U.S. Border Patrol Agent. *Id.* Adding to this brutality, it later was reported by Congressman Tancredo that Agent Ramos did not receive medical treatment until four days after the beating.[10] Di Liberto Affidavit at ¶ 18. Following the beating, Agent Ramos was placed in solitary confinement. *Id.* While the Yazoo City Federal Correction spokesperson stated this move was for Agent Ramos' protection, he is now forced to live with the penalties of solitary confinement and has done so for more than 140 days.[11] Agent Compean is also in solitary confinement. *Id.*

Yet another facet of the public interest in this matter is its effect on the morale of U.S. Border Patrol agents. Tasked with protecting our nation's borders, these men and women now face a new threat: pressure by the Mexican Government to have them prosecuted. On April 23, 2007, it was announced that the National Border Patrol Council ("NBPC") and its constituent

---

[10]    *See* http://www.youtube.com/watch?v=5P5AMwQlNsA&mode=related&search=. This is a video of Congressman Tancredo describing his visit to the Yazoo City Federal Correction Complex to talk with Agent Ramos.

[11]    An aid of Congressman Rorhrbacher visited Agent Ramos recently and reported his condition as "emaciated." Agent Ramos has allegedly lost 30 pounds since being confined in solitary. *See* http://www.worldnetdaily.com/news/article.asp?ARTICLE_ID=56308.

locals cast a unanimous "no confidence" vote against David. V. Aguilar, Chief of the U.S.

Border Patrol. Di Liberto Affidavit at ¶ 19. One of the reasons given for the "no confidence"

vote was "believing the perjured allegations of criminals over sworn testimony of innocent

Border Patrol agents." *Id.* The NBPC represents roughly 11,000 non-supervisory Border Patrol

employees. *Id.*

The BNPC's "no-confidence" vote would appear to demonstrates agents' lack of

confidence in the Border Patrol's current leadership. This lack of confidence stems not only

from the prosecution of Agents Ramos and Compean, which was aided by the testimony of Mr.

Aldrete-Davila, an admitted illegal drug-smuggler, but also from the apparent failure on the part

of leadership of the Border Patrol to respond to a pattern and practice by the U.S. Attorney's

Office for the Western District of Texas to prosecute law enforcement officers at the behest of

the Mexican Government. In this regard, it appears that the Mexican Government has pressured

the U.S. Attorney's Office for the Western District of Texas, and U.S. Attorney Sutton in

particular, to bring charges against Border Patrol officers.

For example, on or about April 14, 2005, Edwards County, Texas Sheriff's Deputy

Gilmer Hernandez reportedly stopped a speeding van that ran a red light. Di Liberto Affidavit at

¶ 20. As he approached the van, the driver of van sped off, almost hitting Deputy Hernandez. *Id.*

In response, Deputy Hernandez fired shots at the van's tires and shot out one of the tires. *Id.*

Eight or nine individuals jumped out of the van and ran off. *Id.* One passenger, a woman,

remained behind, hit by a bullet fragment. *Id.* This woman apparently was not legally present in

the United States. *Id.* Deputy Hernandez reported the entire incident, and the Texas Rangers

investigated the incident and found Deputy Hernandez acted properly. *Id.* The FBI then

apparently took over the investigation. *Id.* Deputy Hernandez was subsequently tried by the U.S. Attorney's Office for the Western District of Texas and sentenced to one year and one day in prison. *Id.* Earlier this year, it came to light that the Consul of Mexico, Jorge Ernesto Espejel Montes, had written a letter to various government officials only four days after the Deputy Hernandez incident, asserting that the "incident" should "not remain unpunished." Di Liberto Affidavit at ¶ 20. In another case, U.S. Attorney Johnny Sutton went out of his way to publicly commend the Consul of Mexico for his assistance with the prosecution of U.S. Border Patrol Agent Gary Mark Brugman. Di Liberto Affidavit at ¶ 21. Agent Brugman was sentenced to 2 years for allegedly kicking and punching an illegal alien who illegally crossed the Rio Grande River. *Id.* The records sought by Judicial Watch in its January 24, 2007 FOIA requests will likely shed light on the perception that U.S. prosecutors have been pressured by the Mexican Government to prosecute Border Patrol agents and/or have coordinated with the Mexican Government in doing so.

## III.    Conclusion.

Defendants' failure to search for and produce non-exempt records responsive to Judicial Watch's January 24, 2007 FOIA requests is preventing agency action from being opened up to the light of public scrutiny. It also undermines the peoples' right to know what their Government is up to. *See Reporters Committee*, 489 U.S. at 773. Judicial Watch respectfully requests that the Court enjoin Defendants from continuing to withhold records responsive to Judicial Watch's January 24, 2007 FOIA requests by requiring Defendants to search for and produce all non-exempt responsive records by a date certain and a *Vaughn* index of any and all responsive records subject to a claim of exemption.

14

Dated:  July 9, 2007                          Respectfully submitted,

                                              JUDICIAL WATCH, INC.

                                              /s/  Paul J. Orfanedes
                                              D.C. Bar No. 429716
                                              Meredith L. Di Liberto
                                              D.C. Bar No. 487733
                                              Suite 500
                                              501 School Street, S.W.
                                              Washington, DC 20024
                                              (202) 646-5172

## LOCAL RULE 7(m) CERTIFICATE OF COUNSEL

On July 6, 2007, I attempted to contact Quan Luong, Esq., counsel for Defendant DHS, by telephone, to confer and inquire whether his client would consent to the application for injunctive relief.  On July 9, 2007, I again attempted to contact Mr. Luong by telephone, to confer and inquire whether his client would consent to the application for injunctive relief.  Mr. Luong responded that his clients were opposed to the application for injunctive relief.


                                              /s/  Meredith L. Di Liberto

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  1:07-cv-00506 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, *et al.*, | ) | |
| Defendants. | ) | |
| _____ | ) | |

## AFFIDAVIT OF MEREDITH L. Di LIBERTO

I, Meredith L. Di Liberto, being duly sworn, hereby depose and say:

1.      I am an attorney with Judicial Watch, Inc. ("Judicial Watch"), which is located at 501 School Street, SW, Suite 500, Washington, DC 20024.  I make this declaration based upon my personal knowledge of the contents herein.

2.      On January 24, 2007, Judicial Watch, a not-for-profit, educational organization that obtains and disseminates information about public issues and the operations of government, sent a FOIA request to Defendant U.S. Department of State ("DOS"), by facsimile and certified mail, seeking access to any and all records concerning or relating to the following subjects:

   a.      Communications between DOS and any/all officers, agencies and/or representatives of the Government of Mexico concerning Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting incident in Texas on February 17, 2005.

   b.      Communications between DOS and the U.S. Department of Justice (to include the Office of U.S. Attorney Johnny Sutton of the Western District of Texas) and/or the Department of Homeland Security (and its subordinate agencies) concerning Osbaldo Aldrete-Davila, a Mexican

national who testified in the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting incident in Texas on February 17, 2005.

c.     The participation of DOS personnel in coordinating, facilitating and/or approving the lawful entry(ies) of Osbaldo Aldrete-Davilla into the United States (reportedly for the last time in February 2006). Mr. Aldrete-Davila reportedly entered the United States lawfully (with the approval of the U.S. Government) to obtain medical treatment, meet with federal investigators and to testify in court in El Paso, Texas.

3.     On January 24, 2007, Judicial Watch also sent a substantially similar FOIA request to the Executive Office for U.S. States Attorneys ("EOUSA") through Defendant U.S. Department of Justice ("DOJ"), by facsimile and certified mail, seeking access to the same records sought in the DOS request, as well as any and all records concerning or relating to the following subjects:

d.     Any/all agreements, deals, promises, settlements, grants, understandings, memoranda and/or letters granting any form of immunity to Osbaldo Aldrete-Davila.

e.     Records detailing the terms and conditions permitting Osbaldo Aldrete-Davila to lawfully enter the United States.

4.     Both of Judicial Watch's January 24, 2007 requests also sought a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).

5.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), DOJ was required to respond to Judicial Watch's January 24, 2007 FOIA request by February 26, 2007 and DOS was required to respond by February 27, 2007.

6.     As of March 16, 2007, however, neither DOJ nor DOS had responded to Judicial Watch's January 24, 2007 FOIA requests.

7.     Attached hereto as Exhibit 1 is a true and correct copy of a June 15, 2007 letter from William G. Stewart, II, the Assistant Director of DOJ's EOUSA Freedom of Information and Privacy Staff, to Judicial Watch regarding its January 24, 2007 FOIA request.

8.     A vital part of Judicial Watch's mission is providing information to the public about current issues and events. Judicial Watch has been attempting to obtain the records at issue from Defendants for more than five months, and Defendants' failure to produce the requested records, without legal justification or excuse, is harming Judicial Watch's ability to provide information to the public about the incident involving Mexican national Osbaldo Aldrete-Davila and U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean, and the coordination between U.S. attorneys and the Mexican Government to prosecute Agents Ramos and Compean.

9.     A simple LexisNexis® search for news articles regarding the case of Mr. Aldrete-Davila and U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean yielded more than 1,000 stories. These stories appeared in publications such as the *Los Angeles Times*, the *Chicago Tribune*, the *Washington Times* and the *Houston Chronicle*, as well as smaller, more local publications such as the *Orange County Register*, the *Augusta Chronicle*, the *Fort Worth Star-Telegram*, and the *Arizona Daily Star*. References also appeared in *Congressional Quarterly Weekly* and the *Federal News Service*, as well as television transcripts for CNN, FoxNews, and NPR. The public's interest in the case of Mr. Aldrete-Davila and Agents Ramos and Compean also can be seen in stories carried in the *University Wire*, *Human Events Online*, and *Investor's Business Daily*.

10.    A Google® search for "Osbaldo Aldrete-Davila," yielded approximately 10,300 results.  Included in these 10,300 results are online informational websites such as the Daily Bulletin, World Net Daily, Front Page Magazine, and CNN.com, as well as blog sites for individuals covering the story.  A Google® search for "Ignacio Ramos and Jose Compean," yielded approximately 35,800 results.  These results included many of the sources listed above as well as the following:  Canada Free Press, American Free Press, and the Federation for American Immigration.  Included in these results are a variety of online petitions seeking the presidential pardon of Agents Ramos and Compean.  One petition, promoted on the floor of the U.S. House of Representatives, has gathered 359,361 signatures as of June 25, 2007.  This petition can be found on www.pardontheagents.com.

11.    The U.S. Congress also has exhibited a high level of interest in the matter.  In 2006, Agents Ramos and Compean were mentioned on the floor of the U.S. House of Representatives at least three (3) times.  As of June 25, 2007, Agents Ramos and Compean have been mentioned on the House floor at least thirty-five (35) times.  Additionally, the U.S. House of Representatives has proposed three resolutions relating to the matter of Mr. Aldrete-Davila and Agents Ramos and Compean.  On January 18, 2007, U.S. Representative Duncan Hunter (R-CA) sponsored H.R. 563, which calls for the convictions and sentences of Agents Ramos and Compean to be vacated.  H.R. 563 has 100 co-sponsors who represent 34 different states.  Also on January 18, 2007, U.S. Representative Tom Tancredo (R-CO) sponsored H. Con. Res. 37, which calls for the unconditional pardon of Agents Ramos and Compean, based in part on the U.S. Attorney's reliance on the testimony of Mr. Aldrete-Davila.

12.     On May 9, 2007, U.S. Representative Michael McCaul (R-TX) sponsored H.R. 2250, which expressly seeks to limit the appropriation of funds to pay any claims made by Mr. Aldrete-Davila against the U.S. Government.  Mr. Aldrete-Davila has threatened to sue the U.S. Border Patrol for $5 million.  It is unclear whether a lawsuit has been filed or if a settlement has been reached.

13.     Most recently, the House Foreign Affairs Subcommittee on International Organization, Human Rights and Oversight agreed to begin hearings on the matter of Mr. Aldrete-Davila and Agents Ramos and Compean.  Congressman Rohrabacher requested the hearing, and the subcommittee's chairman, Congressman Tom Lantos (D-CA), granted the request.

14.     Individual Members of Congress, including Congressman Dana Rohrabacher (R-CA) and Congressman Walter B. Jones, Jr. (R-NC), have written to President George W. Bush and Attorney General Alberto Gonzalez seeking pardons for Agents Ramos and Compean. Several Members of Congress also wrote to the U.S. Department of Justice requesting that Agents Ramos and Compean be released on bond pending their appeals.  This request came after Agent Ramos was viciously assaulted by five illegal immigrant inmates.  *See* 153 Cong. Rec. H2662, Vol. 153, No. 47.

15.     On or about February 7, 2007, Senator Diane Feinstein (D-CA) wrote to the Chairman of the Judiciary Committee, Senator Patrick Leahy (D-VT), requesting a committee investigation into the convictions of Agents Ramos and Compean and the U.S. Attorney's reliance on the testimony of Mr. Aldrete-Davila.  *See* 153 Cong. Rec. H2421, Vol. 153, No. 42.

Senator Leahy later approved Senator Feinstein's request. *See* 153 Cong. Rec. H4027, Vol. 153, No. 66.

16.    In 2007, four states also passed legislative resolutions calling for the presidential pardon for Agents Ramos and Compean.  New Mexico, Tennessee, Michigan, and Texas all passed measures asking President Bush to pardon the Agents.  New Mexico went even further and called for an official investigation into the U.S. Department of Justice's decision to grant immunity to Mr. Aldrete-Davila.

17.    On or about February 3, 2007, Agent Ramos, who had been placed in the general population of the Yazoo City Federal Correction Complex in Yazoo City, Mississippi, reportedly was assaulted and beaten by five inmates.  These inmates reportedly were illegal immigrants and allegedly knew that Agent Ramos was a U.S. Border Patrol Agent.

18.    It was later reported by Congressman Tancredo that Agent Ramos did not receive medical treatment until four days after the beating.[1]  Following the beating, Agent Ramos reportedly was placed in solitary confinement.  While the Yazoo City Federal Correction spokesperson stated this move was for Agent Ramos' protection, he is now forced to live with the penalties of solitary confinement and has done so for more than 140 days.  Agent Compean is reportedly in solitary confinement as well.

19.    According to an April 23, 2007 press release, on or about that date, the National Border Patrol Council ("NBPC") and its constituent locals cast a unanimous "no confidence" vote against David. V. Aguilar, Chief of the U.S. Border Patrol.  One of the reasons given for the

---

[1]    *See* http://www.youtube.com/watch?v=5P5AMwQlNsA&mode=related&search=, which is a video of Congressman Tancredo describing his visit to the Yazoo City Federal Correction Complex to talk with Agent Ramos.

"no confidence" vote was "believing the perjured allegations of criminals over sworn testimony of innocent Border Patrol agents." The NBPC represents roughly 11,000 non-supervisory Border Patrol employees. *See* Exhibit 2.

20.    According to newspaper reports, on April 14, 2005, Edwards County, Texas Sheriff's Deputy Gilmer Hernandez stopped a speeding van that ran a red light. As he approached the van, the driver of van reportedly sped off, almost hitting Deputy Hernandez. In response, Deputy Hernandez fired shots at the van's tires and shot out one of the tires. Eight or nine individuals apparently jumped out of the van and ran off. One passenger, a woman, remained behind, hit by a bullet fragment. The woman apparently was not legally present in the United States. Deputy Hernandez reported the entire incident, and the Texas Rangers investigated and found Deputy Hernandez acted properly. Then the FBI apparently took over the investigation. Deputy Hernandez was subsequently tried by the U.S. Attorney's Office for the Western District of Texas and sentenced to one year and one day in prison. Earlier this year, it came to light that the Consul of Mexico, Jorge Ernesto Espejel Montes, had written a letter to various government officials only four days after the incident asserting that the "incident" should "not remain unpunished." *See* Exhibit 3

21.    According to a March 10, 2003 press release, U.S. Attorney Johnny Sutton publicly commended Consul of Mexico Jorge Ernesto Espejel Montes for his assistance with the prosecution of U.S. Border Patrol Agent Gary Mark Brugman. Agent Brugman was sentenced to 2 years for allegedly kicking and punching an illegal alien who illegally crossed the Rio Grande River. *See* Exhibit 4.

I declare under penalty of law that the foregoing is true and correct.  Executed on July 9, 2007 in the District of Columbia.

Meredith L. Di Liberto

# **EXHIBIT 1**



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757  FAX: 616-6478  (www.usdoj.gov/usao)*

Requester: Christopher Farrell

JUN 1 5 2007

Request Number: 07-1461

Dear Mr. Farrell:

We forwarded to the U.S. Attorney's Office for the Western District of Texas your request for various possible records concerning Osbaldo Aldrete-Davila relating to the prosecution of U.S. Border Patrol Agents Ramos and Compean.

The District has informed us that all of the records you are seeking would pertain to the defendants and witness in that case. Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records. You have not furnished a release by the witness and defendants for you to receive records pertaining to them. Furthermore, your request does not present a public interest justification that would overwhelm the privacy interests of the third parties. Although you present a public interest argument for having fees waived for your request, there is not a corresponding justification for disclosure despite the privacy interests of the affected parties. Such an argument would have to meet the high standards indicated in the Supreme Court's decision in <u>NARA v. Favish</u>, 124 S. Ct. 1570 (2004). The court in Favish indicated that to sustain a public interest argument for the release of records concerning a third party a requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred. In this instance there has been no such showing, or even allegation. Therefore, release of the requested records would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C.§ 552a and sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. § 552.

We will release, if requested, any public records maintained in our files, such as court records and news clippings, without the express of authorization of the third party or public justification for release. If you desire to obtain public records, if public records exist in our files, please submit a new request for public documents.

Should you obtain the written authorization and consent of the third party for release of the records please submit a new request for the documents accompanied by the written authorization. A form is enclosed to assist you in providing us the authorization and consent of the subject of your request. The authorization must be notarized or signed under penalty of perjury pursuant to 18 U.S.C. § 1001. **Please send your new request to the address above.**

This is our final action on this above-numbered request. You may appeal my decision in this matter by writing within 60 days from the date of this letter, to the **Office of Information and Privacy, Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.**  Both the envelope and the letter of appeal should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court.  28 C.F.R. § 16.9.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure

**<u>EXHIBIT 2</u>**



# NATIONAL BORDER PATROL COUNCIL

of the

## American Federation of Government Employees

### Affiliated with AFL-CIO





*For Immediate Release:*                                    *April 23, 2007*

## FRONT-LINE AGENTS HAVE NO CONFIDENCE IN BORDER PATROL CHIEF

In an unprecedented move, the leadership of the National Border Patrol Council and its constituent locals cast a unanimous vote of "no confidence" against David Aguilar, the Chief of the U.S. Border Patrol at their recent meeting in Corpus Christi, Texas. More than 100 union leaders, the vast majority of whom are still active Senior Border Patrol agents, participated in the vote. They represent about 11,000 non-supervisory Border Patrol employees from the southern and northern borders, as well as the southeastern coastal areas and Puerto Rico.

This measure reflects the growing frustration among front-line employees with the misguided policies and politics of the Border Patrol and the refusal of its top managers to speak out against them. Some of the more troubling reasons for this dissatisfaction include the following actions:

- Shamelessly promoting amnesty and a greatly expanded guest worker program as key elements of the solution to the illegal immigration crisis despite intense opposition to those concepts from the front-line Border Patrol agents who risk their lives enforcing our Nation's immigration laws.

- Declaring our borders to be secure while millions of people illegally slip across them every year.

- Perpetuating the "strategy of deterrence" despite clear and convincing evidence that it does not deter **anyone** from illegally crossing the border. (This strategy requires Border Patrol agents to remain in fixed positions along the border, and in many cases prevents them from leaving those positions to pursue people who are spotted crossing illegally.)

- Prohibiting Border Patrol agents from enforcing immigration laws in "interior" towns and cities, including many that are only a short distance away from the border.

- Preventing Border Patrol agents from pursuing vehicles that flee from them, even those that are carrying tons of narcotics or other dangerous contraband.

- Believing the perjured allegations of criminals over the sworn testimony of innocent Border Patrol agents.

- Forbidding front-line Border Patrol agents from working Congressionally-funded overtime — at the same time the Administration is trying to double the size of the workforce.

- Forcing all Border Patrol stations across the country to adopt uniform shift hours, making it easier for smugglers to evade apprehension during shift changes.

- Drastically shortchanging the funding for transfers of front-line Border Patrol agents in order to fund unnecessary transfers of management cronies.

- Cutting corners in the hiring and training processes in order to meet recruitment goals, including the elimination of two weeks of instruction at the Border Patrol Academy.

T.J. Bonner, the President of the National Border Patrol Council, issued the following statement today:

"The U.S. Border Patrol has a long and proud history. Since its inception in 1924, tens of thousands of dedicated and courageous individuals have honorably served this country as Border Patrol agents, working in conditions that are often arduous and dangerous. To date, more than 100 of these agents have made the ultimate sacrifice in the line of duty.

Until recently, these men and women labored in relative obscurity, protecting our borders day and night while other Americans went about their daily business or slept. Although the Border Patrol has never had enough personnel or equipment to accomplish its mission of securing our borders, it has always done the best that it could with those limited resources.

As the public has demanded that more attention be focused on border security, our elected leaders have responded by introducing hundreds of legislative proposals, as well as by providing a modest amount of additional resources. Unfortunately, this has been accompanied by the politicization of the top ranks of the Border Patrol. Instead of maintaining their traditional neutral advisory role, these high-level managers have become advocates for the administration's ill-conceived political agenda that includes amnesty for millions of illegal aliens.

Front-line Border Patrol agents who risk their lives protecting our borders have every reason to expect that the leadership of their own agency will support them. When this does not occur, and instead they are undermined by their so-called leaders, no one should be surprised that they express a loss of confidence in those managers. True leaders have the vision to see what needs to be done, the character to inspire others to follow them, and the integrity to do the right thing regardless of the amount of pressure to do otherwise.

It is important to understand that this vote of no confidence has nothing to do with the normal tensions between labor and management. Those have existed for decades, and have involved a number of other Border Patrol Chiefs. Despite those occasional differences of opinion, the front-line agents respected those leaders and believed that everyone in the organization shared the common goal of securing the borders. Sadly, that is no longer the case.

This lack of leadership has caused morale to plummet, which in turn has accelerated the attrition rate among experienced agents. Unless drastic changes are made soon, the goal of securing our borders will remain as elusive as ever."

*The National Border Patrol Council represents approximately 11,000 non-supervisory Border Patrol employees nationwide. For further information, contact T.J. Bonner at (888) 583-7237.*

**EXHIBIT 3**



**CONSULADO DE MÉXICO
EAGLE PASS, TEXAS, EUA**

File: 710-03(EAG)8101

Number: 00815

Eagle Pass, Tx. April 18, 2005.

Mr. Don G. Lettsinger
Sheriff Edward County
P.O. Box 156
Rocksprings, Texas

I am addressing to you, regarding the case of the Mexican national, Ms. MARICELA RODRIGUEZ GARCIA (DOB 4-11-1979), who based on the information obtained by this Consulate, received a gunshot wound by an agent of the Sheriff Department of Edward County, that caused injuries in her face.

As far as we know, last April 15, 2005 the Mexican national was transported in first instance to Val Verde Hospital in Del Rio, Tx, and then to San Antonio, Tx., where she was attended at the University Hospital. Today, Mr. Gabriel Salas a member of the staff of this office had the opportunity of interviewed Ms. RODRIGUEZ Who confirms the facts of the incident.

Based on the Consular Convention between Mexico and the United States and the Vienna Convention on Consular Relations, the Consulate of Mexico is entitled to represent, protect an defend the rights of Mexican nationals in this country. Therefore, I would like to point out, that is the care of my Country that this kind of incidents against our nationals, do not remain unpunished.

1

JAN 23, 2007 08:59                                                                          Page

JAN-23-2007 07:47A                                                                    P:5

Page 2 of 2

This Consulate has asked the assistance of Sgt. Robert L. Smith, Office of the Texas Rangers in Del Rio, in order to initiate an investigation so a complaint be filed to the U.S. authorities

I would like to express my gratitude for your kind attention and cooperation in this matter.

Sincerely,

Jorge Ernesto Espriel Montes
Consul of México.

Ccp.      Mr. Don G. Lettsinger, Sheriff Edward County, P.O. Box 156, Rocksprings, Texas
          Mr. Fred Hernandez, District Attorney, Del Rio, Texas
          Mr. J.A. García, Attorney at Law, 8107 Broadway suite 201, San Antonio, Tx. 78209
          Sgt. Robert L. Smith, Texas Rangers, 2012 Avenue F., Del Rio, Tx 78840
          Lic. Gerónimo Gutiérrez Fernández.- Subsecretario para América del Norte.
          Min. Miguel Gutiérrez Tinoco.- Director General de Protección y Asuntos Consulares
          Emb. Arturo Aquiles Dáger Gómez.- Consultor Jurídico
          Emb. Carlos de Icaza.- Embajador de México, Washington, D.C.
          Emb. Martha I. Lara.- Cónsul General de México, San Antonio, Tx.

Jeem/gsi

2

JAN 23,2007 09:00                                                                    F

**EXHIBIT 4**



**U.S. Department of Justice**

United States Attorney
Western District of Texas

---

JOHNNY SUTTON                                      *601 NW Loop 410 STE 600*                    *(210)384-7400*
*United States Attorney*                            *San Antonio, Texas 78216*                    *FAX: (210)384-7474*

**FOR IMMEDIATE RELEASE**                    Contact: Brent Gray, DOJ Civil Rights Division
March 10, 2003                                                  (877) 678-2201
**On the Web at: WWW.USDOJ.GOV/USAO/TXW/INDEX.HTML**        Daryl Fields
                                                                          (210) 384-7440

**FORMER BORDER PATROL AGENT SENTENCED FOR CIVIL RIGHTS VIOLATION**

**(DEL RIO, TEXAS)** U.S. Attorney Johnny Sutton announced today that former U.S. Border Patrol agent **GARY MARK BRUGMAN** was sentenced to 27 months in federal prison for violating the rights of a Mexican citizen while acting as a peace officer. In addition to the prison term, U.S. District Judge William Wayne Justice also ordered that Brugman be placed under supervised release for a period of two years after completing his prison term.

On October 31, 2002, a federal jury in Del Rio convicted the 36-year-old Eagle Pass, Texas, resident on one count of deprivation of civil rights under color of law. The jury found that on January 14, 2001, a group of ten Mexican Nationals illegally crossed the Rio Grande river onto Rosetta Farms, a pecan orchard just outside Eagle Pass. U.S. Border Patrol agents were dispatched to the area to investigate ground sensor activity. When they arrived at the location, the agents discovered the aliens and a foot chase ensued. The aliens ultimately gave up and sat down on the ground. Brugman caught up with the group of aliens and in front of two other Border Patrolmen, began kicking and punching one of the captured aliens.

"Law enforcement officers are entrusted to uphold the law, not break it," stated U.S. Attorney Johnny Sutton. "Mr. Brugman's actions were inexcusable."

Mr. Sutton commended the investigative cooperation received by Jorge Espejel, the Consul of Mexico in Eagle Pass, Texas, for locating the victim in Mexico and making him available to U.S. authorities.

This case was investigated by Special Agent Gary Moore with the Office of Inspector General and prosecuted by Assistant U.S. Attorney Bill Baumann and Department of Justice Civil Rights trial attorney Brent Gray.

#####

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  1:07-cv-00506 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, *et al.*, | ) | |
| Defendants. | ) | |
| _____ | ) | |

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Application For Injunctive Relief, any opposition

thereto, and the entire record herein, it is hereby

ORDERED that:

1.    Plaintiff's application is granted.

2.    Defendants U.S. Department of Justice and U.S. Department of State are hereby

enjoined from continuing to withhold non-exempt records responsive to Judicial

Watch's January 24, 2007 FOIA requests.

3.    Defendants shall search for and produce all non-exempt responsive records by

_____, 2007 and a *Vaughn* index of any and all responsive records subject

to a claim of exemption.

SO ORDERED.


DATE:_____                    _____
                                            The Honorable Richard J. Leon
                                            United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:07-cv-00506 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE | ) | |
| | ) | |
| and | ) | |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S REQUEST FOR HEARING; STATEMENT**
**OF FACTS IN SUPPORT OF SAME**

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel and pursuant to LCvR 65.1(d),

respectfully requests that the Court hold a hearing on Judicial Watch's application for an injunction

within twenty (20) days. In support of this request, Judicial Watch submits the following statement

of facts.

1.    Judicial Watch has been attempting to secure the release of certain records in the

possession of Defendants U.S. Department of State ("DOS") and U.S. Department of Justice

("DOJ") since January 24, 2007. *See* Affidavit of Meredith L. Di Liberto, attached as Exhibit 1 to

Plaintiff's Application for a Preliminary Injunction ("Di Liberto") at ¶¶ 2, 3. The records at issue

largely concern communications and correspondence between Defendants and the Government of

Mexico regarding Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of

U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting

incident in Texas on February 17, 2005. *Id.*

2.      DOJ and DOS not only failed to respond to Judicial Watch's request within the statutorily mandated 20-day time period or avail themselves of FOIA's provision for extending that time period, but they failed to respond in *any* fashion to Judicial Watch's January 24, 2007 request. Having no other recourse, Judicial Watch filed this lawsuit on March 16, 2007.  Di Liberto Affidavit at ¶¶ 5, 6.

3.      After the lawsuit was filed and served, counsel for Defendants contacted Judicial Watch seeking additional time for the agencies to respond to the request.  Judicial Watch and DOS came to an agreement on a date certain for the production of non-exempt responsive records, but DOS refused to sign a Stipulation and Agreed Order.  DOJ has yet to offer a date certain for the production of records and remains completely non-responsive to negotiations regarding additional time.

4.      Judicial Watch has attempted in good faith to work out a mutually agreeable time frame for Defendants to produce records responsive to its January 24, 2007 FOIA request.  These attempts have not been reciprocated by Defendants, and, instead, the process has stalled.

5.      There is tremendous public interest in the records at issue.  Thousands of news stories have been written about the incident and thousands of websites and blogs are devoted to the issue. Individuals as well as elected officials have begun petitions seeking pardons for Agents Ramos and Compean, and the integrity of the U.S. Department of Homeland Security, DOJ and the U.S. Attorney's Office have all been publicly called into question over the allegations that law enforcement officers are being prosecuted at the behest of the Mexican Government.  *See* Di Liberto Affidavit at ¶¶ 9-21.

6.     As Judicial Watch has a statutory right to the records at issue under FOIA and Defendants have offered no legal justification or excuse for their failure to make the records publicly available, Judicial Watch's application for a preliminary injunction should be heard at the earliest practicable date.

<div style="margin-left:40%;">

Respectfully submitted,

JUDICIAL WATCH, INC.

/s/ Paul J. Orfanedes
D.C. Bar No. 429716
Meredith L. Di Liberto
D.C. Bar No 487733
Suite 500
501 School Street, S.W.
Washington, DC 20024
(202) 646-5172

Attorneys for Plaintiff

</div>

July 9, 2007