**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
JUDICIAL WATCH,                                     )
                                                    )
                        Plaintiff                   )
                                                    )
                                                    ) Civil Action No. 07-0506 (RJL)
            v.                                      )
                                                    )
U.S. DEPARTMENT OF JUSTICE, et al.                  )
                                                    )
                        Defendants.                 )
_____)

## DEFENDANTS UNITED STATES DEPARTMENT OF JUSTICE'S AND DEFENDANT UNITED STATES DEPARTMENT OF STATE'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR INJUNCTIVE RELIEF

Defendants United States Department of Justice ("DOJ") and United States Department of State ("State") hereby respond to and oppose Plaintiff Judicial Watch's Application for Injunctive Relief for the reasons set forth below.

## BACKGROUND

On or around January 24, 2007, Plaintiff sent a FOIA request to Defendant DOJ seeking access to five categories of records, each pertaining to Osbaldo Aldrete-Davila, who Plaintiff maintained was a Mexican national who testified in the criminal prosecution of two United States Border Patrol Agents over a February 17, 2005 shooting incident in Texas. Docket Entry 1, Compl. at ¶8. On or about the same date, Plaintiff also sent a FOIA request to Defendant State, again seeking access to records pertaining to Mr. Aldrete-Davila. Id. at ¶ 9.

After not hearing from Defendants regarding its January 24, 2007 requests, on or around March 16, 2007, Plaintiff filed the instant lawsuit. Docket Entry 1. After the filing of the lawsuit, counsel for the Parties attempted to discuss scheduling orders for the search and

production of non-exempt responsive records for both Defendants DOJ and State. Though the Parties had initially agreed upon specific dates for Defendant State, the undersigned counsel was still attempting to ascertain Defendant DOJ's amenability to such a scheduling order. Ultimately, due to disagreements over certain language in the scheduling order for Defendant State, the Parties were unable to come to an agreement for either Defendant.

During this time, however, Defendants DOJ and State continued to process Plaintiff's FOIA requests. By letter dated June 15, 2007, Defendant DOJ advised Plaintiff that it had forwarded Plaintiff's FOIA request to the United States Attorney's Office for the Western District of Texas. Docket Entry 14-2, Affidavit of Di Liberto, Ex. 1. Defendant DOJ further advised that all records sought by the Plaintiff concerned a witness and defendants in the above-referenced criminal case and that third-party records generally cannot be released absent: (1) express authorization and consent of the third-party; (2) proof that the subject of the request is deceased; or (3) a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records. Id. Defendant DOJ explained that Plaintiff had not furnished a release by the witness and defendants and that it had not provided any public interest argument justifying disclosure.[1] Id. Defendant DOJ advised that absent such showings, release of the requested records would be a violation fo the Privacy Act, 5 U.S.C. § 552a and sections (b)(6) and (b)(7)(c) of the Freedom of Information Act, 5 U.S.C. § 552. Id.

By letter dated April 6, 2007, Defendant State acknowledged receipt of Plaintiff's January

---

[1] Plaintiff's January 24, 2007 request to Defendant DOJ contained no public interest justification with regards to the specific records requested. Plaintiff only set forth a public interest argument with regards to a request to have its search and duplication fees waived.

24, 2007 request and assigned it a case control number. On July 16, 2007, Defendant State sent a letter to Christopher J. Farrell, Director of Investigations and Research for Judicial Watch, explaining that it had completed processing of Plaintiff's request. Exhibit 1. Defendant State provided six pages of responsive documents and did not withhold any responsive documents. Id.

However, a week or so earlier, on July 9, 2007, Plaintiff filed an application for injunctive relief asking the Court to enjoin Defendants DOJ and State from withholding records responsive to its January 24, 2007 FOIA requests. Docket Entry 14.

## ARGUMENT

### I.     Plaintiff's Application For Injunctive Relief As To Defendant DOJ Should Be Denied

#### A.     Applicable Law for Injunctive Relief

In determining whether to enter a permanent injunction, the Court considers a modified iteration of the factors it utilizes in assessing preliminary injunctions: (1) success on the merits; (2) whether the plaintiff will suffer irreparable injury absent an injunction; (3) whether, balancing the hardships, there is harm to defendants or other interested parties; and (4) whether the public interest favors granting the injunction. See National Ass'n of Psychiatric Health Systems, et al. v. Shalala, 120 F.Supp.2d 33, 44 (D.D.C.2000). See also Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); National Mining Ass'n v. U.S. Army Corps of Engineers, 145 F.3d 1399, 1408-09 (D.C. Cir. 1998) (demonstration of actual success on the merits required for permanent injunctive relief).

Injunctive relief, however, is an extraordinary remedy and must be sparingly granted.  Dorfmann v. Boozer, 414 F.2d 1168 (D.C. Cir. 1969).

**B.      Likelihood of Success on the Merits**

Plaintiff cannot demonstrate a substantial likelihood that it will prevail on the merits of its case.  At the very least, there are significant questions about the appropriateness of its request and the privacy interests at issue that render its application for injunctive relief inappropriate.

**1.      FOIA's privacy exemptions applies to foreign nationals**

Plaintiff first argues that it is likely to prevail on the merits because FOIA's privacy exemptions do not apply to foreign nationals like Mr. Aldrete-Davila.  Docket Entry 14 at 6. Plaintiff cites to no legal authority in support of this proposition.  Id.  Moreover, there is case law to the contrary.  In Kele v. United States Department of Justice, 1987 WL 284272, *1 (DCC 1987), the plaintiff requested copies of records pertaining to a Russian citizen who was charged and convicted of espionage.  This Court, citing Shaw v. Department of State, 559 F. Supp. 1053, 1067 (D.D.C. 1983), held that "contrary to the plaintiff's assertion, foreign nationals are entitled to the same privacy rights under the FOIA as United States citizens."  Kele, 1987 WL 284272, *4.

**2.      Plaintiff fails to demonstrate that any public interest outweighs the privacy interests**

Exemption 7 of the FOIA protects from disclosure "records or information compiled for law enforcement purposes" under certain circumstances.  5 U.S.C. § 552(b)(7).  "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope."  Mittleman v. Office of Personnel Management, 76

F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)).

The FOIA does not apply to records or information compiled for law enforcement purposes to the extent release of the information could reasonably be expected to constitute an unwarranted invasion of privacy. 5 U.S.C. § 552(b)(7)(c); see also Chavez-Arellano v. U.S. Dept. of Justice, No. 05-2503 (RMC), 2006 WL 2346450, *7 (D.D.C. Aug. 11, 2006). Pertinent here, Exemption 7(C)'s privacy interest provision applies to witnesses and third parties referenced in law enforcement files. Palacio v. U.S. Dep't of Justice, No. 00-1564, 2002 U.S. Dist. LEXIS 2198, at *9 (D.D.C. Feb. 11, 2002) (finding that release of individuals' name in connection with criminal investigation may carry stigma and subject him to unnecessary public attention or harassment), summary affirmance granted, No. 02-5247, 2003 WL 242751 (D.C. Cir. Jan. 31, 2003); Morley v. U.S. CIA, 453 F.Supp.2d 137, 155 (D.D.C. 2006) (recognizing that D.C. Circuit "has found a considerable stigma inherent in being associated with law enforcement proceedings"); Perlman v. U.S. Dep't of Justice, No. 00-5842, 2001 WL 910406, at *6 (S.D.N.Y. Aug 13, 2001) (finding that release of names of individuals who provided information during investigation would subject them to "embarrassment, harassment or threats of reprisal"), aff'd in pertinent part, 3122 F.3d 100, 106 (2d Cir. 2002) (recognizing that witnesses and third parties have "strong privacy interests" in not being identified as having been part of law enforcement investigation), vacated and remanded, 541 U.S. 970, on remand, 380 F.3d 110, 111-12 (2d Cir. 2004) (per curiam) (affirming previous holding).

In Department of Justice v. Reporters Committee for Freedom of the Press, the Supreme Court stated that the meaning or essence of a privacy interest is the individual's ability to control

information about himself and that the FOIA's authors had not intended the statute to be used to disclose records regarding individual persons. 489 U.S. at 763 and 765. The Court established a balancing test for purposes of determining when a person's privacy interests should be compromised in favor of public disclosure. The test turns on the nature of the document or record at issue, and its relationship to the "core purpose" of the FOIA, which is to shed light on an agency's performance of its duties. Id. at 773. Relevant here, the Court stated this purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's conduct." Id. Furthermore, in NARA v. Favish, the Supreme Court made it clear that where the public interest being asserted is that responsible officials acted negligently or otherwise improperly in the performance of their duties, "bare suspicion" of official misconduct is inadequate to establish a public interest in disclosure. 541 U.S. 157, 172 (2003). Rather, the Court held that "the requester must make "a meaningful evidentiary showing" and produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Favish, 541 U.S. at 173-75. Also, the Court noted that in the absence of contrary evidence, a presumption of legitimacy is accorded to the government's official conduct. Id. (citing United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926)).

Notably, the District of Columbia Circuit has also stated that at least since the 1986 FOIA amendments, the balance contemplated by Exemption 7(c), "is not . . . 'tilted emphatically in favor of disclosure.'" Keys v. U.S. Dep't of Justice, 830 F.2d 337, 346 (D.C. Cir. 1987), quoting Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 587 (D.C. Cir. 1987). Indeed, an agency in a FOIA case may categorically assert Exemption 7(c) to protect

6

the identities of witnesses or other persons mentioned in law enforcement files in such a way as

to associate them with criminal activity. <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at

780; <u>Nation Magazine v. U.S. Customs Service</u>, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995);

<u>Johnson v. Commissioner of Internal Revenue</u>, 239 F.Supp.2d 1125, 1137 (W.D. Wash. 2002)

(Court concluded that the IRS appropriately withheld information identifying third parties and

witnesses contacted during an IRS investigation pursuant to Exemption 7(c)). The fact that the

requester might be able to figure out the individuals' identities through other means or that their

identities have been disclosed elsewhere does not diminish their privacy interests. <u>Fitzgibbon v.

CIA</u>, 911 F.2d 755 (D.C. Cir. 1990); <u>Weisberg v. Dept. of Justice</u>, 745 F.2d 1476, 1491 (D.C.

Cir. 1984).

        In this case, this exemption (and Exemption (b)(6) as well) was applied to law

enforcement (and/or personnel) records related specifically to a third party witness, Mr. Aldrete-

Davila, who Plaintiff asserts testified in the criminal prosecution of two United States Border

Patrol Agents. Defendant DOJ submits that releasing the requested information would constitute

an unwarranted invasion of privacy. Further, it was properly determined that Plaintiff failed to

demonstrate a compelling public interest that outweighed the privacy interests involved here. In

its application for injunctive relief, Plaintiff attempts to bolster its claim of public interest by

submitting an eight page affidavit from Judicial Watch counsel Meredith Di Liberto. Docket

Entry 14-2, Affidavit of Di Liberto, Ex. 1. Though Plaintiff's claim of public interest is not

entirely clear, it appears that Plaintiff is alleging possible misconduct by the United States

Attorney or other government officials involved in the prosecution of the two United States

Border Patrol Agents. <u>Id</u>. at ¶¶ 11, 14-16. Other than bare and conclusory allegations, however,

7

Plaintiff alleges no specific facts of misconduct by any such officials, nor does Plaintiff make any evidentiary showing that would lead a reasonable person to believe that any alleged improprieties took place.  At most, Plaintiff establishes only that there may be significant public or media interest in the overall criminal case.  This does not satisfy its burden under the law.  <u>Elec. Privacy Info. Ctr. v. DOD</u>, 365 F. Supp.2d 98, 102 (D.D.C. 2004) (stating that "[t]he fact that [the requester] has provided evidence that there is some media interest in data mining as an umbrella issue does not satisfy the requirement that [it] demonstrate interest in the specific subject of [its] FOIA request"); <u>ACLU of N. Cal. v. Dep't of Justice</u>, No. 04-4447, 2005 WL 588354, at *13 (N.D. Cal. Mar. 11, 2005) (ruling that "it was not sufficient for the plaintiffs to show [public] interest in only the general subject area of the request")).

### 3.     DOJ's denial of Plaintiff's request was appropriate

Plaintiff also argues that Defendant DOJ was required to conduct an actual search and review of responsive documents before it could assert any applicable exemptions.  Docket Entry 14 at 4-5.  Admittedly, when responding to a FOIA request, FOIA generally imposes an obligation upon an agency to conduct a good faith search for requested records.  <u>Nation Magazine</u>, 71 F.3d at 890.  However, given the specific and peculiar circumstances of this case, Defendant DOJ was not required to do so in this case.

The Courts have sanctioned the denial of a FOIA request even where no actual or adequate search was established.  <u>See</u> <u>FOIA Update</u>, Vol. X, No. 3 at 5 (stating that under <u>Reporters Comm. for Freedom of the Press</u>, Exemption 7(C), "Glomarization" can be undertaken without review of any responsive records, in response to third party request for routine law enforcement records pertaining to living private citizens who have not given consent to

disclosure); see also Butler v. Drug Enforcement Administration, 2006 WL 398653, *5, fn 2 (D.D.C. 2006) (Agency does not need to provide an affidavit regarding its search efforts if the Agency properly refuses to confirm or deny records).

In this case, there is no dispute that Plaintiff is requesting law enforcement documents specifically related to a third party who has not given his consent to such disclosure – i.e. the type of information specifically protected from disclosure under FOIA Exemptions 6 and 7(C). It is also undisputed that Defendant DOJ denied this request on the basis of FOIA Exemptions 6 and 7(c). Under these circumstances, the Agency's response was appropriate and Plaintiff cannot demonstrate a substantial likelihood of prevailing on the merits of his case. It would also be an unnecessary expenditure of the Court's and DOJ's resources to require the preparation of a *Vaughn* index, declarations, and additional briefing and have the Court make a determination on something that is obvious from the face of Judicial Watch's request.

### C.     Likelihood of Irreparable Injury

Plaintiff also fails to show irreparable injury. In support of its claim of irreparable injury, Plaintiff argues that "acts by Government agencies in derogation of statutory rights of the public... can constitute irreparable injury" and cites to two District Court decisions, Gates v. Schlesinger, 366 F. Supp. 797, 800 (D.D.C. 1973) and Public Citizen v. Nat'l Economic Comm., 703 F.Supp. 113 (D.D.C. 1989). First, as discussed above, Defendant DOJ has not committed any acts in derogation of the public's statutory rights. Second, these cases are clearly distinguishable. In both cases, the Court granted preliminary injunctions because the plaintiffs were able to demonstrate irreparable injury if they were not allowed to attend certain public meetings scheduled for dates certain. In Gates, the Court noted that Plaintiff's right to attend the

meeting "will be ***permanently lost*** to Plaintiffs if an injunction is not issued." 366 F.Supp. at

800-01 (emphasis added).[2]  In this case, however, Plaintiff fails to articulate, let alone

demonstrate, how it would be irreparably harmed if it did not receive its requested information

immediately.

### D.    Harm to Defendants or Other Interested Parties

Contrary to Plaintiff's assertion, granting its application for injunctive relief will lead to

significant harm to both the Defendant DOJ and to Mr. Aldrete-Davila.  Plaintiff argues that

"Judicial Watch merely seeks to have them comply with their legal obligation under FOIA."

Docket Entry 14 at 8.  Again, as discussed above, Defendant DOJ is not legally required to

search for and produce the documents requested by the Plaintiff.  It is also undisputed that Mr.

Aldrete-Davila, the subject of Plaintiff's request, has a significant privacy interest in the

requested records.  To grant the Plaintiff's motion without first resolving these matters will result

in an unnecessary and onerous expenditure of Agency time and resources and also constitute an

intrusion into Mr. Aldrete-Davila's privacy interests.

### E.    Public Interest

Finally, even assuming that there is significant public or media interest in the general

subject matter of Plaintiff's request, as Plaintiff contends, Defendant DOJ submits that this does

not necessarily establish that the public interest favors granting the injunction.  On the contrary,

given the important goal of protecting privacy interests under FOIA and conserving Agency

resources, Defendant DOJ submits that the public interest disfavors granting the injunction.

---

[2] Though the <u>Public Citizen</u> case does not reflect any specific discussion regarding "irreparable injury," it is not unreasonable to presume that the same rationale applied.

II.    **Plaintiff Lacks Standing With Regards to Its Application for Injunctive Relief as to Defendant State**

Article III of the United States Constitution confers subject matter jurisdiction on the federal courts in "cases" arising under the Constitution or federal laws and in "controversies" between various parties, delimited by the Article. See also 28 U.S.C.A. § 1331 (West 1993); 28 U.S.C.A. § 1332 (West 1993 & Supp. 2006). One of the prerequisites a plaintiff must therefore meet to come within the federal courts' subject matter jurisdiction is that it present the court with a "case" or a "controversy." In order to meet the Article III case-or-controversy requirement, the plaintiff must have standing to bring the matter in dispute before the court. *See* Allen v. Wright, 468 U.S. 737, 749-51 (1984). The party seeking to invoke federal court jurisdiction bears the burden of proving standing. Lujuan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

A.    **Plaintiff's claims are moot**

Mootness is a jurisdictional question, one which a federal court must resolve before assuming jurisdiction. North Carolina v. Rice, 404 U.S. 244, 246 (1971). The central question of all mootness issues is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief. 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3533.3 (1984). "If an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." Beethoven.Com LLC v. Librarian of Congress, 394 F.3d 939, 950 (D.C. Cir. 2005) (citing Mills v. Green, 159 U.S. 651, 653 (1895)). The issue of mootness depends upon whether the court can grant "any effectual relief." Church of Scientology v. United States, 506 U.S. 9, 12 (1992).

11

In the instant case, Plaintiff's application for injunctive relief seeks to compel Defendant State to respond to its January 24, 2007 request, to produce non-exempt responsive documents, and to provide a *Vaughn* index of any responsive records subject to an exemption. Docket Entry 1 at 14. Following the filing of this application on July 9, 2007, without Court intervention, Defendant State completed its processing of Plaintiff's FOIA request and provided it with all non-exempt responsive documents. Exhibit 1. Moreover, Defendant State has not withheld any responsive documents for which it is asserting exemptions. Id. Thus, Plaintiff's application is now moot. See, e.g., Vonche v. FBI, 999 F.2d 962, 963 (5th Cir. 1993) (dismissing case as moot because only issue in case was "tardiness" of agency response, which was made moot by agency disclosure determination); Atkins v. Dep't of Justice, No. 90-5095, 1991 WL 185084, at *1 (D.C. Cir. Sept. 18, 1991) ("The question of whether DEA complied with the [FOIA's] time limitation in responding to [plaintiff's] request is moot because DEA has now responded to the request.")

## III.     Defendants' Proposed Briefing Schedule

In light of the above and in the interest of moving this matter forward, Defendant DOJ proposes that a briefing schedule be discussed and set during the July 23, 2007 hearing.

To the extent that Plaintiff is dissatisfied with Defendant State's response to its request, Defendant State is also amenable to discussing and setting a briefing schedule.

## CONCLUSION

Based upon the foregoing, Defendants DOJ and State respectfully request that Plaintiff's application for injunctive relief be denied.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)



**United States Department of State**

*Washington, D.C. 20520*

JUL 1 6 2007

Case No.: 200700633
Segment ER001

Christoper J. Farrell
Director of Investigations and Research
Judicial Watch
501 School Street, S.W.
Suite 725
Washington, D.C. 20024

Dear Mr. Farrell:

In response to your request dated January 24, 2007 under the Freedom of
Information Act (Title 5 USC Section 552), we initiated searches of the
following Department of State record systems: the Central Foreign Policy
Records (the principal record system of the Department of State), the Bureau
of Consular Affairs, the Bureau of Diplomatic Security, the Office of the Legal
Adviser, the Bureau of Western Hemisphere Affairs, the American Embassy in
Mexico and the American Consulate General in Ciudad Juarez.

The search of the Central Foreign Policy Records has been completed, and has
resulted in the retrieval of one document responsive to your request. We have
reviewed the document and determined that it may be released in full. The
released document is enclosed.

In addition, the searches of the other records systems: the Bureau of Consular
Affairs, the Bureau of Diplomatic Security, the Office of the Legal Adviser,
the Bureau of Western Hemisphere Affairs, the American Embassy in Mexico
and the American Consulate General in Ciudad Juarez have been completed,
resulting in the retrieval of no documents responsive to your request.

We have now completed the processing of your case. If you have any
questions, you may write to the Office of Information Programs and Services,
SA-2, Department of State, Washington, DC 20522-8100, or telephone us at
(202) 261-8484. Please be sure to refer to the case and segment numbers
shown above in all correspondence about this case.

- 2 -

We hope that the Department has been of service to you in this matter.

Sincerely,

Margaret P. Grafeld, Director
Office of Information Programs and Services

Enclosure:
    As stated.

ACTION DS-00

RELEASED IN FULL

INFO  LOG-00    MFA-00    A-00      CA-00    INL-00    WHA-00    UTED-00
      OBO-00    TEDE-00   DCP-00    CAEX-00  PA-00     PER-00    IRM-00
      R-00      DSCC-00   SAS-00    /000W
      ------------------DF5F8A  160254Z /38

P R 160255Z APR 05
FM AMCONSUL CIUDAD JUAREZ
TO SECSTATE WASHDC PRIORITY 7429
INFO AMEMBASSY MEXICO
AMCONSUL CIUDAD JUAREZ

UNCLAS  CIUDAD JUAREZ 004055


SENSITIVE

DEPARTMENT FOR DS/IP/WHA, DS/DSS/ITA, DS/ICI/CR
MEXICO FOR RSO

E.O. 12958: N/A
TAGS: ASEC
SUBJECT: QUARTERLY STATUS REPORT FOR CIUDAD JUAREZ:  FIRST QUARTER
2005

REF: 03 STATE 07339


Quarterly Status Report for Ciudad Juarez for the first quarter
of 2005.

1.      (SBU) Summary:   First Quarter 2005
Security incidents continue to concern the RSO.  Five municipal
police officers have been killed in the past four weeks.  Even
for Juarez, this is unusually high.  In a retaliation, the
municipal police gunned down four men who were involved in the
murder of one of the police officers.  One of these four is the
son of a prominent senior state police official from Guerero.
He has sworn vengeance and has, according to an intel source,
sent a hit squad to Juarez to kill municipal police officers.
Life goes on.  One of the police officers gunned down was a
police contact of the RSO office and was reported via a Spot
Report dated 03/04/2005.  This contact, wearing his uniform and
ballistic vest, was shot eight times in the head.  One bomb
threat was received (CJ 002675) this quarter and after drilling
several times in the past year, the entire compound was
"cleared" in sixteen minutes!  Five fugitives were returned from
Juarez into the custody of the U.S. Marshal's Service.  After
more than 150 hours, the RSO was putting the finishing touches
on Post's first EAP!  Post had two high priority visitors, the
Ambassador came to Juarez to help celebrate the 10th Anniversary

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DAVID W COX
DATE/CASE ID: 13 JUL 2007 200700633

UNCLASSIFIED

of the Border Liaison Mechanism and two men came from the DS
OSAC office to tour the city and attend an OSAC meeting.  The
office closed a quarter high of 32 background cases this
quarter, making a total of approximately 100 BIs having been
completed in the past year!  A malfeasance case was discovered
within the DHS office in Juarez, case is being worked jointly
between RSO and the DHS-OIG office in El Paso, TX.  The employee
in question has admitted to falsifying information on a friend's
visa paperwork in an effort to "avoid" problems.  RSO has opened
two additional major cases this month:  The first was a case
involving the murder of an American citizen following a bad
relationship with the Carrillo-Fuentes Organization (AKA Juarez
Cartel).  She and her son told the business that they no longer
wished to move the drugs for them and she was beaten to death
with an axe handle.  RSO processed the murder scene and
recovered the murder weapon.  Second case was opened to assist
the DHS-OIG when a source reported that U.S. Border Patrol
(USBP) Agents had shot an unarmed man trying to return to Mexico
from the U.S.  The victim came to the Consulate and was
proferred by the DHS-OIG and he agreed to cooperate.  The two
USBP agents have been indicted for attempted murder and are
awaiting trial.

Significant Issues Involving Constituent Posts: Demonstration in
front of AmConsulate Hermosillo (HERMO 00022); Military
Munitions Recovery in Nogales (CJ 001662) and U.S. Consulate
Dependent Attacked on Street by Escaped Prisoners (CJ 003210).
RSO/I continues to work with Hermosillo, Nogales and Juarez on
I1A and K2B fraud cases.

ACTION DRILLS:

                    1.   IDENTITY OF OFFICERS

JAMES HEIM, RSO
ORLANDO VELASQUEZ, ARSO
MIGUEL ALVAREZ, FSN/I


2.   CONSULATE:

..    FIRE DRILL - 06/25/2004
..    BOMB DRILL - 03/01/2005
..    EMERGENCY DESTRUCTION DRILL - N/A
..    INTERNAL DEFENSE DRILL - N/A
..    DUCK AND COVER  - 02/27/2004, equipment tested 09/28/2004
..    WARDEN SYSTEM EXERCISE FOR NOTIFICATION OF
   OFFICIAL PERSONNEL  - 02/27/2004
..    WARDEN SYSTEM EXERCISE FOR NOTIFICATION OF


                    UNCLASSIFIED

UNCLASSIFIED

NON-OFFICIAL U.S. CITIZENS  - N/A

### 3. OTHER THAN THE CONSULATE:

#### TEMPORARY PROCESSING FACILITY (TPF)

a. FIRE DRILL – 06/25/2004
b. BOMB DRILL  – 03/01/2005
c. EMERGENCY DESTRUCTION DRILL – N/A
d. INTERNAL DEFENSE DRILL – N/A

e. DUCK AND COVER – 02/27/2004, equipment tested 09/28/2004

#### 4. SYNOPSIS OF WORK ACCOMPLISHED:

Currently there is no connectivity between the main compound and building D for IDNS or evacuation alarms.  Project will also replace the problematic Wheelock system with a new Selectone one.  RSO continues conference calls for PME upgrade which is scheduled to begin in Summer 2005.

### C. (SBU) CONSTITUENT POSTS

1. The U.S. Consulates in Hermosillo and Nogales, Sonora, Mexico

a. (U) MSG ACTIVITIES:

.. DATE/TYPE OF DRILLS: N/A, NO MARINES AT POST
.. GUARD SCHOOL ATTENDANCE: N/A, NO MARINES AT POST
.. VISITS OF HQ MSG PERSONNEL: N/A, NO MARINES AT POST
.. TDY REQUEST: N/A, NO MARINES AT POST

b. (SBU) THREATS, INCIDENTS AND SIGNIFICANT EVENTS:

.. POST OF RECORD: U.S. CONSULATE GENERAL CIUDAD JUAREZ
One threat was received at the U.S. Consulate in Ciudad Juarez and after investigation, RSO determined it to be false.

c. (SBU) DS INITIATED INVESTIGATIONS:

A. NUMBER OF CASES GENERATED BY HQ.

| ASSIGNED | OPENED | CLOSED | PENDING | OVERDUE |
|---|---|---|---|---|
| 1. PSS (20) | (07) | (12) | (32) | |
| (00) | | | | |
| .VF (00) | | (01) | (00) | |

UNCLASSIFIED

UNCLASSIFIED

(01)                    (00)

3. DF          (00)              (01)                    (00)
   (00) .                 (00)

4 .CIL         (00)              (00)                    (00)
        (00)                (00)

5. PR          (00)              (01)                    (00)
     (00)                (00)

6 .CI          (00)              (01)                    (01)
        (00)                (00)

7. PII         (00)              (00)                    (00)
     (02)                (00)

B. NUMBER OF CASES GENERATED BY POST

1. FSN/FSC                       (22)                    (37)
     (00)                (00)

2. AGEN. RFA                     (00 )              (01)
     (01) .              (00)

3. GOV. RFA                      (00)              (00)
     (00)               (00)

C. ANTI-FRAUD ACTIVITIES

1. NUMBER OF INTERVIEWS CONDUCTED: 25

2. NUMBER OF RECORDS CHECKS CONDUCTED (ANY SOURCE):65

3. NUMBER OF VISA REFERRALS BY HOST NATION (HN) POLICE
AUTHORITIES DUE TO ANTI-FRAUD INFORMATION PROVIDED BY
POST: 2

4. NUMBER OF ARRESTS MADE BY HOST NATION (HN) POLICE AUTHORITIES
DUE TO ANTI - FRAUD INFORMATION PROVIDED BY POST.  1

5. NUMBER OF DATABASE CHECKS AND CABLE/EMAIL
REQUESTS RETURNED TO DS/I AND OR DS/I/ICI/CR: 15

6. NUMBER OF INVESTIGATIONS OPENED/CLOSED:
OPENED- 2 /CLOSED-1

7. PARTICIPATION IN HN ANTI-FRAUD OPERATIONS/
INVESTIGATIONS: 0

UNCLASSIFIED

8. SIGNIFICANT MEETINGS WITH HN/OTHER OFFICIAL'S FRAUD
RELATED MATTERS (IE. SEMINARS, CONFERENCES, ETC.) :   1

9. TRAINING WITH CONSULAR STAFF, LOCAL POLICE,
 IMMIGRATION, AND AIRPORT/AIRLINE OFFICIALS ON FRAUD
 DETECTION:  0

10. NUMBER OF NIV OR IV REFUSED OR REVOKED AS A RESULT OF
NVESTIGATIONS BY FPU/ARSO-I:  0

11. NUMBER OF PASSPORT APPLICATIONS DENIED AS A RESULT
OF INVESTIGATIONS:  0

12. NUMBER OF CLASS LOOKOUT ENTRIES MADE AS A
 RESULT OF INVESTIGATIONS:  0

13. FBI CASES REFERRED FOR FINGERPRINTS:   0

14. ACTION CABLES NOT ANSWERED BY DS: NONE


;.    SUMMARY OF SEPARATE REPORTS:

A. CIWG REPORT:

1. DATE SENT:  N/A
2. CABLE NUMBER:  N/A

B. EMERGENCY ACTION PLANS:

1. U.S. CONSULATE GENERAL-CIUDAD JUAREZ
2. DATE OF FINAL APPROVAL:   TBD
3. SUBMISSION DATE: April 2005
4. RESUBMISSION DATE: 5 YR CYCLE, March 2010

:. SECURITY SURVEYS:

1. FACILITY: U.S. CONSULATE GENERAL
2. DATE OF SURVEY: 12/04
3. NEW SURVEY DUE: 12/04

1. FACILITY: TPF CUIDAD JUAREZ
2. DATE OF SURVEY: OBO/ESC 04/04, OBO/FBR 06/04
3. NEW SURVEY DUE: 04/06

). PROCEDURAL SECURITY SURVEY:
.. SUBMITTED: 9/21/2000

Case 1:07-cv-00506-RJL    Document #ADDITIONAL 07/19/2007    Page 8 of 8

:. COMPREHENSIVE SPS INVENTORY: ALL INVENTORY ACCOUNTED FOR AND
EPORTED TO RSO MEXICO CITY.

'. RSO QUARTERLY TRAVEL REPORT:  ARSO/I traveled on an emergency
asis in February to AmConsulate Nuevo Laredo to assist RSO
onterrey during a threat directed at the post/

:. ANNUAL CRIME EVALUATION QUESTIONNAIRE:
SUBMITTED 03/17/2005

:. BI ANNUAL SECURITY ENVIRONMENTAL CUIDAD JUAREZ
ROFILE QUESTIONNAIRES: SUBMITTED 03/19/2005 (CJ 03156).

. FIREARMS QUALIFICATION: None

LAIR

NNN

UNCLASSIFIED