**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**


**JUDICIAL WATCH, INC.**

        **Plaintiff,**

   **v.**                              **Civil Action No. 07-0506 (RCL)**

**UNITED STATES DEPARTMENT OF
      JUSTICE**

        **Defendant.**

**DEFENDANT DEPARTMENT OF JUSTICE'S
CROSS-MOTION FOR SUMMARY JUDGMENT** _____

_____

       Defendant, the United States Department of Justice, through undersigned counsel,

respectfully moves this Court for summary judgment pursuant to Fed. R. Civ. P. 56.  In support,

Defendant respectfully submits the attached memorandum of points and authorities, statement of

material facts not in genuine dispute, a declaration from an official with the Executive Office for

United States Attorneys,  exhibits, and a proposed order.

                                Respectfully submitted,

                                /s/_____
                                JEFFREY A. TAYLOR, D.C. BAR # 498610
                                United States Attorney
                                /s/_____
                                RUDOLPH CONTRERAS, D.C. BAR # 434122
                                Assistant United States Attorney
                                /s/_____
                                BLANCHE L. BRUCE, D.C. BAR # 960245
                                Assistant United States Attorney
                                  555 Fourth Street, N.W., Room E-4220
                                Washington, D.C. 20530
                                (202) 307-6078

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**JUDICIAL WATCH, INC.**

         **Plaintiff,**

    **v.**                            **Civil Action No. 07-0506 (RCL)**

**UNITED STATES DEPARTMENT OF**
        **JUSTICE**

         **Defendant.**

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE ISSUE

_____Pursuant to Local Rule 7.1(h),  Defendant , the United States Department of Justice, submits this statement of material facts as to which there is no genuine dispute.

1.      On January 24, 2007, the Executive Office for United States Attorneys (EOUSA) received a Freedom of Information Act (FOIA) request for records pertaining to Osbaldo Aldrete-Davila, a Mexican national, who testified in the prosecution of U. S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting incident in Texas on February 17, 2005. The request sought records in five (5) categories: 1) communications between DoJ and any/all officers, agencies, and /or representatives of the Government of Mexico concerning Osbaldo Aldrete-Davila; 2) communications between DoJ and the U.S. Department of State and/or the Department of Homeland Security (and its subordinate agencies) concerning Osbaldo Aldrete-Davila; 3) the participation of DoJ personnel in coordinating, facilitating and/or approving the lawful entry(ies) of Osbaldo Aldrete-Davila into the United States (reportedly for the last time in February 2006); 4) any/all agreements, deals, promises, settlements, grants, understandings, memoranda and/or letters granting any form of immunity to Osbaldo Aldrete-Davila; and 5) records detailing the terms and

conditions permitting Osbaldo Aldrete-Davila to lawfully enter the United States. The time frame for the FOIA request was from February 17, 2005 to present (Finnegan Decl. ¶ para. 7, Exhibit A).

2.      EOUSA acknowledged receipt of Plaintiff's FOIA request in a letter dated April 7, 2007 and assigned Plaintiff's request number 07-964. The letter also informed Plaintiff, among other things, the fees which would incur due to the processing (Finnegan Decl. ¶ 8, Exhibit B).

3.      On April 3, 2007, EOUSA sent a letter to Plaintiff requesting that it identify the United States Attorney's Office it believed the records to be located and notified Plaintiff of its administrative appeal rights (Finnegan Decl. ¶ 9, Exhibit C).

4.      In a letter dated April 9, 2007, Plaintiff filed an administrative appeal with the Department of Justice, Office of Information and Privacy (OIP) and stated that it identified the United States Attorney's Office for the Western District of Texas as the location of the records (Finnegan Decl. ¶ 10, Exhibit D).

5.      OIP acknowledged receiving Plaintiff's administrative appeal on April 17, 2007, and assigned it appeal number 07-1226 (Finnegan Decl. ¶ 11, Exhibit E).

6.      In a letter dated May 9, 2007, OIP remanded Plaintiff's request to EOUSA to conduct a search for responsive records (Finnegan ¶ 12, Exhibit F).

7.      In a letter dated May 11, 2007, EOUSA notified Plaintiff that it would process its FOIA request under number 07-1461. The letter also informed Plaintiff that by making the request it had agreed to pay up to $25.00 in fees and that it could use the enclosed form to obtain the release authorization from the third party whose records it requested (Finnegan Decl. ¶13, Exhibit G).

8.      In a letter dated June 15, 2007, EOUSA informed Plaintiff that the records which they sought pertained to defendants and a witness in a criminal prosecution, and that the records would

2

not be released "absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result form the disclosure of the requested record" (Finnegan Decl. ¶ 14, Exhibit H).

9.      EOUSA informed Plaintiff that it had not received any third party authorization and that if failed to meet the high standard of NARA v. Favish, 124 U.S. 1570 (2004) with regard to the public interest in disclosure because it had neither alleged nor had it shown any government impropriety in connection with the criminal prosecution of the federal agents (Finnegan Decl.¶ 15, Exhibit H).

10.     EOUSA advised Plaintiff that any responsive public records, if requested, contained in the file would be released without express authorization or public justification for release (Id.).

11.     In the June 15, 2007, EOUSA also informed Plaintiff that it was withholding records pursuant to FOIA Exemptions 6 and 7(C ), 5 U.S. C. 552 (b)(6) & (b)(7) ( C), and Privacy Act Exemption (j)(2),5 U.S.C. § 552a(j)(2).    EOUSA informed Plaintiff that it had right to administratively appeal  (Finnegan Decl ¶ 16, Exhibit H).

12.     EOUSA has no record that Plaintiff filed an administrative appeal from its denial of access to third party law enforcement records (Finnegan ¶  17, Exhibit H).

**The Search for Records**

13.     EOUSA learned that the responsive records were located in the El Paso and San Antonio Divisions of the United States Attorney's Office, with the majority of the records in the El Paso Division.  EOUSA learned that the criminal file consisted of approximately 17 boxes of material with more than 50,000 pages located in the Criminal Case File System (Justice/USA-007)

3

captioned U.S. v. Ignacio Ramos v and Jose Compean, Cr.No. EP-05-CR-00836 (Finnegan Decl ¶ 18).

14.    EOUSA also learned that potentially responsive records were located in the Administrative File System (Justice/USA-001) in a Victim/Witness file captioned "Ramos, Ignacio, et al," and in various internal electronic communications circulated among prosecutors in the San Antonio and El Paso Divisions (Finnegan Decl. ¶ 18).   The transcripts of the Ramos/Compean trial were on the USAO public website (Finnegan Decl. ¶ 19).

15.    EOUSA has received no response from Plaintiff that it was interested in receiving responsive public documents (Finnegan Decl. ¶ 20).

16.     EOUSA did not conduct a document-by-document search to locate the specific records requested because "each category of information identified in [Plaintiff's] request is clearly exempt from disclosure pursuant to Exemptions 6 and 7(C)"(Finnegan Decl. ¶¶ 21-22).

17.    EOUSA asserted exemption (b)(7)(C) to categorically withhold all responsive records pertaining to the defendants and the named witnesses involved in the Ramos/Compean criminal prosecution because the records were 1) compiled for law enforcement purposes; 2) the release of the records could reasonably be expected to constitute an unwarranted invasion of personal privacy for the third parties; and 3) there is no public interest in disclosure that outweighs the strong interest of named third-party individuals (Finnegan Decl ¶¶ 23-30).

18     Defendant asserted exemption (b)(6) in conjunction with exemption (b)(7)( C) to deny access to information pertaining to named third party individuals such as Social Security Number, a home address, a telephone number, a date of birth, and details of a person's medical condition, as well as information that may be intimate or embarrassing to the individuals. Without consent from

4

the third parties or proof of death, Plaintiff has failed to establish an overriding public interest in disclosure  (Finnegan Decl ¶¶ 31-32).

**Segregability**

20.    EOUSA determined that there would be no reasonably segregable information contained in the responsive documents due to the limited scope of Plaintiff's request which seeks access to very specific privacy-sensitive information pertaining to a witness who is named in the criminal prosecution file of two third-party defendants.  Therefore, redacting the names of the third parties contained in this file would not protect their strong privacy interests in this information because their identities are already known by virtue of the targeted request. (Finnegan Decl.¶¶ 33-34).

Respectfully submitted,

/s/_____

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/_____
BLANCHE L. BRUCE, D.C. BAR # 960245
Assistant United States Attorney

Dated: March 21, 2008

5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**JUDICIAL WATCH, INC.**

          **Plaintiff,**

  **v.**                                **Civil Action No. 07-0506 (RCL)**

**UNITED STATES DEPARTMENT OF
     JUSTICE**

          **Defendant.**

**DEFENDANT'S MEMORANDUM IN SUPPORT ITS
MOTION FOR  SUMMARY JUDGMENT**

     Defendant, the United States Department of Justice, moves this Court for summary judgment pursuant to Fed. R. Civ. P. 56 (c).  In support, Defendant states the following.

**I.      Background**

     Defendant adopt its Statements of Material Facts Not in Genuine Dispute.

**II.     Standard of Review**

     Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).  Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[T]he

Court must view all facts in the light most favorable to the non-moving party." People For the American Way Foundation v. National Park Service, 503 F.Supp. 2d 284, 291 ( D.D.C. 2007).

FOIA cases are typically decided on motions for summary judgment. See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). To be entitled to summary judgment, the agency must prove that each document was produced, not withheld, is unidentifiable, or is exempt from disclosure. Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits or declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of the agency.'" Public Citizen, Inc. v. Dept. of State, 100 F.Supp.2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "Summary judgment is available to the defendant in a FOIA case, when the agency proves that it has fully discharged its obligations under FOIA." Miller v. U.S. Dept. of State, 779 F.2d 1378, 1382 (8th Cir. 1985).

## III.    Discussion

### A.    Adequacy of Search

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. See Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Judicial Watch, Inc. v. U.S. Dept. of Commerce, 337 F. Supp.2d 146, 158 (D.D.C. 2004). "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the

effort in light of the specific request." <u>Meeropol v. Meese</u>, 790 F.2d 942, 956 (D.C. Cir. 1986).

An agency is not required to search every record system, but rather only those systems in which it

believes responsive records are likely to be located. <u>See</u> <u>Oglesby</u>, 920 F.2d at 68. The burden rests

with the agency to establish that it has "made a good faith effort to conduct a search for the requested

records, using methods which can be reasonably expected to produce the information requested."

<u>Id</u>. at 68. "An agency may prove the reasonableness of its search through affidavits of responsible

agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in

good faith." <u>Miller</u>, 779 F.2d at 1383.

In this case, responsive records were located in the Criminal File System under <u>U.S. Ignacio</u>

<u>Ramos and Jose Compean</u>, Cr. No. EP-05-CR-00836, the Administrative File System (Justice/USA-

001) in a Victim/Witness file captioned "Ramos, Ignacio, et al," and in internal electronic

communications among prosecutors in the El Paso and San Antonio Divisions of the United States

Attorney's Office for the Western District of Texas (Finnegan Decl. ¶ 18). The records consisted of

approximately 17 boxes containing more than 50,000 pages (<u>Id</u>.). EOUSA, however, did "conduct

a document-by-document search" of the responsive records because they were "clearly exempt from

disclosure pursuant to Exemptions 6 and 7( C)" (Finnegan Del. ¶¶ 21- 22). Each category of

Plaintiff's FOIA request was exempted from disclosure because EUOSA determined that a release

"would reveal non-public details of the Ramos/Compean criminal investigation and Mr. Davila's

involvement in it, and non-public information pertaining to Mr. Davila's personal life, which would

constitute an unwarranted invasion of his substantial privacy interest in this information. The

disclosure of this information could cause unsolicited and unnecessary public attention to be focused

on him, and could lead to harassment and intimidation" (Finnegan Decl. ¶ 21). In addition, EOUSA

concluded that the responsive records would reveal "non-public details of the Ramos/Compean criminal investigation and Davila's involvement in it and non-public information pertaining to Davila's personal life, which would constitute invasion of his substantial privacy interest in this information" (Finnegan Dec. ¶ 21). Furthermore, Plaintiff was instructed by letter in June 2007 to obtain the express authorization and consent of the third party, absence proof of death, which it did not do .(Finnegan Decl. ¶¶ 14-15; Government Exhibit H).  Thus, for EOUSA to conduct a document-by-document search of more than 50, 000 records, which were clearly exempted, would be a significant and ultimately unnecessary administrative burden for the agency to undertake.

The Supreme Court in United States Dep't of Justice v. Reporters Committee for Freedom of the Press , 489 U.S. 749, 780 (1989) (hereinafter Reporters Comm.) found that as a "categorical matter a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.'" (See also SafeCard Services v SEC, 926 F.2d 1197, 1206 (D.C. Cir. 1991 citing Reporters Comm., "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction.").  Because of the inherently sensitive nature of law enforcement records, there is a substantial privacy interest in these records and are exempt from disclosure. SafeCard Services  926 F.2d at 1206. .

FOIA also exempts release of  third party's law criminal enforcement records absence a showing of an overriding public interest.  The Supreme Court  in NARA v. Favish, 541 U.S.157 (2004), reh'g denied, 541 U.S. 1057 (2004) determined that the public interest in FOIA was that

4

which will shed light on the operations and activities of the Federal Government.  Favish requires

requesters to: (1) allege government wrongdoing, which Plaintiff has not done here; and, (2) produce

evidence that would warrant a belief by a reasonable person that the alleged Government impropriety

might have occurred.  Id. at 174.   Because Plaintiff's request seek records which have a substantial

privacy interest and there was no showing of overriding a public interest,  to conduct a document-

by-document search for responsive records that are clearly exempt under  exemptions 6 and 7( C)

was fruitless.

It should be noted that courts have recognized a "Glomar" response as an exception to

conducting a search under FOIA.  "A Glomar response relieves an agency of its usual obligation to

'provide detailed affidavits proving that it performed an adequate search for document." Valdez v.

Dep't of Justice, 474 F.Supp. 2d 128 (D.D.C. 2007).  "A Glomar response is when "a third party is

the target of a FOIA request, the agency to which the FOIA request is submitted may provide a

'Glomar' response, that is, the agency may refuse to confirm or deny the existence of records or

information responsive to the FOIA request on the ground that acknowledging the existence of

responsive records constitutes an unwarranted invasion of the targeted individual's personal

privacy." Id. at 130.  EOUSA is not asserting a Glomar response in the present case because of the

publicity case, and the fact that the Ramos/Compean trial transcripts were posted on the USAO's

public website (Finnegan ¶ 19).   Hence, EOUSA acknowledges the existence of records.

Nonetheless, a Glomar type response would apply here since the records were compiled for criminal

law enforcement purposes, the release of all of them could reasonably be expected to constitute an

unwarranted invasion of personal privacy.

Plaintiff claims that EOUSA "cannot assert that *all* of the records are subject to privacy

exemptions without looking at the records" relying on <u>Church of Scientology v. IRS</u>, 792 F.2d 146, 151-52. The <u>Church of Scientology</u> case, however, predates <u>Reporters Comm</u>., which as previously mentioned approved categorical withholdings especially for the 7(C) exemption. Second, in the <u>Church of Scientology</u> case, the IRS asserted exemption 3 to withhold records as "return information," which the IRS could not stat as a matter of law all of its files were return information. Here, EOUSA asserted 7(C) which protects information in law enforcement records that could reasonably be expected to constitute an unwarranted invasion of personal privacy, which are records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.'" <u>Reporters Comm</u>, 489 U.S. at 780.

The present case is also distinguishable from <u>Santos v. DEA</u>, 357 F. Supp. 2d 33 (D.D.C. 2004) which Plaintiff cites. In <u>Santos</u>, the requester sought information pertaining to the criminal investigation of a witness. DEA neither confirmed nor denied the existence of responsive records without proof of death or a privacy waiver from the witness. DEA's action was affirmed on administrative appeal. In its motion to dismiss, DEA withdrew its "Glomar" response and admitted to the existence of responsive records. DEA then stated that the records were criminal investigatory records subject to Exemptions 2, 3, 7C, 7D, and 7F. This Court subsequently found that DEA's affidavit contained conclusory statements regarding the search for records which was not sufficient for this Court to determine if adequacy of the search. Furthermore, the Court found that even if it could find DEA's search adequate, DEA failed to put forth sufficient detail regarding the connection between the general standards for claiming an exemption and the documents being withheld. The

Court explained that it can not "engage in a reasoned analysis" of DEA's arguments for exemptions where there is 'no connection drawn ...between the documents and the exemptions'" and "'none of the claimed exemptions is correlated to a page or document, let alone to particular parts of a document, as is required in order to justify withholding information'." Id. at 38.   This Court also stated,

> While it may be that the documents requested by the plaintiff are subject to categorical exemptions applicable to investigatory files of third parties that would justify non disclosure, the Court cannot apply a blanket exemption to an investigatory record, especially where the agency fails to put forth a sufficiently detailed description of the documents withheld and the exemptions to which the documents correspond. Id at 38.

Here, EOUSA has done exactly what the Santos court said was necessary.  EOUSA has produced in sufficient detail the nature of the documents which were being withheld and the appropriate exemptions.  Indeed, EOUSA correctly determined that Davila's, as well as Ramos's and Compean's, privacy interests overrode a non-existent public interest in disclosure of law enforcement records which are inherently sensitive in nature, and not receiving third party consent or proof of death, EOUSA properly concluded that all records are exempt pursuant to Exemptions 6 & 7(C )  without conducting a document-by-document review for reasons set forth in Reporters Comm.

**Claimed Exemptions**

### Agency's Responsibility under FOIA

An agency has an obligation to produce requested information unless it falls under one of the FOIA's exemptions.  Pub. Citizen Health Research Group v. Nat'l Insts. of Health, 209 F.Supp.2d 37, 42 (D.D.C. 2002)(citing Dept. of Justice v. Tax Analysts, 492 U.S. 136, 150-51(1989).  Courts

have jurisdiction to "order the production of any records improperly withheld form the complainant." 5 U.S.C. ¶ 552(a)(4)(B). The agency bears the burden of demonstrating that the documents is has withheld fall within one of the enumerated exemptions. 5 U.S.C. ¶ 552(a)(4)(B). If an agency fails to meet its burden through the submission of affidavits or a <u>Vaughn</u> index, the Court may order an <u>in camera</u> review of the withheld materials to determine whether the agency complied with its obligations under FOIA. <u>See</u> <u>Taylor v. Dep't of Justice</u>, 257 F.Supp.2d 101,114 (D.D.C. 2003).

**Exemption (6) Personal and medical files and similar files**

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would clearly constitute an unwarranted invasion of personal privacy." 5 U.S.C. ¶ 552 (b)(6). The Supreme Court has held that Congress intended the words "similar files" to be interpreted broadly. <u>Dep't of State v. Washington Post Co.</u>, 456 U.S. 595, 599-603 (1982). If the threshold requirement of "personnel and medical files and similar files" is met, "the court must undertake a balancing of the public interest in disclosure on the one side and the individual's interest in privacy on the other." <u>Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.</u>, 656 F.2d 856, 862 (D.C. Cir. 1981). If the requesting party cannot demonstrate a public interest in disclosure then the court will not order disclosure, because, as this Circuit has noted, "something, even a modest privacy interest, outweighs nothing every time." <u>Nat'l Ass'n of Retired Fed. Employees v. Horner</u>, 879 F.2d 873, 879 (D.C. Cir. 1989).

Contrary to Plaintiff's position, foreign nationals and aliens are entitled to the same basic privacy rights as United States citizens under FOIA. "[T]he [Privacy] Act makes no exception for the privacy interests of those with criminal records or aliens" <u>Shaw v. U.S. Dep't of State</u>, 559 F.Supp. 1053, 1067 (D.D.C. 1983). In <u>Schiller v. INS</u>, 205 F. Supp.2d 648, 662 (W.D.Tex. 2002)

8

the Court noted:

> Aliens, their families and other third parties mentioned in . . . investigations have a strong privacy interest in nondisclosure of their names, addresses and other information which could lead to revelation of their identities. Several Courts have agreed with this general proposition because disclosure of this personal identifying information could lead to rumor, personal embarrassment or other damage to these individuals. This Court concludes that the privacy interest of the aliens, their families and third parties arising in connection with the investigations . . . outweigh any public interest served by release of this information. This Court rejects . . . the proposition that aliens have no privacy interest in the FOIA context.

A Privacy Act System of Records is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. 552a(a)(5). The USAOs' criminal prosecution files are maintained in a Privacy Act System of Records, namely the Criminal Case Files (Justice/USA-007). The USAO's Victim/Witness Files are also maintained in a Privacy Act System of Records, namely the Administrative File System (Justice/USA-001). As stated in this definition, the Privacy Act is triggered by the way information about an individual is retrieved by an agency. The files/records at issue in this case are maintained in a Privacy Act System of Records under the names of Ignacio Ramos and Jose Compean, who are U.S. citizens; therefore, to retrieve information about Davila the USAO would use the names or personal identifiers (case number) of Ramos and Compean. For this reason, the Privacy Act applies both to the records at issue in this case and to Davila.

**Exemption 7(C)**  **Personal Information in Law Enforcement Records**

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); see also National Archives and

9

Records Administration v. Favish, 541 U.S. 157, 165 (2004); Nation Magazine, 71 F.3d at 893;

SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991).

Applying Exemption 7(C) involves a multi-step analysis.  The first step is determining

whether the information has been compiled for a "law enforcement purpose."[1/]  The term "law

enforcement purpose" includes enforcement of civil and criminal statutes, as well as those statutes

authorizing administrative (i.e., regulatory) proceedings. See Center for Nat'l Policy Review v.

Weinberger, 502 F.2d 370, 373 (D.C. Cir. 1974).   Here, the information at issue was compiled as

part of a criminal prosecution; thus, this criterion is readily satisfied.  See Quinon v. FBI, 86 F.3d

1222, 1228 (D.C. Cir.1996) (holding that "less exacting proof" of a legitimate law enforcement

purpose is required of law enforcement agencies such as the FBI); Pratt v. Webster, 673 F.2d 408,

420-21 (D.C. Cir.1982).

The next step is to determine if there is a privacy interest.  A privacy interest sufficient to

justify application of Exemption 7(C) has been found to exist in a wide variety of circumstances.

See Favish, 541 U.S. at 170-71 (family members have a privacy interest in photographs of deceased

relative); United States Department of Justice v. Reporters Committee for Freedom of the Press, 489

U.S. 749, 763 (1989) (subjects of "rap sheets" have privacy interest); Computer Prof'ls for Social

Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996)(suspects and witnesses who

are identified in agency records in connection with law enforcement investigations); Nation

Magazine 71 F.3d at 894 (same); Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir.

---

[1/]     There should be no doubt that the USAO records compiled were for a "law enforcement purpose."  One of the missions of the United States Attorney's Office is to enforce criminal laws and defend the interest of the United States.   Furthermore, the responsive files pertain to the criminal prosecution of third party individuals and were compiled for criminal law enforcement purposes.  (Finnegan Dec. ¶¶ 24-25).

1992) (privacy interest in confidential informant's testimony); <u>Lesar v. U.S. Dept. of Justice</u>, 636 F.2d 472, 487-88 (D.C. Cir. 1980) (law enforcement officers who work on criminal investigations have valid privacy claim).

Finally, since exemption 7(C) proscribes releases that would constitute an unwarranted invasion of personal privacy, <u>see</u> 5 U.S.C. § 552(b)(7)(c), the privacy interest must be balanced against the public interest, if any, that would be served by disclosure.  <u>Reporters Committee</u>, 489 U.S. at 776; <u>Schrecker v. Department of Justice</u>, 254 F.3d 162, 166 (D.C. Cir. 2001); <u>Mays v. Drug Enforcement Administration</u>, 234 F.3d 1324, 1327 (D.C. Cir. 2000).  As with the privacy interest encompassed by FOIA Exemption 6, the public interest in disclosure is limited to the FOIA's core purpose of "shed[ing] light on an agency's performance of its statutory duties."  <u>Reporters Committee</u>, 489 U.S. at 773; <u>see also</u> <u>id</u>. (the public interest is "not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct.").

When a request seeks personal information but no official information about a government agency, the invasion of privacy is <u>per se</u> unwarranted.  <u>See</u> <u>Favish</u> 541 U.S. at 171-72; <u>Reporter's Committee</u>, 489 U.S. at 780.  Information that does not directly reveal the operations or activities of the government falls outside the ambit of the public interest that FOIA was enacted to serve.  <u>See</u> <u>Reporter's Committee</u>, 489 U.S. at 775.  Therefore, where a privacy interest is at stake, requested records may be withheld if the information sought does not reveal anything about the government's operations.  <u>See</u> <u>Favish</u>, 541 U.S. at 174.  Rarely does a public interest outweigh an individual's privacy interest when law enforcement information pertaining to individuals is sought.  <u>See</u> <u>Fitzgibbon v. CIA</u>, 911 F.2d 755, 768 (D.C. Cir. 1990); <u>Senate of Puerto Rico v. United States</u>

Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

EOUSA correctly invoked Exemptions (b)(7)( C) and (b)(6) to "categorically withhold all responsive records pertaining to the defendants and the named witness involved in the Ramos/Compean criminal prosecution" (Finnegan Dec.¶ 28). Plaintiff claims that Davila' privacy intrusion is de minimis because Plaintiff wants information revolving around "the actions and communications of DOJ, yet, the law is clear that individuals have a substantial privacy interest in their law enforcement records." See SafeCard Services v. SEC, 926 F.2d 1197 (D.C. Cir. 1991) Plaintiff cites National Ass'n of Ret. Federal Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989) (NARFE) to argue that EOUSA is required to show a causal relationship between the disclosure and the threatened invasion of privacy, and that if there is no significant privacy interest implicated FOIA demands disclosure. However, NARFE was an Exemption 6 case and did not concern sensitive law enforcement records pursuant to Exemption 7( C).

Plaintiff also argues that Davila is a nationally known figure due to DOJ's own actions, therefore, it is too late to worry about Davila's privacy because there is an abundance of information pertaining to him already in the public domain. The law is clear that even though information about an individual has been disclosed, it does not mean that all the details pertaining to the individual must be released See also Kimberlin v. United States Dep't of Justice, 139 F.3d 944 (D.C. Cir. 1998); Davis, 968 F.2d at 1279. McDade v. EOUSA, No 03-1946, slip op. at 11 (D.D.C. Sept. 29, 2004)(A witness who testifies at a trial does no waive personal privacy.) Boyd v. U.S. Marshals Serv., No. 99-1032 , slip op. at 5 (D.D.C. March 30, 2001)(finding that plaintiff's assertion that informant and others who testified at his criminal trial waived their right to privacy by testifying is "simply wrong"). Moreover, contrary to Plaintiff's position, individuals do not give up their privacy

interests in the details of their law enforcement records due to prior publicity.  <u>Kimbelin</u>, 139 F.3d

at 949 (even after public acknowledgment, subject retained the privacy interest in nondisclosure of

details of investigation).  <u>Wiggins v. Nat'l Credit Union Admin.</u>, No. 05-2332, 2007 U.S. Dist.

LEXIS 6367, * 21 (D.D.C. Jan. 30, 2007)(deciding fact that identities of third parties were disclosed

in a related criminal trial does not diminish privacy interest).

Plaintiff claims the public interest outweighs the third party's privacy interests because,

among other things, the requested information would "help answer questions surrounding DOJ's

official activities namely, whether and/or how DOJ cooperated with other U.S. government agencies

in prosecuting two U.S. Border Patrol Agents; whether and/or how DOJ cooperated with the

Government of Mexico in the prosecution of U.S. law enforcement officers; and, whether and/or

how DOJ regularly offers immunity agreements to illegal drug-smugglers to aid in the prosecution

of U.S. law enforcement officers."  These questions do not constitute allegations of government

misconduct, but rather, are the makings of a fishing expedition to discover if there might have been

government misconduct.  Given the subject-third parties' substantial privacy interests in this

information, Plaintiff can only outweigh that interest by producing evidence that would warrant a

belief by a reasonable person that the alleged Government impropriety might have occurred.  <u>Favish</u>,

541 U.S. at 174.  Plaintiff has not met that burden.  <u>See</u> <u>Oguaju v. United States</u>, 288 F.3d 448, 451

(D.C. Cir. 2002)(even if the records requested revealed wrongdoing, "exposing a single, garden-

variety act of misconduct would not serve the FOIA's purpose of showing 'what the Government

is up to") (citing <u>Reporters Comm.</u>, 489 U.S. at 780.) <u>Boyd v. Criminal Division of the U.S</u>

<u>Department of Justice</u>, Nos. 05-5142 &04-5369, 2007 WL 328064 (D.C. Cir. Feb. 6, 2007) (an

alleged single instance of a Brady violation would not suffice to show a pattern of government

13

wrongdoing).

### E.     Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u> <u>sponte</u>." <u>Trans-Pacific Policing Agreement v. United States Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); <u>Mead Data Cent., Inc. v. United States Dept. of the Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977).  In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements."  <u>Mead Data</u>, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  <u>Id</u>.  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated.  <u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  <u>Mead Data</u>, 566 F.2d at 261, n.55.

When an agency categorically denies access to information pursuant to Exemptions 6 & 7C, which by its very nature does not include a document-by-document review, a segregability analysis cannot be conducted.  <u>See</u> <u>Reporters Comm.</u> at 778. On the face of a targeted/third party request, the name of the targeted individual appears.  If an agency categorically denies access to the individual's

14

file under exemption 6 & 7C, it is admitting that there are responsive records.  So, to then go through each responsive document redacting the individual's name would not protect that individual's privacy because the identity of the individual to whom the records pertain is already known by virtue of the targeted request.

Here there would be no reasonably segregable information contained in the responsive documents due to the limited scope of Plaintiff's request, which seeks access to very specific privacy-sensitive information pertaining to a witness who is named in the criminal prosecution file of two third-party defendants.  Consequently, redacting the names of the third parties contained in this file would not protect their strong privacy interests in this information because their identities have already been revealed.  Buckley v. Schaul, No. 03-03233, slip op. at 9 (W.D. Wash. March 8, 2004)(finding that even with redactions, the 'disclosure of investigative files coupled with the public availability of Plaintiff's FOIA request naming [regional counsel]" would not adequately protect privacy interests).

### E.  CONCLUSION

Defendant United States Department of Justice has properly responded to Plaintiff's FOIA request, and accordingly, respectfully request that its motion for summary judgment be granted.

Respectfully submitted,


/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

15

/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/_____
BLANCHE L. BRUCE, D.C. BAR # 960245
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4220
Washington, D.C. 20530
(202) 307-6078

March 21, 2008
ECF

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JUDICIAL WATCH, INC.**

**Plaintiff,**

**v.**                                                          **Civil Action No. 07-0506 (RCL)**

**UNITED STATES DEPARTMENT OF
    JUSTICE**

**Defendant.**

UPON CONSIDERATION of Defendant's Cross-Motion for Summary Judgment,

memorandum, and accompanying documents, any opposition by Plaintiff, and the entire record

herein, it is on this ___ day of _____, 2008,

ORDERED that Defendant's Cross-Motion for Summary Judgment is Granted.


_____

United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.          )
                                       )
            v.                    )   Civ. No. 1:07-CV-00506 (RJL)
                                       )
                                       )
UNITED STATES DEPARTMENT OF   )
   HOMELAND SECURITY, et al.,        )
                                       )
_____ )

## DECLARATION OF KAREN M. FINNEGAN

I, Karen M. Finnegan, declare the following to be a true and correct statement of facts:

1.) I am an Attorney Advisor in the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ"). I am assigned to the component of EOUSA designated to administer the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974 ("PA"), 5 U.S.C.§ 552a.

2.) Due to the nature of my official duties, I am personally familiar with the FOIA request made to EOUSA by Judicial Watch, Inc., which forms the basis for this litigation.

3.) My official duties include: making final disclosure determinations regarding records requested by an individual or organization using the FOIA and the PA; ensuring compliance with the provisions of the FOIA and the PA, and Department of Justice Regulation 28 C.F.R. § 16.3 *et seq.* and § 16.40 *et seq.*; and, defending EOUSA's position in litigating challenges to EOUSA's initial actions.

4.) My official duties also include: acting as a liaison between EOUSA and the components within the DOJ regarding FOIA/PA requests; reviewing requests for records sought

-1-

from EOUSA and /or the 94 U.S. Attorney's Offices ("USAO's"); reviewing request-related

correspondence; reviewing searches performed in response to requests; and, reviewing proposed

responses made to those requests.

     5.) The statements that follow are made on the basis of my review of EOUSA's

official files and records, my own personal knowledge, and the information I acquired in

performing my official duties.

     6.) The purpose of this declaration is to provide the Court and Plaintiff with an

explanation of the handling of its access request. This declaration is submitted in support of

Defendant's cross motion for summary judgement.

## CORRESPONDENCE

     7.) On January 24, 2007, EOUSA received a FOIA request from Judicial Watch

by fax transmission. This request sought access to the following information:

> "1. Communications between DoJ and any/all officers, agencies and/or
> representatives of the Government of Mexico concerning Osbaldo Aldrete-Davila,
> a Mexican national who testified in the prosecution of U.S. Border Patrol Agents
> Ignacio 'Nacho' Ramos and Jose Alonso Compean over a shooting incident in
> Texas on February 17, 2005.
>
> 2. Communications between DoJ and the U.S. Department of State and/or the
> Department of Homeland Security (and its subordinate agencies) concerning
> Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of
> U.S. Border Patrol Agents Ignacio 'Nacho' Ramos and Jose Alonso Compean
> over a shooting incident in Texas on February 17, 2005.
>
> 3. The participation of DoJ personnel in coordinating, facilitating and/or
> approving the lawful entry(ies) of Osbaldo Aldrete-Davila into the United States
> (reportedly for the last time in February 2006). Mr. Aldrete-Davila reportedly
> entered the United States lawfully (with the approval of the U.S. Government) to
> obtain medical treatment, meet with federal investigators and to testify in court in
> El Paso, Texas.

4. Any/all agreements, deals, promises, settlements, grants, understandings, memoranda and/or letters granting any form of immunity to Osbaldo Aldrete-Davila.

5. Records detailing the terms and conditions permitting Osbaldo Aldrete-Davila to lawfully enter the United States."

Judicial Watch identified the time frame for this request as being from February 17, 2005, through the present.  (**See Exhibit A.**)

8.) In a letter dated April 3, 2007,  EOUSA acknowledged receipt of Judicial Watch's request and advised that it had been assigned Request No. 07-964.  EOUSA also informed Judicial Watch that by making this request it had agreed to pay fees up to $25.00 as stated in 28 C.F.R. § 16.3(c).  (**See Exhibit B.**)

9.) In a second letter dated April 3, 2007, EOUSA asked Judicial Watch to identify the specific United States Attorney's Office(s) where it believed that records responsive to its request may be located, and notified Judicial Watch of its administrative appeal rights.  (**See Exhibit C.**)

10.) By letter dated April 9, 2007, Judicial Watch filed an administrative appeal with the U.S. Department of Justice, Office of Information and Privacy ("OIP"), stating that in its original request it had identified the Western District of Texas as the location in which records responsive to its request should be maintained.  (**See Exhibit D.**)

11.) OIP acknowledged receipt of Judicial Watch's administrative appeal by letter dated April 26, 2007, and assigned it appeal number 07-1226.  (**See Exhibit E.**)

12.) By letter dated May 9, 2007, OIP remanded this request to EOUSA to conduct a search for responsive records in the Western District of Texas.  (**See Exhibit F.**)

-3-

13.) By letter dated May 11, 2007, EOUSA advised Judicial Watch that it will begin to process its FOIA request, which had been re-assigned Request No. 07-1461, and that by making this request it had agreed to pay fees up to $25, citing 28 C.F.R. § 16.3(c). EOUSA also advised Judicial Watch that it could use the enclosed form to obtain the release authorization from the third party who is the subject of its request. (**See Exhibit G.**)

14.) By letter dated June 15, 2007, EOUSA advised Judicial Watch that the U.S. Attorney's Office for the Western District of Texas had determined that the material responsive to its request pertained to the defendants and a witness involved in the prosecution of U.S. Border Patrol Agents Ramos and Compean. EOUSA also advised that this material could not be released absent express authorization and consent from these third parties, or proof that a third party was deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest of the third parties. (**See Exhibit H.**)

15.) In this letter EOUSA also advised that it had no record of receiving third party authorization from Judicial Watch and that it had failed to meet the high standards set forth in NARA v. Favish, 124 U.S. 1570 (2004), with regard to the public interest in disclosure because it had neither alleged nor had it shown any government impropriety in connection with the criminal prosecution of Agents Ramos and Compean.[1] Finally, EOUSA advised Judicial Watch that, if requested, any responsive public records contained in the file would be released without express authorization or public justification for release. (**See id.**)

---

[1] In NARA v. Favish, 124 U.S. 1579 (2004), the Supreme Court adopted a higher standard for evaluation of agency wrongdoing claims and held that a requester must produce evidence that would warrant a belief by a reasonable person that an alleged Government impropriety occurred before the public interest tips the balance in favor of disclosure.

16.) This same letter notified Judicial Watch that EOUSA had invoked FOIA Exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6) & (b)(7)(C), and Privacy Act Exemption (j)(2), 5 U.S.C. § 552a(j)(2), to withhold any responsive material. Although this request was the subject of ongoing litigation, EOUSA did advise Judicial Watch of its right to file an administrative appeal with OIP. (See id.)

17.) EOUSA has no record that Judicial Watch filed an administrative appeal from its June 15 denial of access to the third party law enforcement records requested.

## THE SEARCH FOR RESPONSIVE RECORDS

18.) After OIP remanded Judicial Watch's third party request to EOUSA so that a search could be conducted in the USAO for the WDTX, Denise Swain, FOIA contact for the USAO WDTX, San Antonio Division confirmed through personal discussions with the First Assistant U.S. Attorney and through telephone conversations with the El Paso Division, that the majority of the specific records requested by Judicial Watch would be physically located in the USAO's El Paso Division. Ms. Swain also learned that there may be other potentially responsive records maintained in the USAO, San Antonio Division. Ms. Swain determined that the majority of the specific records requested would be located in the Criminal Case File System (Justice/USA-007) in the criminal case file captioned U.S. v. Ignacio Ramos and Jose Compean, Cr. No. EP-05-CR-00836. The El Paso Division informed Ms. Swain that this criminal prosecution file consists of approximately 17 boxes of material, which could total more than 50,000 pages. Other potentially responsive records may be located in the Administrative File System (Justice/USA-001) in a Victim/Witness file captioned "Ramos, Ignacio, et al," and in various internal electronic communications that were circulated among prosecutors in the San Antonio and El Paso

Divisions.

19.) Ms. Swain also reviewed the USAO's public website, www.usdoj.gov/usao/txw , to determine if information that was potentially responsive to Judicial Watch's request was available there. She determined that the Ramos/Compean trial transcripts were posted on this website.

20.) EOUSA has no record of receiving a response from Judicial Watch with regard to whether it was interested in obtaining copies of any responsive public documents that may exist in the USAO's files. Accordingly, EOUSA has proceeded with the understanding that Judicial Watch is not interested in obtaining copies of any responsive public documents.

21.) EOUSA carefully reviewed the specific categories of information to which Judicial Watch sought access and determined the following:

> **Item Number 1**: The disclosure of the substance of "communications between DoJ and any/all officers, agencies and/or representatives of the Government of Mexico concerning Osbaldo Aldrete-Davila" could reveal non-public details of the Ramos/Compean criminal investigation and Mr. Davila's involvement in it, which would constitute an unwarranted invasion of his substantial privacy interest in this information. The disclosure of this information could cause unsolicited and unnecessary public attention to be focused on him, and could lead to harassment and intimidation.
>
> **Item Number 2**: The disclosure of the substance of "communications between DoJ and the U.S. Department of State and/or the Department of Homeland Security (and its subordinate agencies) concerning Osbaldo Aldrete-Davila" could likewise reveal non-public details of the Ramos/Compean criminal investigation and Mr. Davila's involvement in it, and non-public information related to Mr. Davila's personal life, which would constitute an unwarranted invasion of his substantial privacy interest in this information. The disclosure of the requested information could cause unsolicited and unnecessary public attention to be focused on him, and could lead to harassment and intimidation.
>
> **Item Number 3**: The disclosure of information pertaining to the "participation of DoJ personnel in coordinating, facilitating and/or approving the lawful entry(ies)

of Osbaldo Aldrete-Davila into the United States . . . to obtain medical treatment, meet with federal investigators and to testify in court" could reveal non-public details of the Ramos/Compean criminal investigation and Mr. Davila's involvement in it, and non-public information pertaining to Mr. Davila's personal life, potentially regarding his health, which would constitute an unwarranted invasion of his substantial privacy interest in this information. The disclosure of the requested information could cause unsolicited and unnecessary public attention to be focused on him, and could lead to harassment and intimidation.

**Item Number 4**: The disclosure of "any/all agreements, deals, promises, settlements, grants, understandings, memoranda, and/or letters granting any form of immunity to Osbaldo Aldrete-Davila" could reveal non-public details of the Ramos/Compean criminal investigation and Mr. Davila's involvement in it, which would constitute an unwarranted invasion of his substantial privacy interest in this information. The disclosure of this information could cause unsolicited and unnecessary public attention to be focused on him, and could lead to harassment and intimidation.

**Item Number 5**: The disclosure of "records detailing the terms and conditions pertaining Osbaldo Aldrete-Davila to lawfully enter the United States" could reveal the non-public details of Mr. Davila's involvement in the Ramos/Compean criminal investigation and non-public information pertaining to his personal life, which could constitute an unwarranted invasion of his substantial privacy interest in this information. The disclosure of the requested information could cause unsolicited and unnecessary public attention to be focused on him, and could lead to harassment and intimidation.

22.) As demonstrated above, each category of information requested by Judicial Watch is exempt from disclosure pursuant to Exemptions 6 and 7(C); therefore, EOUSA did not conduct a document-by-document search to locate the specific records requested.

## EOUSA'S DISCLOSURE DETERMINATION
## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE PRIVACY ACT

23.) The Privacy Act, 5 U.S.C. § 552a(b), states as follows:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains [subject to

12 exceptions.]

24.) The USAO's Criminal Case Files (Justice/USA-007) and Administrative File System (Justice/USA-001) are Privacy Act Systems of Records. The Attorney General has promulgated rules exempting these records from the Privacy Act's access provisions pursuant to 5 U.S.C.§ 552a(j)(2), which appear at 28 C.F.R. § 16.81 (2007). The Privacy Act, subsection (j)(2), exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws. The mission of the USAO is to enforce criminal and civil laws and defend the interests of the United States, to provide Federal leadership in preventing and controlling crime, and to seek just punishment for those found guilty of unlawful behavior.

25.) The responsive case files pertain to the criminal prosecution of third-party individuals and were compiled for criminal law enforcement purposes by the USAO for the Western District of Texas, which performs as its principal function activities related to the enforcement of criminal laws. Accordingly, these files are exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2).

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA[2]

### EXEMPTION 5 U.S.C. § 552(b)(7)(C)
### UNWARRANTED INVASION OF PERSONAL PRIVACY

---

[2] It should be stated herein, that absent a document-by-document search and review of any responsive records all applicable FOIA exemptions cannot be asserted at this time. Accordingly, EOUSA herein preserves the right to assert other applicable exemptions to any records that might be located should a document-by-document search be ordered by the Court in the course of this proceeding. As previously stated, however, EOUSA has taken categorical exemptions under the FOIA to protect all records responsive to Judicial Watch's request.

26.) Exemption (b)(7)(C) protects from disclosure records or information compiled for law enforcement purposes, if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy. Exemption 7(C) also allows for a categorical approach to the balance of private and public interests for an appropriate type of law enforcement records or information. The USAO compiled all of the information contained in the responsive criminal prosecution file and the Victim/Witness file for the law enforcement purpose of prosecuting U.S. Border Patrol Agents Ignacio Ramos and Jose Compean for assault, violation of civil rights, use of a firearm during a crime of violence, and obstruction of justice.

27.) It is well-recognized that individuals have a strong privacy interest in law enforcement records and that the mention of an individual's name in connection with a law enforcement file will engender comment and speculation, and carries a stigmatizing connotation. In addition, the fact that an event is not completely private does not mean that an individual has no interest in limiting disclosure or dissemination of the information. Likewise, an individual mentioned in law enforcement records does not lose all rights to privacy merely because his or her name has been disclosed. In fact, even public figures do not surrender all rights to privacy by placing themselves in the public eye, nor do witnesses who testify at trial.

28.) In this case, EOUSA invoked Exemption (b)(7)(C), in conjunction with Exemption (b)(6), to categorically withhold all responsive records pertaining to the defendants and the named witness involved in the Ramos/Compean criminal prosecution. In making this determination, EOUSA determined that any records responsive to Plaintiff's request would be contained in the criminal prosecution file pertaining to third-party individuals. EOUSA has determined that criminal investigatory records, which are contained in criminal prosecution files,

-9-

are the type of law enforcement records where the balance characteristically tips in one direction due to the strong privacy interest of the individuals named in these records. See Reporters Comm. at 776. For this reason, in the absence of an overriding public interest in disclosure, consent from the third parties or proof of their death, EOUSA categorically denied access to the third-party law enforcement information requested by Judicial Watch pursuant to Exemption (b)(7)(C) because disclosure of the requested information could reasonably be expected to constitute an unwarranted invasion of this individual's privacy.[3]

29.) As stated above, Judicial Watch has not provided EOUSA with authorization from any third party to release any privacy-protected information that might be contained in the responsive files. Moreover, Judicial Watch has failed to meet its burden of establishing that there is any public interest in disclosure that outweighs the strong privacy interest of the named third-party individuals.

30.) EOUSA categorically applied this exemption to all third-party information in conjunction with Exemption (b)(6).

## EXEMPTION 5 U.S.C. §552(b)(6)
## CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

31.) Exemption (b)(6) permits the withholding of information contained in personnel, medical, and similar files, which if disclosed would constitute a clearly unwarranted invasion of personal privacy. This exemption protects from disclosure information that applies to a particular, identifiable individual. Specifically, this exemption prevents the unauthorized disclosure of personal information such as, a Social Security Number, a home address and

---

[3] EOUSA also routinely invokes Exemption (b)(6), in conjunction with Exemption (b)(7)(C) to deny access to third-party information for the reasons stated infra at ¶¶ 31-32.

telephone number, a date of birth, and details of a person's medical condition, as well as information that is neither intimate nor embarrassing to an individual.

32.) EOUSA categorically invoked Exemption (b)(6), in conjunction with Exemption (b)(7)(C), to deny access to information pertaining to the named third party individuals because these individuals have a strong privacy interest in this information, and Judicial Watch has failed to establish an overriding public interest in disclosure. In addition, Judicial Watch has failed to provide EOUSA with consent from the third party individuals or proof that they are deceased. Consequently, the third party individuals' privacy interests in the requested law enforcement information outweigh the non-existent public interest in disclosure; therefore, to release any of the requested information would constitute a clearly unwarranted invasion of personal privacy.

## SEGREGABILITY

33.) With regard to the segregability of non-exempt information for release, the Supreme Court held in Reporters Comm. that this requirement does not mandate case-by-case balancing. See Reporters Comm. at 778. A categorical withholding of information does not always include a document-by-document review. However, EOUSA determined that there would be no reasonably segregable information contained in the responsive documents due to the limited scope of Plaintiff's request, which seeks access to very specific privacy-sensitive information pertaining to a witness who is named in the criminal prosecution file of two third-party defendants. Consequently, redacting the names of the third parties contained in this file would not protect their strong privacy interests in this information because their identities are already known by virtue of the targeted request.

34.)  Each step in the handling of Judicial Watch's request has been entirely consistent with the EOUSA's and the USAO's procedures adopted to ensure an equitable response to all persons seeking access to records under the FOIA/PA.

I declare under penalty of perjury that the foregoing is true and correct and that Exhibits A through H attached hereto are true and correct copies.

Executed on _____February 15_____, 2008.

KAREN M. FINNEGAN
Attorney Advisor, EOUSA

Exhibit A



# Judicial Watch

*Because no one is above the law!*

January 24, 2007

**VIA CERTIFIED MAIL & FAX (202-616-6478)**
William G. Stewart, II, Acting Assistant Director
FOIA/Privacy Unit
Executive Office for United States Attorneys
Department of Justice
Room 7300, 600 E Street, N.W.
Washington, DC 20530-0001

### Re: Freedom of Information Act Request

Dear Freedom of Information Officer:

Pursuant to the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Judicial Watch, Inc. hereby requests that the Department of Justice (DoJ) (the Executive Office for United States Attorneys, and specifically the Office of U.S. Attorney Johnny Sutton of the Western District of Texas) produce any and all agency records concerning the following subjects within twenty (20) business days:

1. Communications between DoJ and any/all officers, agencies and/or representatives of the Government of Mexico concerning Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting incident in Texas on February 17, 2005.

2. Communications between DoJ and the U. S. Department of State and/or the Department of Homeland Security (and its subordinate agencies) concerning Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a shooting incident in Texas on February 17, 2005.

3. The participation of DoJ personnel in coordinating, facilitating and/or approving the lawful entry(ies) of Osbaldo Aldrete-Davila into the United States (reportedly for the last time in February 2006). Mr. Aldrete-Davila reportedly entered the United States lawfully (with the approval of the U.S. Government) to obtain medical treatment, meet with federal



GOVERNMENT
EXHIBIT
A

Department of Justice (EOUSA)
FOIA Request
January 24, 2007
Page 2 of 8

investigators and to testify in court in El Paso, Texas.

4. Any/all agreements, deals, promises, settlements, grants, understandings, memoranda and/or letters granting any form of immunity to Osbaldo Aldrete-Davila.

5. Records detailing the terms and conditions permitting Osbaldo Aldrete-Davila to lawfully enter the United States.

The timeframe for this request is February 17, 2005 through the present.

For purpose of this request, the term "record" shall mean: (1) any written, printed, or typed material of any kind, including without limitation all correspondence, memoranda, notes, messages, letters, cards, telegrams, teletypes, facsimiles, papers, forms, records, telephone messages, diaries, schedules, calendars, chronological data, minutes, books, reports, charts, lists, ledgers, invoices, worksheets, receipts, returns, computer printouts, printed matter, prospectuses, statements, checks, statistics, surveys, affidavits, contracts, agreements, transcripts, magazine or newspaper articles, or press releases; (2) any electronically, magnetically, or mechanically stored material of any kind, including without limitation all electronic mail or e-mail, meaning any electronically transmitted text or graphic communication created upon and transmitted or received by any computer or other electronic device, and all materials stored on compact disk, computer disk, diskette, hard drive, server, or tape; (3) any audio, aural, visual, or video records, recordings, or representations of any kind, including without limitation all cassette tapes, compact disks, digital video disks, microfiche, microfilm, motion pictures, pictures, photographs, or videotapes; (4) any graphic materials and data compilations from which information can be obtained; (5) any materials using other means of preserving thought or expression; and (6) any tangible things from which data or information can be obtained, processed, recorded, or transcribed. The term "record" also shall mean any drafts, alterations, amendments, changes, or modifications of or to any of the foregoing.

**If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172.**

If any responsive record or portion thereof is claimed to be exempt from production under FOIA, please provide sufficient identifying information with respect to each allegedly exempt record or portion thereof to allow us to assess the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). In addition, any reasonably segregable portion of a responsive record must be provided, after redaction of any allegedly exempt material. 5 U.S.C. § 552(b).

Judicial Watch also hereby requests a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).

**Department of Justice (EOUSA)**
**FOIA Request**
**January 24, 2007**
**Page 5 of 8**

from the Clinton Presidential Library in Little Rock, Arkansas.
http://www.judicialwatch.org/archive/2006/SR_Clinton%20abortion.pdf

Judicial Watch also publishes and disseminates its distinctive work by participating in public conferences and seminars, including its own "Ethics in Government" conferences held in Pasadena, California (1999), Washington, DC (2000), and Miami, FL (2001).

Judicial Watch hold quarterly education panels at the National Press Club in Washington DC that have been televised by C-SPAN. Past panel discussions have been: "Defining 'Judicial Activism' in the Context of the Culture Wars," "A Discussion of Ethics in Washington," "The Case for Open Government," "Conservative Perspectives on the Alito Nomination," "The Role of Grassroots Groups in the Supreme Court Nominating Process," "New Fronts in the Immigration Battle," and "How to Fight Corruption in Government."

Judicial Watch also works with other media organizations to publish and disseminate distinctive work to the public, and representatives of Judicial Watch appear frequently on nationally broadcast television and radio programs. Judicial Watch has been granted press credentials at a number of national conventions and other events.

On February 16, 2005, Judicial Watch was rated by the highly respected capitol newspaper *The Hill* as being on of the nation's top ten "watchdogs."

Consequently, Judicial Watch qualifies for a waiver of search fees as a member of the news media. See *National Security Archive v. U.S. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). In fact, Judicial Watch has been recognized as a member of

the news media in other FOIA litigation. See *Judicial Watch, Inc. v. U.S. Department of Justice*, 133 F. Supp.2d 52 (D.D.C. 2000); and, *Judicial Watch, Inc. v. Dep't of Defense*, 2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006).

Judicial Watch also is entitled to a complete waiver of both search fees and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Under this provision, records:

> shall be furnished without any charge or at a charge
> reduced below the fees established under clause (ii) if
> disclosure of the information is in the public interest
> because it is likely to contribute significantly to public
> understanding of the operations or activities of government
> and is not primarily in the commercial interest of the
> requester. 5 U.S.C. § 552(a)(4)(A)(iii).

**Department of Justice (EOUSA)**
**FOIA Request**
**January 24, 2007**
**Page 6 of 8**

Judicial Watch is a 501(c)(3), not-for-profit, educational organization, and, by definition, it has no commercial purpose. Judicial Watch exists to educate the public about the operations and activities of government, as well as to increase public understanding about the importance of ethics and the rule of law in government. The particular records requested herein are sought as part of Judicial Watch ongoing efforts document the operations and activities of the federal government and to educate the public about these operations and activities. As part of its Transparency Project, Judicial Watch is investigating the Aldrete-Davila shooting and the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean .

Courts applying the "public interest" fee waiver provision of FOIA typically take into account four factors in determining whether to grant a waiver: (1) whether the subject of the requested records concerns the operations or activities of government; (2) whether disclosure of the requested records is likely to contribute to an understanding of government operations or activities; (3) whether disclosure of the requested records will contribute to a "reasonably broad" audience and whether the requestor has the "ability and intention" to disseminate the information to the public; and (4) whether disclosure of the requested record will contribute "significantly" to the public understanding. See *D.C. Technical Assistance Org. v. HUD*, 85 F. Supp.2d 46, 48-49 (D.D.C. 2000); 28 C.F.R. § 16.11(k)(2)(i)-(iv). Request for "public interest" waivers are to be judged on a case-by-case basis." *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988).

Without question, the subject-matter of the request concerns the operations and activities of government, namely details of the Justice Department's prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean; as well as diplomatic efforts to facilitate Mr. Aldrete-Davila's lawful entry and exit to/from the United States.

Disclosure of the requested records is likely to contribute to an understanding of government operations and activities and will appeal to a "reasonably broad" audience, as the prosecution of Agents Ramos and Compean has been featured on dozens of national news media outlets (print, TV, radio and Internet) as a headline story for weeks. There is keen interest by the American public in the government's exercise of discretionary powers in prosecuting border-related issues – especially with respect to law enforcement officers.

Indeed, the American public deserves full disclosure of the details of the Justice Department's activities with respect to Mr. Aldrete-Davila and the prosection of Agents Ramos and Compean. As reported in the press, Mr. Aldrete-Davila is a known drug smuggler whose testimony was necessary to convict the two agents. Justice Department actions concerning Mr. Aldrete-Davila are of enormous interest to the American public.

In light of the enormous public debate over border security and illegal immigration in America and the presence of undocumented persons in the country, as

**Department of Justice (EOUSA)**
**FOIA Request**
**January 24, 2007**
**Page 7 of 8**

well as security concerns for goods and objects being brought into America, full disclosure of these requested records would obviously be of interest to a "reasonably broad" audience of people.

Once Judicial Watch obtains the requested records, it intends to analyze them and disseminate the results of its analysis, as well as the records themselves, as a special written report. Judicial Watch will also educate the public via radio programs, Judicial Watch's website, and/or newsletter, among other outlets. It also will make the records available to other members of the media or researchers upon request. Judicial Watch has a proven ability to disseminate information obtained through FOIA to the public, as demonstrated by its long-standing and continuing public outreach efforts, including radio and television programs, website, newsletter, periodic published reports, public appearances, and other educational undertakings.

Finally, disclosure of the requested records will contribute significantly to the public's understanding because relatively little is known about Justice Department involvement with Mr. Aldrete-Davila. Likewise, the background details of the Justice Department's work on the prosecution of Agents Ramos and Compean is not well known or understood by the general public. Without question the records requested by Judicial Watch will shed further light on this important matter.

Given these compelling circumstances, Judicial Watch is entitled to a public interest fee waiver of both search costs and duplication costs. Nonetheless, in the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch is willing to pay up to $350.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

We look forward to receiving the requested documents and a waiver of both search and duplication costs within twenty (20) business days. We take the statutory deadlines of the Freedom of Information Act very seriously – as does the Archivist of the United States:

> **"Let's face it, access delayed is access denied."**
> Dr. Allen Weinstein
> Ninth Archivist of the United States
> National Archives and Records Administration
> September 26, 2006
> American Society of Access Professionals Keynote Speech
> Washington, DC

**Department of Justice (EOUSA)**
**FOIA Request**
**January 24, 2007**
**Page 8 of 8**

Thank you for your cooperation.

Sincerely,

Christopher J. Farrell
Director of Investigations & Research

Exhibit B



**U.S. Departmer  f Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
600 E Street, N.W.,  Suite 7300, Bicentennial Building
Washington, DC  20530-0001
(202) 616-6757   FAX:  616-6478   (www.usdoj.gov/usao)

APR - 3 2007

---

Requester: Christopher Farrell                    Request No.:   07-964

Subject:   Osbaldo Aldrete-Davila

The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act (FOIA/PA) request.  It has been assigned the above number.  Please give us this number if you write about your request.  If we need additional information, we will contact you within two weeks.

Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request).  Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

EOUSA makes every effort to process most requests within a month (20 working days).  There are some exceptions; for example, Project Requests usually take approximately nine months to process.  Requests for "all information about myself in criminal case files" are usually Project Requests.  If you have made such a request, you may either write us and narrow your request for specific items, or you may expect that the processing of your request may take nine months from the date of this letter.

By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR § 16.3(c), unless you have requested a fee waiver.  Please note that pursuant to 28 CFR § 16.11, if you have not been granted a fee waiver, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you.  Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free.  Please do not send any payment at this time!  If we anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees.  After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you.  Without such payment, your request file will be closed without further action.

If you wish to revise your request to try to reduce fees, you may use the attached form.  If you do not wish to incur fees for your request as it is now stated, please submit this form (or your letter revising your request) to us immediately so that your request, and fees, can be limited.

Sincerely,

*William G. Stewart II*

William G. Stewart II
Assistant Director

Form No. 001 - 3/07



GOVERNMENT EXHIBIT

APR - 3 2007

Requester: Christopher Farrell                    Request Number: 07-964

### CHOOSE ONE

___**I understand that I am entitled to the first 100 pages and 2 hours of search time free.**  Please search only up to 2 hours and process only up to 100 pages that can be released to me.

___I wish to withdraw my request.

___I wish to revise my request to try to reduce fees.  Please limit my request to the following documents:

_____

_____

_____

_____

(Please note that a search for specific records may sometimes require more search time and fees).

___Please search only up to the following number of hours: _____
     **I understand that search payment will be required even if no documents are located or released to me.**  In the event that documents are located and released to me, I understand that I may be charged duplication fees in addition to search fees.

_____                    _____
Name                                                Date

Please return to:

EOUSA
FOIA/PA
600 E. Street, N.W., Room 7300
Washington D.C., 20530



Exhibit C



**U.S. Departmei  f Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W.,  Suite 7300, Bicentennial Building*
*Washington, DC  20530-0001*
*(202)  616-6757   FAX:  616-6478   (www.usdoj.gov/usao)*

APR - 3 2007

Requester: Christopher Farrell                  Request Number:   07-964

Subject of Request:   Osbaldo Aldrete-Davila

Dear Requester:

     Your recent request for records from the Executive Office for United States Attorneys (EOUSA) has been received.  Before the Executive Office can begin processing your request, it is necessary for you to correct one or more deficiencies.  Please comply with the paragraphs checked below:

1.   [ ] A requester must provide a notarized example of his/her signature or a certification of identity under penalty of perjury.  This insures that information pertaining to an individual is released only to that person.  A form is enclosed for your use.

2.   [√] The files and records of United States Attorneys are maintained in over one hundred separate offices throughout the United States.  Please identify the specific United States Attorney's office(s) where you believe records may be located.  This would be primarily the district(s) in which a prosecution or litigation occurred.

3.   [ ] To insure that records are properly identified, provide subject's full name, current address, and date and place of birth.

4.   [ ] A request must describe the records sought in sufficient detail to allow location of the records with a reasonable amount of effort (i.e., processing the request should not require an unduly burdensome effort or be disruptive of Department operations).  Please provide more specific information about the records you seek, such as appropriate dates, locations, names, nature of the records, etc.

5.   [ ] Please note that your original letter was split into separate files ("requests"), for processing purposes, based on the nature of what you sought.  Each file was given a separate Request Number (listed below), for which you will receive a separate response:
    **NOT SPLIT**

     By making a FOIA/PA request, you agree to pay fees up to $25, as stated in 28 C.F.R. § 16.3(c), unless you request a waiver of fees (according to requirements in 28 C.F.R. § 16.11(k)).  Indigency does not constitute a basis for a fee waiver.  Please note that pursuant to 28 C.F.R. § 16.11, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you.  Normally, search time is charged at a rate of $28 the expected fees (or you have narrowed your request to reduce fees) and we have

(Page 1 of 2)
Form No. 003 - 3/07





**GOVERNMENT EXHIBIT**

APR - 3 2007

processed your request, we will require payment for the accumulated charges before we release any documents to you (in excess of 100 free pages).  Without such payment, your request file will be closed without further action.

Once you have corrected the above deficiencies, please submit a new request for the documents.  This is a final determination and your request for information has been closed. When we have received your new, corrected request, we will open a new file for you. **Please send your new, corrected request to the address above.**

This is the final action on this above-numbered request.  You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C.  20530-0001.**  Both the letter and envelope should be marked "FOIA Appeal."  If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. §16.9.

Sincerely,

William G. Stewart II
Assistant Director

[   ] Enclosure(s)

COPY

Exhibit D





*1/17/07*

07-1226  FO(A)  (A)  EO(3A)

**VIA CERTIFIED US MAIL**

April 9, 2007

William G. Stewart, II, Acting Assistant
Office of Information and Privacy
Department of Justice
1425 New York Avenue, Suite 11050
Washington, DC  20530-0001

OFFICE OF INFORMATION
AND PRIVACY

APR 1 7 2007

RECEIVED

**Re:  Freedom of Information Act Appeal (Request Number 07-964)**

Dear Mr. Stewart:

This letter serves as an appeal to the April 3, 2007 denial of Judicial Watch's Freedom of Information Act request to the Executive Office for United States Attorneys.  (See attached.)  In this letter it stated the original request was deficient because it failed "identify the specific United States Attorney's office(s) where you believe records might be located" and advised us to submit a new request.

We appeal this decision on the basis of the specificity of our original request which reads:

Pursuant to the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Judicial Watch, Inc. hereby requests that the Department of Justice (DoJ) (the Executive Office for United States Attorneys, and **specifically the Office of U.S. Attorney Johnny Sutton of the Western District of Texas**) produce any and all agency records concerning the following subjects within twenty (20) business days.

Our original request clearly indicated the desired records are held by the Executive Office for the United States Attorneys and the Office of U.S. Attorney Johnny Sutton of the Western District of Texas.  (See attached for full request letter.)  As our original FOIA request was specific to the offices where we believe records are located, we look forward to receiving the requested documents within twenty (20) business days.



GOVERNMENT
EXHIBIT
D

**Judicial Watch Inc.**
**FOIA Appeal**
**April 9, 2007**
**Page 2 of 2**

Please contact me at 202-646-5172 or dgrothe@judicialwatch.org should you have any questions or require any additional information regarding this appeal.

Sincerely,

Dee Grothe
Program Manager

Enclosures

Exhibit E



**U.S. Department of Justice**

Office of Information and Privacy

RECEIVED

_Telephone: (202) 514-3642_          _Washington, D.C. 20530_

2007 APR 30 AM 11: 13
DEPT. OF JUSTICE/EOUSA
FOIA/PRIVACY STAFF

APR 26 2007

Ms. Dee Grothe
Judicial Watch
501 School Street, SW, Suite 500
Washington, DC 20024

     Re:  Request No. 07-964

Dear Ms. Grothe:

     This is to advise you that your administrative appeal from the action of the Executive Office for United States Attorneys was received by this Office on April 17, 2007.

     The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number **07-1226**.  Please mention this number in any future correspondence to this Office regarding this matter.

     We will notify you of the decision on your appeal as soon as we can.  We regret the necessity of this delay and appreciate your continued patience.

                Sincerely,

                Priscilla Jones
                Supervisory Administrative Specialist



EOUSA

Exhibit G



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757  FAX: 616-6478  (www.usdoj.gov/usao)*

---

Requester: _Christopher Farrell_____     Request No.: _07-1461_____     MAY 1 1 2007

Subject: _Osbaldo Aldrete-Davila (specific records)_____

The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act (FOIA/PA) request. It has been assigned the above number. Please give us this number if you write about your request. If we need additional information, we will contact you within two weeks.

Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request). Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

EOUSA makes every effort to process most requests within a month (20 working days). There are some exceptions; for example, Project Requests usually take approximately nine months to process. Requests for "all information about myself in criminal case files" are usually Project Requests. If you have made such a request, you may either write us and narrow your request for specific items, or you may expect that the processing of your request may take nine months from the date of this letter.

By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR § 16.3(c), unless you have requested a fee waiver. Please note that pursuant to 28 CFR § 16.11, if you have not been granted a fee waiver, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you. Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free. Please do not send any payment at this time! If we anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees. After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you. Without such payment, your request file will be closed without further action.

If you wish to revise your request to try to reduce fees, you may use the attached form. If you do not wish to incur fees for your request as it is now stated, please submit this form (or your letter revising your request) to us immediately so that your request, and fees, can be limited.

Sincerely,

*William G. Stewart*

William G. Stewart II
Assistant Director

Form No. 001 - 3/07



Requester:  Christopher Farrell        Request Number: 07-1461

## CHOOSE ONE

___**I understand that I am entitled to the first 100 pages and 2 hours of search time free.**  Please search only up to 2 hours and process only up to 100 pages that can be released to me.

___I wish to withdraw my request.

___I wish to revise my request to try to reduce fees.  Please limit my request to the following documents:

_____

_____

_____

_____

(Please note that a search for specific records may sometimes require more search time and fees).

___Please search only up to the following number of hours:  _____
    **I understand that search payment will be required even if no documents are located or released to me.**  In the event that documents are located and released to me, I understand that I may be charged duplication fees in addition to search fees.

_____          _____
Name                                     Date

Please return to:

EOUSA
FOIA/PA
600 E. Street, N.W., Room 7300
Washington D.C., 20530

NOTE: Your request is for records on a third party.  Normally, without the authorization of the third party, only public records could be disclosed.  We are providing you a form for authorization, should you wish to use it.

Exhibit H

**U.S. Departme·  ·of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757   FAX: 616-6478   (www.usdoj.gov/usao)*

Requester: Christopher Farrell                    JUN 7 5 2007

Request Number: 07-1461


Dear Mr. Farrell:

We forwarded to the U.S. Attorney's Office for the Western District of Texas your request for various possible records concerning Osbaldo Aldrete-Davila relating to the prosecution of U.S. Border Patrol Agents Ramos and Compean.

The District has informed us that all of the records you are seeking would pertain to the defendants and witness in that case. Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records. You have not furnished a release by the witness and defendants for you to receive records pertaining to them. Furthermore, your request does not present a public interest justification that would overwhelm the privacy interests of the third parties. Although you present a public interest argument for having fees waived for your request, there is not a corresponding justification for disclosure despite the privacy interests of the affected parties. Such an argument would have to meet the high standards indicated in the Supreme Court's decision in <u>NARA v. Favish</u>, 124 S. Ct. 1570 (2004). The court in Favish indicated that to sustain a public interest argument for the release of records concerning a third party a requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred. In this instance there has been no such showing, or even allegation. Therefore, release of the requested records would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C.§ 552a and sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. § 552.

We will release, if requested, any public records maintained in our files, such as court records and news clippings, without the express of authorization of the third party or public justification for release. If you desire to obtain public records, if public records exist in our files, please submit a new request for public documents.

Should you obtain the written authorization and consent of the third party for release of the records please submit a new request for the documents accompanied by the written authorization. A form is enclosed to assist you in providing us the authorization and consent of the subject of your request. The authorization must be notarized or signed under penalty of perjury pursuant to 18 U.S.C. § 1001. **Please send your new request to the address above.**



GOVERNMENT EXHIBIT
H
PENGAD-Bayonne, N. J.

This is our final action on this above-numbered request. You may appeal my decision in this matter by writing within 60 days from the date of this letter, to the **Office of Information and Privacy, Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the envelope and the letter of appeal should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court. 28 C.F.R. § 16.9.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure