**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  07-0506 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, *et al.*, | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO DEPARTMENT OF JUSTICE'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel, respectfully submits this

opposition to Defendant Department of Justice's ("DOJ") cross-motion for summary judgment.[1]

As grounds therefor, Judicial Watch states as follows:

**MEMORANDUM OF LAW**

I.      **Introduction.**

In February 2006, U.S. Border Patrol Agents Ignacio Ramos and Jose Alonso Compean

were convicted in the U.S. District Court for the Western District of Texas for shooting a

Mexican drug smuggler, Osbaldo Aldrete-Davila, as Aldrete-Davila was retreating across the

U.S. border near El Paso, Texas.  Nearly 750 pounds of marijuana were discovered in Aldrete-

Davila's van near the border.  Aldrete-Davila was granted immunity for the drugs found in his

van in exchange for testifying against Agents Ramos and Compean at their criminal trials.

_____

[1]      Judicial Watch's opposition concerns DOJ only.  The parties submitted a joint
stipulation of partial dismissal as to Defendant U.S. Department of State ("DOS") on October 26,
2007.  On October 5, 2007, the Court granted a motion for an *Open America* stay filed by
Defendant U.S. Department of Homeland Security ("DHS").

Ultimately, Agents Ramos and Compean were sentenced to 11 and 12 years imprisonment, respectively. They have since appealed their convictions, but remain incarcerated pending the outcome of their appeals. Aldrete-Davila survived the shooting after receiving medical treatment in the United States. However, he subsequently was indicted and arrested on unrelated drug charges after he reportedly re-enter the United States, using U.S. government-issued credentials and in violation of his immunity deal, with another 750 pounds of illegal drugs.

Whatever the merits of Agents Ramos' and Compean's appeal, or the drug charges against Aldrete-Davila, substantial questions have arisen regarding the actions of U.S. government officials in  prosecuting these agents, including questions about the involvement of Mexican government officials and the decisions to grant immunity to Aldrete-Davila and to allow him to re-enter the United States lawfully. To try to shed light on some of these questions, Judicial Watch served FOIA requests on DOJ, DHS, and DOS seeking records of communications between these agencies and with the Mexican Government, as well as records about participation of U.S. government personnel in coordinating, facilitating, and approving Aldrete-Davila's re-entry to the United States. Judicial Watch also seeks records about the grant of immunity to Aldrete-Davila and records detailing the terms and conditions permitting Aldrete-Davila to lawfully enter the United States. While some of these records may touch on privacy concerns, if, in fact, Aldrete-Davila is entitled to the protection of U.S. laws, Aldrete-Davila himself simply is not the focus of Judicial Watch's request. Rather, the focus of the request is on the actions and activities of U.S. government officials. As such, DOJ cannot simply claim, without so much as searching for and identifying responsive records, that any and all responsive records are exempt from production. It is not entitled to summary judgment.

II.     **Factual Background.**

On January 24, 2007, Judicial Watch sent a FOIA request to DOJ seeking access to the

following records:

a.      Communications between DOJ and any/all officers, agencies and/or
        representatives of the Government of Mexico concerning Osbaldo Aldrete-
        Davila, a Mexican national who testified in the prosecution of U.S. Border
        Patrol Agents Ignacio "Nacho" Ramos and Jose Alonso Compean over a
        shooting incident in Texas on February 17, 2005.

b.      Communications between DOJ and the U.S. Department of State and/or
        the Department of Homeland Security (and its subordinate agencies)
        concerning Osbaldo Aldrete-Davila, a Mexican national who testified in
        the prosecution of U.S. Border Patrol Agents Ignacio "Nacho" Ramos and
        Jose Alonso Compean over a shooting incident in Texas on February 17,
        2005.

c.      The participation of DOJ personnel in coordinating, facilitating and/or
        approving the lawful entry(ies) of Osbaldo Aldrete-Davilla into the United
        States (reportedly for the last time in February 2006). Mr. Aldrete-Davila
        reportedly entered the United States lawfully (with the approval of the
        U.S. Government) to obtain medical treatment, meet with federal
        investigators and to testify in court in El Paso, Texas.

d.      Any/all agreements, deals, promises, settlements, grants, understandings,
        memoranda and/or letters granting any form of immunity to Osbaldo
        Aldrete-Davila.

e.      Records detailing the terms and conditions permitting Osbaldo Aldrete-
        Davila to lawfully enter the United States.

Judicial Watch's FOIA request was received by DOJ on or about January 29, 2007.

Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), DOJ was required to respond to Judicial Watch's request

by February 26, 2007. As of March 16, 2007, DOJ failed to respond in any fashion to Judicial

Watch's January 24, 2007 FOIA request, and Judicial Watch filed this lawsuit.

In a letter dated June 15, 2007, William G. Stewart, II, the Assistant Director of DOJ's EOUSA Freedom of Information and Privacy Staff, asserted that release of the records sought by Judicial Watch would violate 5 U.S.C. § 552a of the Privacy Act and §§ (b)(6) and (b)(7)(C) of FOIA and thereby refused to conduct a search for responsive records. During the preliminary injunction hearing conducted by the Court on July 23, 2007, DOJ reiterated that it had not searched for records responsive to Judicial Watch's January 24, 2007 FOIA request. DOJ based its refusal on the Privacy Act and exemptions (b)(6) and (b)(7)(C) of FOIA and a purported lack of public interest in the case. On September 24, 2007, the Court denied Judicial Watch's request for a preliminary injunction.

Pursuant to the scheduling order entered by the Court on October 31, 2007, Plaintiff filed a motion for partial summary judgment against DOJ on November 9, 2007. DOJ's opposition and cross-motion were due on December 14, 2007. However, DOJ requested a substantial extension of time, until and including February 1, 2008, in which to file a cross-motion. DOJ neglected request an extension of time to file an opposition to Plaintiff's motion at that time. Nonetheless, Plaintiff did not oppose the request, and, by minute order entered on December 19, 2007, the Court granted DOJ until February 1, 2008 "to file its cross-motion for summary judgment or otherwise respond to plaintiff's motion for summary judgment."

On or about February 1, 2008, DOJ contacted Plaintiff and represented that it required an additional two weeks "to consult with other components within the Justice Department to discuss legal issues raised in Plaintiff's motion." Plaintiff again did not object to the requested extension, and, on February 4, 2008, the Court entered a minute order granting DOJ's request.

Notably however, DOJ again failed to request additional time to file an opposition to Plaintiff's motion for partial summary judgment.

On February 14, 2008, counsel for DOJ contacted Plaintiff proposing that it have an additional five (5) week, until March 21, 2008, to "file the response." *See* Exhibit 1 to Plaintiff's Opposition to Defendant Department of Justice's Third Motion For Extension of Time. On February 15, 2008, DOJ filed its "Motion for Enlargement of Time to File Summary Judgment Motion." DOJ's motion failed once again to request an extension of time to file an opposition to Plaintiff's November 9, 2007 motion.

DOJ finally filed its Cross-Motion for Summary Judgment on March 21, 2008. In part, DOJ's cross-motion appears to respond to Plaintiff's motion for partial summary judgment. However as shown below, as of April 11, 2008, DOJ has yet to respond to Plaintiff's motion for partial summary judgment formally and fully.

II.    **Argument.**

    A.    **Plaintiff's November 9, 2007 Motion for Partial Summary Judgment Should Be Granted By Default.**

As demonstrated above, Defendant has failed to respond to Plaintiff's Motion for Summary Judgment. Therefore, Plaintiff respectfully submits that, pursuant to Local Civil Rule 7(b), Plaintiff's motion should be treated as conceded. *See also Lytes v. D.C. Water & Sewer Authority*, 527 F. Supp. 2d 52, 59 n.3 (D.D.C. 2007).

Even if the Court deems DOJ's cross-motion for summary judgment to constitute an opposition to Plaintiff's motion for partial summary judgment, DOJ's cross-motion is still defective. Local Civil Rules 7(h) and 56.1 require that an opposition to a motion for summary

judgment include a statement of material facts as to which there exists a genuine issue in dispute.

*See* LCvR 7(h) and LCvR 56.1.  These rules state:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support that statement.  An opposition to such a motion ***shall*** be accompanied by a ***separate*** concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.

*Id.* (emphasis added).  In light of the above, Plaintiff's motion for partial summary judgment should be granted by default, and Defendant should be required to search for and produce non-exempt, responsive records without further delay.  *See* LCvR 7(b).

### B.    Summary Judgment Standard.

In FOIA litigation, as in all litigation, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Anderson v.  Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed.R.Civ.P. 56(c).  In FOIA cases, the agency decisions to "withhold or disclose information under FOIA are reviewed *de novo* by this court."  *Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004).  In reviewing a motion for summary judgment under FOIA, a court must view the facts in the light most favorable to the requestor.  *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). For an agency to prevail, it must "prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements."  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978).

C.    **DOJ Has A Duty to Search**.

FOIA mandates that government agencies make "reasonable efforts to search" for records responsive to a FOIA request.  5 U.S.C. § 552(a)(2)(E)(ii)(c); s*ee Ginarte v. Mueller*, 496 F. Supp. 2d 68, 69 (D.D.C. 2004).  The law of the D.C. Circuit regarding the reasonableness of an agency's FOIA search is clear.  In responding to a FOIA request, an agency is required to show that it made "a good faith effort to conduct a search for the requested records, using methods that can be reasonably expected to produce the information requested." *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. U.S. Dep't. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

The burden of persuasion as to the reasonableness of a search falls on the agency. *McGhee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983) ("the agency bears the burden of establishing that any limitations on the search it undertakes in a particular case comport with its obligation to conduct a reasonably thorough investigation.").  Any affidavit(s) submitted by the agency describing its search for documents must be "relatively detailed and non-conclusory, and . . . submitted in good faith." *Safecard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). Additionally, if the reasonableness of a search is challenged, as in this case, an agency must "demonstrate 'beyond a material doubt' that the search was reasonable." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).

It remains uncontested that DOJ has not conducted a proper search for records responsive to Judicial Watch's January 24, 2007 FOIA request.  Defendant's motion contains the declaration

of Karen M. Finnegan, which states that the Executive Office of United States Attorneys

("EOUSA") identified the United States Attorneys Office, Western District of Texas-San

Antonio Division, as the physical location for documents responsive to Plaintiff's FOIA request.

*See* Finnegan Declaration ("Finnegan Dec.") at ¶18.  This office allegedly contains 17 boxes of

documents, which may total more than 50,000 pages. *Id.*  Finnegan also states that "[O]ther

potentially responsive records *may* be located in the Administrative File System (Justice/USA-

001) in a Victim/Witness file captioned 'Ramos, Ignacio, et al,' and in various internal electronic

communications that were circulated among prosecutors in the San Antonio and El Paso

Divisions.  *Id.* (emphasis added).  However, Finnegan does not state with certainty whether or

not responsive documents actually exist within this system.  In any event, Finnegan's declaration

confirms that DOJ has not conducted a document-by-document search for records responsive to

Judicial Watch's FOIA request.  *Id.* at ¶22.  Rather, DOJ continues to assert, without having

looked at the 50,000 records it acknowledges exist, that all of the records sought by Judicial

Watch are *per se* exempt under the Privacy Act and FOIA privacy exemptions.  This assertion is

simply incorrect as a matter of law.

  DOJ's assertion that it can unilaterally declare all the records responsive to Judicial

Watch's FOIA exempt *per se* is not only contrary to the overall purpose of FOIA, it is contrary to

the law of the D.C. Circuit.  It also misunderstands Judicial Watch's FOIA request.

  First, permitting an agency to refuse to search based on no more than the agency's own

assertion that the records – in their entirety – are exempt, turns FOIA on its head.  The purpose of

FOIA is to foster openness and accountability in government – to let the people know what their

Government is up to.  *See Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1118 (D.C. Cir. 2004);

see also *U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 772-73 (1989).[2]  DOJ's proposition would permit government agencies, which "hold all of the cards" regarding the nature and subject matter of requested records, to assert blanket claims of exemptions over entire systems of records, files, or databases.  A requester's ability to challenge such blanket assertion of exemption is severely limited at best.  Without having the benefit of knowing what types of information are included in the records, a requester has little recourse.  In fact, unless a court grants *in camera* review, which burdens the courts with the agency's obligation, a requester has no meaningful opportunity to obtain review of, much less challenge, an agency's blanket assertion of exemption.

Second, the D.C. Circuit has cautioned against permitting an agency to presume or assume that all of its records are exempt from disclosure *per se*.  In *Church of Scientology v. IRS*, 792 F.2d 146, 151-52 (D.C. Cir. 1986), the Court rejected the Internal Revenue Service's ("IRS") blanket assertion that it was not required to search beyond a very limited scope by asserting that all of the requested information was exempt under FOIA Exemption 3 as "return information." The Court held that the IRS's "contention would be justified only if, as a matter of law, all information in IRS files is return information.  That is unquestionably not so." *Id.* at 151.  The Court further held that the "District Court erred in accepting the IRS's blanket assertion that all the information responsive to the Church's request . . . was exempt from disclosure." *Id.* at 152.

---

[2]        FOIA provides a framework of liberal disclosure for agency records and "provides that all documents are available to the public unless specifically exempted by the Act itself." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973) (footnote omitted).  Exemptions from disclosure "***must be construed narrowly***, in such a way as to provide the maximum access consonant with the overall purpose of the Act." *Id.* (emphasis added).

This Court also has rejected agencies' assertions of unilateral blanket exemptions. In *Santos v. DEA*, 357 F. Supp. 2d 33, 38 (D.D.C. 2004), this Court rejected the Drug Enforcement Agency's ("DEA") blanket assertion that all of the requested records were exempt as criminal investigatory records. The Court held:

> While it may be that documents requested by the plaintiff are subject to categorical exemptions applicable to investigatory files of third parties that would justify nondisclosure, ***the Court cannot apply a blanket exemption to an investigatory record,*** especially where the agency fails to put forth a sufficiently detailed description of the documents withheld and the exemptions to which the documents correspond.

*Id.* (emphasis added) (internal citations omitted).

Contrary to DOJ's assertion in its cross-motion, DOJ has not come close to meeting the standard set by this Court in *Santos*. While DOJ identifies some of the exemptions under which it claims the responsive documents are exempt, Ms. Finnegan admits in her declaration that Defendant has not identified all such alleged exemptions. Finnegan Dec. at 8, n.2. In addition, DOJ's *description* of the 50,000 documents it claims to have located remains woefully insufficient. All Judicial Watch can glean from DOJ's motion is that the documents consist of a "criminal prosecution file" and that "the responsive case files pertain to the criminal prosecution of third-party individuals and were compiled for criminal law enforcement purposes by the USAO for the Western District of Texas." Finnegan Dec. at ¶¶18, 25. This hardly constitutes a *detailed* description of a collection of 50,000 pages of documents.

DOJ cannot assert that *all* of the records in its files are subject to privacy exemptions without having made any effort to even look at the responsive records. Additionally, DOJ still

has not submitted any detailed descriptions of the records at issue in this case.  Accordingly,

DOJ's blanket claims of exemption should be rejected.

Finally, in arguing, albeit incorrectly, that it need not even search for and identify

responsive records, DOJ misconstrues the fundamental nature of Judicial Watch's request.  The

gravamen of Judicial Watch's FOIA request is the actions of U.S. government officials,

including records of communications between government agencies -- between DOJ, DOS, and

DHS -- and between these agencies and the Mexican government.  As such, it simply cannot be

said that all of the records at issue, without exception, would impact on Aldrete-Davila's privacy

and, therefore, DOJ need not even search for and identify with any degree of specificity records

responsive to the request.  Until DOJ has searched for and identified responsive documents and

proved its claims of exemption with respect to any withholdings, it cannot have satisfied its

FOIA obligation and is not entitled to summary judgment..

### D.    The Privacy Exemptions Are Inapplicable As a Matter of Law.

DOJ's blanket refusal to search for responsive records is based on a misapplication of the

Privacy Act and privacy exemptions §§ (b)(6) and (b)(7)(c) of FOIA.  First, the Privacy Act

applies *only* to citizens of the United States or to aliens lawfully admitted for permanent

residence.  5 U.S.C. § 552a(a)(2).[3]  Osbaldo Aldrete-Davila is a Mexican national and has not

been lawfully admitted to the U.S. for permanent residence.  Therefore, the Privacy Act does not

apply to him.  Second, the FOIA privacy exemptions relied on by DOJ do not apply to Aldrete-

Davila for at least three reasons: (1) any privacy intrusion implicated by the release of the records

---

[3]    Section § 552a(a)(2) of the Privacy Act defines "individual" as a "citizen of the United States or an alien lawfully admitted for permanent residence."

is *de minimis*; (2) DOJ has already made Aldrete-Davila a nationally-known figure; and (3) the public interest outweighs any privacy concerns of Aldrete-Davila.[4]

## 1.    The Privacy Interests in This Case Are *De Minimis*.

FOIA's privacy exemptions require a balancing of competing considerations. Asserting that information is private is not enough to withhold the information from a requestor. Rather, Exemption 6 permits withholding information contained in certain types of files when disclosure would "constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) permits withholding law enforcement information, "but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6) and (7)( C ). Therefore, it is not enough for DOJ to simply assert generic privacy interests. It is essential that DOJ demonstrate that release of the withheld information will constitute a "clearly unwarranted invasion of privacy" or an "unwarranted invasion of privacy."[5]

The first step in determining whether FOIA privacy exemptions apply is "whether their disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest. If no significant privacy interest in implicated, FOIA demands disclosure." *National Ass'n of Ret.*

---

[4]    It is not a foregone conclusion that FOIA's privacy exemptions inherently apply to non-citizens. In *National Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004), the U.S. Supreme Court held that "in the case of Exemption 7(c), the [FOIA] statute requires us to protect, in the proper degree, the personal privacy of ***citizens*** against the uncontrolled release of information compiled through the power of the state." (Emphasis added). The opinion uses the term "citizen" or "citizens" no less than nine times.

[5]    The D.C. Circuit has also made it necessary for DOJ to demonstrate the "causal relationship between the disclosure and the threatened invasion of privacy." *National Ass'n of Ret. Federal Employees v. Horner*, 978 F.2d 873, 878 (D.C. Cir. 1989). DOJ has provided no such demonstrations.

*Federal Employees v. Horner*, 978 F.2d 873, 874 (D.C. Cir. 1989).  In this case, the information

sought for release, other than Aldrete-Davila's name, which DOJ has already admitted and

released, is not the type of information typically withheld as private.  Judicial Watch is not

seeking information such as Aldrete-Davila's "place of birth, date of birth, date of marriage,

employment history, [or] comparable data." *Id.* at 875.  Rather, the information sought by

Judicial Watch revolves around the actions and communications of U.S. government officials.

Any privacy interest Aldrete-Davila has in such information is *de minimis* at best.

### 2. <u>DOJ Has Already Made Aldrete-Davila a Nationally Known Figure</u>.

It is extraordinary that DOJ is asserting the privacy rights of Aldrete-Davila as the reason

for refusing to search for, segregate, and produce responsive records when it is DOJ itself that

has made Aldrete-Davila a very publicly known person. *See* Supplemental Affidavit of Meredith

L. Di Liberto Affidavit ("Suppl. Di Liberto Affidavit ") at ¶ 6, Exhibit 2 (Docket Entry No. 18).

First, DOJ admitted in its July 19, 2007 opposition to Judicial Watch's application for injunctive

relief that the individual whose privacy it sought to protect is Aldrete-Davila.  Defendants United

States Department of Justice's and Defendant United States Department of States's Opposition to

Plaintiff's Application For Injunctive Relief ("Defs' Opp.) at 7.  This, in and of itself, is highly

unusual -- the agency naming the individual it seeks to protect.  Unlike other cases in which the

agency refused to confirm or deny the existence of records, DOJ has not only disclosed Aldrete-

Davila's identity and the fact that it possesses records about Aldrete-Davila, but it also has

13

disclosed substantial information about Aldrete-Davila.[6]  DOJ should not be allowed to claim a

privacy exemption for an individual who DOJ itself has made public.

The D.C. Circuit has addressed the issue and held that "the government may not rely on a

FOIA exemption to withhold information that has been 'officially acknowledged' or is in the

'public domain.'" *Davis v. DOJ*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting *Afshar v. DOJ*,

702 F.2d 1125, 1130-34 (D.C. Cir. 1983)).  DOJ has been very public with information about

Aldrete-Davila.  *See* Suppl. Di Liberto Affidavit at ¶ 5-6 (Docket Entry No. 18).  DOJ has

publicly acknowledged that Aldrete-Davila entered the United States illegally with a van load of

illegal drugs. *Id.* at ¶ 6, Exhibit 2.  DOJ has publicly acknowledged that Aldrete-Davila was shot

by a U.S. Border Patrol Agent attempting to flee back to Mexico.  *Id.*  DOJ has acknowledged

that it went to Mexico to find Aldrete-Davila.  *Id.*  DOJ has publicly acknowledged that Aldrete-

Davila was offered immunity to testify against two Border Patrol agents in a federal trial.  *Id.*

DOJ has publicly acknowledged that Aldrete-Davila broke his immunity agreement.  *See*

February 16, 2007 CNN Transcript, attached as Exhibit 1 to Plaintiff's partial motion for

summary judgment.  DOJ had publicly acknowledged that it has not prosecuted Aldrete-Davila

for illegally crossing the border, smuggling drugs, or breaking his immunity deal.  *See* Suppl. Di

Liberto Affidavit at ¶ 5-6*.*  These facts, among others, have been publicly acknowledged by DOJ

on numerous occasions and appear in publicly available written form as well.  In fact, DOJ has

---

[6]        *See e.g., Judicial Watch v. U.S. Dep't of Homeland Security*, 2007 U.S. Dist.
LEXIS 70446, *10, n.5 (Sept. 24, 2007); *Mays*, 234 F.3d at 1327-28 (DEA never publicly
acknowledged whose identity it was protecting); *Santos*, 357 F. Supp. 2d at 35 (DEA would
neither confirm nor deny the existence of third-party records); *Romero-Cicle v. DOJ*, 2006 U.S.
Dist. LEXIS 84077, * 13-14 (D.D.C. Nov. 20, 2006) (DOJ never publicly acknowledged whose
identity it was protecting, just the types of information being redacted).

14

waged a very public media campaign regarding the shooting incident, including numerous references to Aldrete-Davila, his criminal activity and his role in DOJ's federal prosecution against the two U.S. Border Patrol agents.  *Id.* at ¶ 4, Exhibit 1.  Quite simply, it is too late for DOJ's concern for Aldrete-Davila's privacy -- DOJ has already laid bare Aldrete-Davila's personal information.[7]

### 3.    <u>The Public Interest Clearly Outweighs Any Privacy Concerns</u>.

Even if Aldrete-Davila's privacy interests had not been eviscerated by DOJ and constituted  more than a *de minimis* intrusion, and Judicial Watch asserts they are not, the public interest in this case clearly outweighs any such privacy concerns.  In addition to demonstrating that the privacy exemptions apply, DOJ must also demonstrate that any invasion of privacy caused by the release of the withheld information would constitute either a "clearly unwarranted invasion of privacy" or an "unwarranted invasion of privacy."  The U.S. Supreme Court has held that the question of whether an invasion of privacy is warranted goes directly to "the nature of the requested document and its relationship to the 'basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'"  *U.S. Dep't of Justice v. Reporter's Committee For Freedom*, 489 U.S. 749, 772 (1989).  In other words, the public interest in the withheld information is directly linked to the determination of whether the privacy invasion is warranted.  *See Horowitz v. Peace Corps.*, 428 F.3d 271, 278 (D.C. Cir. 2005).

This case clearly presents a situation in which the public interest warrants any invasion of privacy, however slight, that might result.  The information Judicial Watch seeks in this case

---

[7]    The courts have upheld Exemption 7(C) privacy withholdings for the purpose of "not being associated unwarrantly with alleged criminal activity," *Stolt-Nielsen*, 480 F.Supp. 2d at 180, Aldrete-Davila's criminal involvement has been publicly well documented by DOJ.

goes right to the heart of opening official DOJ action to the light of public scrutiny. The records sought by Judicial Watch will help answer questions surrounding DOJ's official activities namely, whether and/or how DOJ cooperated with other U.S. government agencies in prosecuting two U.S. Border Patrol Agents, whether and/or how DOJ cooperated with the Government of Mexico in the prosecution of U.S. law enforcement officers, and whether and/or how DOJ regularly offers immunity agreements to illegal drug-smugglers to aid in the prosecution of U.S. law enforcement officers. These questions primarily involve information about DOJ, not information about private third parties. In fact, as demonstrated above, the activities of the individual involved here – Aldrete-Davila – are already public, for the most part. The remaining withheld information focuses on official DOJ activities. "Official information that sheds light on an agency's performance of its statutory duties falls squarely within [the] statutory purpose [of FOIA]." *Reporters Committee* at 773.

### E. DOJ's Failure to Provide a Segregability Analysis.

In addition to its overall failure to search or provide a detailed affidavit identifying the responsive records it is withholding, DOJ also has failed to conduct a segregability analysis. FOIA requires agencies to disclose "all reasonably segregable information . . . after redaction or deletion of the exempt materials." 5 U.S.C. § 552(b). Only information that is "inextricably intertwined with exempt portions" need not be disclosed. *See Mead Data Center v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). The D.C. Circuit held that the "segregability requirement limits claims of exemption to discrete units of information; to withhold an entire document, all units of information in that document must fall within a statutory exemption." *Billington v. U.S. Dep't of Justice,* 233 F.3d 581, 586 (D.C. Cir. 2000). Even when the parties

16

themselves do not address segregability, the court must raise it *sua sponte*. *See Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

DOJ has not performed a segregability analysis of the records responsive to Judicial Watch's FOIA. DOJ's failure is compounded by the fact that has refused to even search for responsive records. This Court has held that, "the Court errs if it 'simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Stolt-Nielson Transportation Group, LTD v. USA*, 480 F. Supp. 2d 166, 182 (D.D.C. 2007); *see also Perry-Torres v. Dep't of State*, 2006 U.S. Dist. LEXIS 71258, *9 (D.D.C. Sept. 29, 2006) ("Indeed 'the focus of FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.'") (quoting *Mead Data Center*, 566 F.2d at 260). DOJ cannot, of course, perform a segregability analysis until it performs a search for responsive records. DOJ must be required to conduct a search for responsive records and release all non-exempt portions thereof.

Finally, a privacy exemption "'permits the Government to withhold only the specific information to which it applies [*i.e.*, third party identifying information], not the entire page or document in which the information appears.'" *Dixon v. DOJ*, 2005 U.S. Dist. LEXIS 37796, * 10 (D.D.C. Sept. 22, 2005) (quoting *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000). Ordinarily, Exemptions 6 and 7(C) are applied to names, driver's licence numbers, social security numbers, agency contact names and numbers, home addresses, dates of birth and e-mail addresses. *See Brunetti v. FBI*, 357 F. Supp. 2d 97, 106 (D.D.C. 2004); *see also Stolt-Nielsen*, 480 F. Supp. 2d at 179. As described by this Court, these are, in the ordinary course, discrete units of information, easily redacted. *See Dixon*, 2005 U.S. Dist. LEXIS 37796 at * 10; *see also*

*Trans-Pacific Policing Agreement* , 177 F.3d at 1027.  Therefore, it is highly unlikely that the records responsive to Judicial Watch's request are exempt in their entirety, especially, as noted above, where the gravamen of the request concerns coordination and communications between U.S. government agencies and between U.S. government agencies and the government of Mexico.

**III.    Conclusion.**

Judicial Watch respectfully requests that the Court grant its motion for partial summary judgment against DOJ, deny DOJ's motion for summary judgment, and order DOJ to search for and produce all non-exempt responsive records by a date certain and a *Vaughn* index of any and all responsive records subject to a claim of exemption.

Dated: April 11, 2008                                    Respectfully submitted,

                                                        JUDICIAL WATCH, INC.

                                                         /s/ Jason B. Aldrich
                                                        D.C. Bar No. 495488
                                                        Paul J. Orfanedes
                                                        D.C. Bar No. 429716
                                                        Suite 500
                                                        501 School Street, S.W.
                                                        Washington, DC 20024
                                                        (202) 646-5172

                                                        *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  07-0506 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, *et al.*, | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE
IS A GENUINE ISSUE AND DISPUTE FILED IN OPPOSITION TO
DEFENDANT DOJ'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel and pursuant to LCvR 56.1,

submits the following Statement of Material Facts as to Which There is a Genuine Issue and

Dispute:

1.      Plaintiff denies that Defendant DOJ is not obligated to conduct a document-by-

document search of the records it has located in response to Plaintiff's January 24, 2007 FOIA

request.

2.      Plaintiff denies that any documents are being properly withheld by Defendant

DOJ pursuant to the Privacy Act.

3.      Plaintiff denies that any documents are being properly withheld by Defendant

DOJ pursuant to 5 U.S.C. §552(b)(6). The documents at issue are not properly being withheld

pursuant to FOIA Exemption (b)(6) because, as demonstrated in more detail in Plaintiff's

Opposition To Defendant DOJ's Cross-Motion for Summary Judgment, Defendant DOJ has

failed to carry its burden of showing that the withheld records contain information from

personnel and medical files and similar files, or that release of the requested information would constitute a clearly unwarranted invasion of personal privacy.

4.    Plaintiff denies that any documents are being properly withheld by Defendant DOJ pursuant to 5 U.S.C. §552(b)(7)(C).   The documents at issue are not properly being withheld pursuant to FOIA Exemption (b)(7)(C) because, as demonstrated in more detail in Plaintiff's Opposition To Defendant DOJ's Cross-Motion for Summary Judgment, Defendant DOJ has failed to carry its burden of showing that the records were composed for law enforcement purposes, that the release of the records could reasonably be expected to constitute an unwarranted invasion of personal privacy for third parties, and that there is no public interest in disclosure that outweighs the strong interest of named third-party individuals.

5.    Plaintiff denies that the documents located by Defendant DOJ contain no segregable information.

As to Defendant's statements, Plaintiff responds as follows:

1.    Disputed to the extent that this paragraph does not include the exact language contained in Plaintiff's January 24, 2007 FOIA request. *See* Plaintiff's Statement of Material Facts as to Which There No Genuine Issue filed with Plaintiff's Motion for Partial Summary Judgment at ¶1.

2.    Undisputed.

3.    Undisputed.

4.    Undisputed.

5.    Undisputed.

6.    Undisputed.

7.      Undisputed.

8.      Plaintiff does not dispute that it received Defendant DOJ's June 15, 2007 letter. Plaintiff disputes that responsive records cannot be released by Defendant DOJ.

9.      Plaintiff objects to this paragraph because it contains a conclusion of law rather than a statement of material fact.

10.     Undisputed.

11.     Undisputed.

12.     Undisputed.

13.     Undisputed.

14.     Undisputed.

15.     Undisputed.

16.     Plaintiff does not dispute that EOUSA did not conduct a document-by document search.  Plaintiff does dispute that the categories of information contained in its request are clearly exempt from disclosure.

17.     Plaintiff objects to this paragraph because it contains a conclusion of law rather than a statement of material fact.

18.     Plaintiff objects to this paragraph because it contains a conclusion of law rather than a statement of material fact.

19.     Defendant DOJ's Statement of Material Facts does not include a ¶19.

20.     Plaintiff denies that the responsive documents held by Defendant DOJ contain no reasonably segregable information.

3

Dated: April 11, 2008                    Respectfully submitted,

                                         JUDICIAL WATCH, INC.

                                         /s/ Jason B. Aldrich
                                         D.C. Bar No. 495488
                                         Paul J. Orfanedes
                                         D.C. Bar No. 429716
                                         Suite 500
                                         501 School Street, S.W.
                                         Washington, DC 20024
                                         (202) 646-5172

                                         *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 07-0506 (RJL) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Opposition to Defendant Department of Justice's Cross

Motion for Summary Judgment, and the entire record herein, it is hereby

ORDERED that:

1.      Defendant's Cross-Motion is denied.


SO ORDERED:                                    _____

Hon. Richard J. Leon
United States District Judge

Date: