## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JUDICIAL WATCH, INC.**

                **Plaintiff,**

    **v.**                               **Civil Action No. 07-0506 (RCL)**

**UNITED STATES DEPARTMENT OF**
      **JUSTICE**

                **Defendant.**

## DEFENDANT DEPARTMENT OF JUSTICE'S REPLY
## TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION
## FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

### <u>Introduction</u>

The matter before the Court involves the categorical withholding of a third party's law enforcement records under Exemptions 6 and 7(C) of the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552(b)(6) and (b)(7)(C). The concept of categorical withholding originated in the Supreme Court's decision in <u>United States Dep't of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749 (1989) (hereinafter <u>Reporters Committee</u>) and is an appropriate response to a targeted, or third party, request for access to law enforcement records. When an agency categorically withholds a third party's law enforcement records pursuant to Exemptions 6 and 7(C) an individualized balancing of the privacy and public interests is not conducted because given the inherently sensitive nature of the requested records the balance would always tip in favor of non-disclosure. <u>See</u> <u>Reporters Committee</u> at 750 [hereinafter <u>Reporters Comm.</u>]. Furthermore, without

written authorization from the subject third party, or proof that the third party is deceased, the Privacy Act of 1974 prohibits the disclosure of their records.  See 5 U.S.C. § 552a(b); see also 28 C.F.R. § 16.3(a).  A categorical withholding of third-party records differs from a Glomar response wherein the agency refuses to confirm nor deny the existence of responsive records because a categorical denial of access admits that responsive records exist.

A third party has a strong privacy interest in the details contained in his or her criminal law enforcement records because there is a negative connotation or stigma attached to law enforcement records.  For this reason, Defendant routinely employs categorical withholdings in response to third-party requests for access to criminal investigatory records when the subject third party has not provided authorization to release his or her law enforcement information to the requester, when the requester has not provided proof that the subject third party is deceased, and when the requester has failed to provide a meaningful evidentiary showing that the public interest in disclosure outweighs the substantial privacy interest in non-disclosure.  In light of the fact that any and all records responsive to the third-party request are, in fact, exempt under Exemptions 6 and 7(C), a document-by-document search and review of the responsive material is not conducted.   It is under these circumstances in the instant matter that Defendant categorically denied access to Aldrete-Davila's criminal law enforcement records in response to plaintiff's request.

**Preliminary Statement**

Plaintiff commenced this action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking access to records from the Executive Office for United States Attorneys (EOUSA), a component of the Department of Justice, pertaining to Osbaldo Aldrete-Davila, a Mexican national, who testified in the prosecution of U.S. Border Patrol Agents Ignacio "Nacho"

Ramos and Jose Alonso Compean.   Specifically, Plaintiff seeks access to the following categories of records: (1) communications between DOJ and any/all officers, agencies, and/or representatives of the Government of Mexico concerning Aldrete-Davila; (2) communications between DOJ and the U.S. Department of State and/or the Department of Homeland Security (and its subordinate agencies) concerning Aldrete-Davila; (3) the participation of DOJ personnel in coordinating, facilitating and/or approving the lawful entry(ies) of Aldrete-Davila into the United States; (4)  any/all agreements, deals, promises, settlements, grants, understandings, memoranda and/or letters granting any form of immunity to Aldrete-Davila; and, (5) records detailing the terms and conditions permitting Aldrete-Davila to lawfully enter the United States.

On November 9, 2007, Plaintiff moved for partial summary judgment[1] on several grounds, namely, that Defendant had a duty to search for responsive records; that the privacy exemptions cited by Defendant are not applicable because Aldrete-Davila is not a U.S. citizen or a legal resident alien; that the privacy interest in Aldrete-Davila's records is *de minimis*; that  Aldrete-Davila is a nationally-known figure; and, the public interest in disclosure outweighs  Aldrete-Davila's privacy interest.  Plaintiff also argued that DOJ failed to conduct a segregability analysis.

On March 21, 2008, Defendant filed "Defendant Department of Justice's Cross-Motion for Summary Judgment," which included a declaration and several exhibits.  This reply constitutes

---

[1]  On July 9, 2007, Plaintiff moved for a preliminary injunction seeking the immediate release of certain documents from the Department of Justice.  On September 25, 2007, this Court denied Plaintiff's motion finding that Plaintiff had not demonstrated that either it, or the public, will suffer irreparable harm if the requested documents were not turned over immediately, and that granting the injunction would result in a significant hardship on DOJ, and that the public interest would not be furthered by granting the injunction.  See  Judicial Watch v. U.S. Department of Homeland Security, et al., No. 07cv506, 2007 U.S. Dist. LEXIS 70446, *5 (D.D.C. September 25, 2007).

Defendant's opposition to Plaintiff's motion for partial summary judgment [hereinafter Plaintiff's Motion], and its reply to Plaintiff's opposition to defendant's cross-motion for summary judgment [hereinafter Plaintiff's Opposition].  In sum, Plaintiff is challenging Defendant's categorical denial of access to the criminal law enforcement records of third party individuals pursuant to FOIA Exemptions 6 and 7C, 5 U.S.C. §§552(b)(6) and (b)(7)(C), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a.  In accordance with Local Civil Rule 7(d), defendant now files this opposition to Plaintiff's motion for partial summary judgment and reply in further support of its cross-motion for summary judgment.  Based upon the Defendant's cross-motion for summary judgment, the accompanying declaration , the entire record herein, and for the reasons set forth below, Defendant respectfully suggests that Plaintiff's arguments are without legal merit and that Defendant is entitled to summary judgment as a matter of law.

## Argument [2]

### I.    The Duty to Search

_____Plaintiff argues that the FOIA mandates that government agencies make reasonable efforts to search for records responsive to a FOIA request and that in responding to a FOIA request an agency is required to show that it made a good faith effort to conduct a search for responsive records. (See Plaintiff's Opposition at 7 [hereinafter Plaintiff's Opp.]; Plaintiff's Motion at 3.)  Moreover, Plaintiff argues that it is uncontested that DOJ did not conduct a proper search for records responsive to its request, and that DOJ errs in asserting that all of the records sought in its request are *per se*

---

[2]    Plaintiff moved for a partial summary judgment by default because Defendant failed to respond to Plaintiff's motion for summary judgment.  Defendant is filing a request for leave to file an opposition to Plaintiff's summary judgment motion.  Defendant's Statement of Material Facts in Dispute is attached to this opposition and reply.

exempt under the Privacy Act and the FOIA privacy exemptions.  (See Plaintiff's Opp. at 8; Plaintiff's Motion at 4.)  Plaintiff also argues that DOJ misconstrued the fundamental nature of its request because the "gravamen of Judicial Watch's FOIA request is the actions of the U.S. government officials," and that it cannot be true that all of the records at issue, without exception, would impact on Aldrete-Davila's privacy.  (See Plaintiff's Opp. at 11.)    Although Plaintiff is correct that the FOIA mandates that agencies conduct a reasonable search to locate records responsive to a FOIA request, what Plaintiff has ignored in stating this mandate as an absolute is the teachings of the United States Supreme Court in United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989) (hereinafter Reporters Committee.)  In Reporters Committee (hereinafter Reporters Comm. ), the Supreme Court drastically changed the way in which federal agencies processed some FOIA requests, namely, third party requests seeking access to law enforcement records, when it expressly approved of the use of categorical withholding where the individual circumstances of a case may be disregarded because due to the nature of the responsive records the balance normally conducted under the FOIA's privacy exemptions would always tip in one direction–towards non-disclosure.[3]  See Reporters Comm., 489 U.S. at 750.  In this case, the Court held that "for an appropriate class of law enforcement records or information a categorical balance may be undertaken. . ."  Id. at 777.  The Court also emphasized the propriety and practicability of "categorical balancing" under Exemption 7(C) as a means of achieving "workable

---

[3]    Plaintiff contends that the D.C. Circuit has cautioned against permitting an agency to presume or assume that all of its records are exempt from disclosure per se, citing Church of Scientology v. IRS, 792 F.2d 146, 151-52 (D.C. Cir. 1986).  (See Plaintiff's Opp. at 9; Plaintiff's Motion at 5.)  This case pre-dates the Supreme Court's decision in Reporters Comm., and the concept of categorical withholding; therefore, it is arguable whether the Court's finding regarding per se exemption is still viable.

-5-

rules" for processing FOIA requests.[4]  See id. at 776-80.  Further, the Supreme Court stated that "as a categorical matter . . . a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade the citizen's privacy."  See id. at 780.

The concept of "categorical balancing" recognizes that a category of cases can properly receive uniform disposition "without regard to individual circumstances."  See id. at 780.  In light of the approach espoused in the Reporters Comm. decision, and due to the inherently sensitive nature of law enforcement records, defendant determined that criminal investigatory records are an appropriate class of law enforcement records for categorical balancing pursuant to Exemption (b)(7)(C) because the disclosure of law enforcement records or information about a private individual can reasonably be expected to invade that individual's privacy.  See Reporters Comm. at 780.  See also Blanton v. U.S. Dep't of Justice, 65 F. App'x 787, 789 (D.C. Cir. 2003) (protecting the identities of third parties contained in FBI files categorically, including those assumed to be deceased); Fiduccia v. U.S. Dep't of Justice, 185 F.3d 1035, 1047-48 (9th Cir. 1999) (protecting records concerning FBI searches of house of two named individuals categorically);  Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990) (finding disclosure of information contained in law enforcement files about an individual's involvement in law enforcement proceedings constitutes an unwarranted invasion of personal privacy); Coolman v. IRS, No. 98-6149, 1999 WL 675319, at *5 (W.D. Mo. July 12, 2002) (finding categorical withholding of third party information in law enforcement records to be proper), summary affirmance granted, 1999 WL 1419039 (8th Cir. 1999).

---

[4]  In acknowledging the Supreme Court's approval of categorical balancing, the D.C. Circuit stated that "[c]ourts are to generalize from their experience, that is, in order to minimize unnecessary inquiries into factual minutiae, much as they do in applying the *per se* rule in antitrust to categories of conduct so likely to warrant liability as to make a particularized inquiry a poor use of resources."  SafeCard Services v. SEC, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

Under the FOIA an agency must show that it made "'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" Nations Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).  As a result of the approach set forth in Reporters Comm., when an agency categorically denies access to a third party's law enforcement records, it has determined without regard to the individual circumstances of the case that the privacy interest of the subject third party outweighs any public interest in disclosure.[5]  It follows that to conduct a document-by-document search to locate responsive records that are categorically exempt in their entireties under the FOIA would be an inefficient way to process third-party FOIA requests because it would delay the issuance of the agency's categorical denial of the request, and could result in search fees being assessed even though the agency does not intend to release any of the third party's law enforcement records to the requester.  This practice would also fly in the face of the Supreme Court's efforts to create "workable rules" for processing FOIA requests.  See Reporters Comm. at 776-80.

The adequacy of any FOIA search is necessarily "dependent upon the circumstances of the case."  Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 663 (D.C. Cir. 2003).  In categorically denying FOIA requests for access to the law enforcement records of a third party an agency's failure to conduct a document-by-document search for responsive records does not equate to an inadequate search or a violation of the FOIA because the circumstances of these cases would make a document-

---

[5]  Of course, if the requester provides written third-party authorization, proof that the subject third-party is deceased, or demonstrates an overriding public interest in disclosure then a categorical withholding is not proper.

by-document search for responsive records unproductive.

At least two District Courts have not required that agencies conduct a search for responsive records in response to a FOIA request after finding that the agency properly employed the Glomar response. See e.g., Valdez v. DEA, 474 F.Supp. 2d 128, 131 (D.D.C. 2007) (concluding that a properly asserted Glomar response relieves agency of its usual obligation to provide search affidavit), summary affirmance granted, No. 07-5131, slip op. (D.C. Cir. Dec. 31, 2007); Butler v. DEA, No. 05-1798, 2006 WL 398653 (D.D.C. Feb. 16, 2006) (finding that an agency need not provide affidavit regarding its search efforts if the agency properly refuses to confirm nor deny records).  In this case, due to the official acknowledgment of the Ramos and Compean federal prosecution, and Aldrete-Davila's involvement in it, a Glomar response would have been improper.  However, under special circumstances the Glomar response can be properly employed to protect the privacy interests of individuals who are the targets of FOIA requests and are named in investigatory files.  When using the Glomar response an agency refuses to confirm nor deny the existence of responsive records.

In Valdez, the Court stated that "[p]roperly asserted, a Glomar response relieves an agency of its usual obligation to 'provide detailed affidavits proving that it performed an adequate search for documents'," citing Greenberg v. United States Dep't of Treasury, 10 F. Supp. 2d 3, 24 (D.D.C. 1998).  Implicit in the Valdez decision is the idea that there are instances in which an agency is not required to conduct a search for responsive records.  In analogizing the Valdez Court's reasoning to the matter before the Court, in this case the records responsive to plaintiff's request are categorically exempt under the FOIA's privacy exemptions; therefore, a categorical withholding can be viewed similarly to a properly asserted privacy Glomar response in that any records that exist would properly

be withheld pursuant to Exemptions 6 and 7C.[6]  Consequently, it would follow that if an agency properly employs a categorical denial, then the agency is relieved of its usual obligation to conduct a document-by-document search and to provide detailed affidavits proving that it performed an adequate search for documents.

Plaintiff also contends that in <u>Santos v. DEA</u>, 357 F.Supp. 2d 33, 38 (D.D.C. 2004), this Court "rejected agencies' assertions of unilateral blanket exemptions." (<u>See</u> Plaintiff's Opp. at 10; Plaintiff's Motion at 6.)  The <u>Santos</u> case is readily distinguished from the matter before the Court because in the <u>Santos</u> case, DEA initially declined to confirm or deny the existence of responsive records, but in its motion to dismiss, or in the alternative for summary judgment, DEA withdrew the Glomar response and claimed that any responsive criminal investigatory records "are subject to Exemptions 2, 3, 7C, 7D, and 7F under the FOIA, and that there was no segregable information. . ." <u>Id.</u> at 35.  The <u>Santos</u> Court explained that it could not conduct a "reasoned analysis" of DEA's arguments for exemption because there was no connection drawn between the documents and the exemptions claimed. <u>Id.</u> at 37-38.  However, the <u>Santos</u> Court did state that the requested documents may be the type that "are subject to categorical exemptions applicable to investigatory files of third parties that would justify withholding," <u>Id.</u> at 38 (citing <u>Reporters Comm</u>. at 776).

Here, Defendant's categorical denial of access to the records that plaintiff requested is based purely on the named third parties' substantial privacy interest in their law enforcement records, which defendant determined trumps the public interest in disclosure.  As stated above, this privacy interest is well-recognized by the courts.  In light of this fact, and without written third-party

---

[6]  Plaintiff has not submitted any written authorization signed by any of the third parties named in its request, nor has it provided proof that any of the named third parties are deceased. <u>See</u> <u>Valdez</u>, 474 F. Supp. 2d at 131; <u>see</u> <u>also</u> 28 C.F.R. § 16.3(a).

authorization or proof of death, defendant properly concluded that all records that would be responsive to plaintiff's request are exempt from disclosure pursuant to Exemptions 6 and 7C, as well as the Privacy Act, 5 U.S.C. § 552a(j)(2). In order to properly assert a categorical denial in this case, defendant confirmed that it did maintain criminal investigatory records pertaining to the named third-party subjects identified in plaintiff's request without conducting a document-by-document search.

Finally, Plaintiff argues that the "gravamen" of its request "is the actions of the U.S. government officials" and that "it simply cannot be said that all of the records at issue, without exemption, would impact on Aldrete-Davila's privacy." (See Plaintiff's Opp. at 11.) Plaintiff ignores the fact the actions of government officials for which it seeks information are actions taken in direct connection to the third-party individual identified in its request, and not general, non-specific actions of government officials unrelated to Aldrete-Davila. Plaintiff also ignores the fact that these third-party individuals have not given their consent to the release of their law enforcement records to plaintiff. Moreover, as defendant has stated, the specific records that plaintiff seeks regarding the actions of government officials in connection with the named third-parties are maintained under the names of Ignacio Ramos and/or Jose Compean, who also have a strong privacy interest in their law enforcement records. (See Finnegan Decl. ¶ 18.) It is clear that there is no way to separate information pertaining to the actions of the government officials that plaintiff seeks from the third-party individual who is the focus of, and reason for, these actions.

## II.    Defendant Properly Asserted FOIA Exemptions 6 and 7(C) and the Privacy Act

### 1.    Defendant Properly Invoked The Privacy Act of 1974

Plaintiff correctly states that the Privacy Act defines an "individual," as being "citizens of

the United States" or "aliens lawfully admitted for permanent residence." 5 U.S.C.

§ 552a(a)(2). Given this definition, Plaintiff contends that it follows that the Privacy Act does not

apply to Aldrete-Davila, a Mexican national. (See Plaintiff's Opp. at 11; Plaintiff's Motion at 6.)

Plaintiff also contends that the FOIA privacy exemptions do not apply to Aldrete-Davila because any

potential privacy intrusion in his records is *de minimis*, because DOJ has already made Aldrete-

Davila a nationally-known figure, and because the public interest outweighs  Aldrete-Davila's

privacy interest. (See Plaintiff's Opp. at 12; Plaintiff's Motion at 7.)

　　　Although Plaintiff has correctly stated the definition of "individual" under the Privacy Act,

plaintiff misconstrues how the Privacy Act is applied to the government's Privacy Act Systems of

Records. A Privacy Act System of Records is defined as "a group of any records under the control

of any agency from which information is retrieved by the name of the individual or by some

identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. §

552a(a)(5).　The USAO's criminal prosecution files are maintained in a Privacy Act System of

Records, namely the Criminal Case Files (Justice/USA-007). The USAO's Victim/Witness Files

are also maintained in a Privacy Act System of Records in the Administrative File System

(Justice/USA-001). As stated in the definition of a Privacy Act System of Records, the Privacy Act

is triggered by the way information about an individual is retrieved by an agency. The Finnegan

Declaration explains that the files/records at issue in this case are maintained in the United States

Attorneys Office's (USAO) Criminal Case Files under the names of Ignacio Ramos and Jose

Compean, who are U.S. citizens; therefore, to retrieve information about Aldrete-Davila the USAO

would use the names or personal identifiers (criminal case number) of Messrs. Ramos and Compean.

(See Finnegan Decl. ¶ 18.) For this reason, the Privacy Act applies to the records at issue in this

case.

It is well-settled that under the FOIA that foreign nationals are entitled to the same basic privacy rights as U.S. citizens. See  Shaw v. U.S. Dep't of State, 559 F. Supp. 1053, 1067 (D.D.C. 1983). See also, U.S. Dep't of State v. Ray, 502 U.S. 164, 179-82 (1991) (applying traditional analysis of privacy interests under FOIA to Haitian nationals); Ctr. For Nat'l Sec. Studies v. U.S. Dep't of Justice, 215 F. Supp. 2d 94, 105-06 (D.D.C. 2002) (recognizing, without discussion, the privacy rights of post-9/11 detainees who were unlawfully in the United States) (Exemption 7C); aff'd on other grounds, 331 F.3d 918 (D.C. Cir. 2003); Judicial Watch v. Reno, No. 00-0723, 2001 WL 1902811, at *8 (D.D.C. Mar. 30, 2001) (protecting the asylum application filed on behalf of Cuban emigré Elian Gonzalez).  Plaintiff relies on Horowitz v. Peace Corp, 428 F.3d 271, 277-78 (D.C. Cir. 2005) for the proposition that "the public interest in the withheld information is directly linked to the determination of whether the privacy invasion is warranted." (See Plaintiff's Opp. at 15; Plaintiff's Motion at 10.) But, in that case the D.C. Circuit Court reversed the District Court and found that the privacy interest of a Tongan man, who was the complainant of sexual misconduct allegations lodged against Horowitz outweighed a non-existent public interest in disclosure. See id. Hence, Howowitz actually supports the position that under the FOIA a foreign national is entitled to the same basic privacy rights as a U.S. citizen.

## 2.  Aldrete-Davila Has A Strong Privacy Interest

Plaintiff argues that the privacy intrusion in disclosure of the requested information is *de minimis* because the information sought is "not the type of information typically withheld as private"

as it "revolves around the actions and communications of U.S. government officials."[7]  (See Plaintiff's Opp. at 13; Plaintiff's Motion at 7-8.)  As explained above, the substance of the requested information pertaining to the actions and communications of U.S. government officials focuses solely on the third party who is named in plaintiff's request.  Clearly, all law enforcement records, by their very nature, would involve the actions and/or communications of U.S. government officials.  It is also clear that due to the inherently sensitive nature of law enforcement records an individual's privacy interest in the details of these records is strong.

Plaintiff's arguments reveal its fundamental misunderstanding of the strong privacy interest that third-party individuals have in the details of their law enforcement records.  Persons mentioned in law enforcement records do not lose all their rights to privacy merely because their names have been disclosed.  See Fiduccia, at 1047 (concluding that privacy interests are not lost by reason of earlier publicity); Kimberlin v. U.S. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998) (finding that even after subject's public acknowledgment of charges and sanctions against him, he retained privacy interest in nondisclosure of "details of investigation, of his misconduct, and of his punishment"); Schiffer v. FBI, 78 F.3d 1405, 1410-11 (9th Cir. 1996) (deciding fact that much of information in requested documents was made public during related civil suit does not reduce privacy interest); Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990) (concluding fact that CIA

---

[7] Plaintiff also argues that the FOIA's privacy exemptions require a "balancing of competing considerations" and that "[a]sserting that information is private is not enough to withhold the information from a requester."  (See Plaintiff's Opp. at 12; Plaintiff's Motion at 7.) This is another example of Plaintiff's lack of clarity on the teachings of Reporters Comm. and the concept of "categorical withholding."   As stated above, categorical withholding allows an agency to bypass the traditional balancing of privacy and public interests in invoking Exemption 6 and/or 7(C) because the type of records at issue are the kind where the balance would always tip in favor of nondisclosure.  See Reporters Comm. at 750.

or FBI may have released information about individual elsewhere does not diminish the individual's "substantial privacy interests"). There can be no question that all of the third parties identified in plaintiff's request retained a strong privacy interest in the details of the investigation and prosecution.

### 3. Even Public Figures Retain Their Privacy Interests

Plaintiff contends that the Department of Justice (DOJ) has made Aldrete-Davila "a very publicly known person" and that it is "highly unusual" for the DOJ to have named the individual it seeks to protect, and concludes that DOJ "should not be allowed to claim a privacy exemption for an individual who DOJ itself made public." (See Plaintiff's Opp. at 13-14; Plaintiff's Motion at 8.) Plaintiff is attempting to confuse Defendant's third-party categorical denial pursuant to Exemptions 6 and 7(C) with a Glomar response–refusing to confirm or deny the existence of responsive records. As Defendant has noted given the wide-spread media coverage of the Ramos/Compean federal prosecution and Aldrete-Davila's role in it, refusing to confirm or deny the existence of responsive records in this case would have been improper. But, DOJ did not name the individual whose privacy it seeks to protect, plaintiff's targeted third-party request named Aldrete-Davila, Ramos and Compean. Since that time DOJ has consistently protected their strong privacy interests in the specific documents requested.

With respect to Plaintiff's claim that Aldrete-Davila is a nationally known figure, even taking this as a true statement, this fact alone does not act to waive his privacy rights. See NARA v. Favish, 541 U.S. 157 (2004) (public figures do not surrender all rights to privacy by placing themselves in the public eye); see also Wiggins v. Nat'l Credit Union Admin., No. 05-2332, 2007 U.S. Dist. LEXIS 6367, at *21 (D.D.C. Jan. 30, 2007) (deciding fact that identities of third parties were

disclosed in a related criminal trial does not diminish privacy interest); <u>Odle v. Dep't of Justice</u>, No. 05-2711, 2006 WL 1344813, at *10 (N.D.Cal. May 17, 2005) (finding that public's knowledge of subject's involvement in trial does not eliminate any privacy interest in further disclosure). Moreover, a person who testifies at trial retains a substantial privacy interest. <u>See</u> <u>Jones v. FBI</u>, 41 F.3d 238, 247 (6th Cir. 1994) (holding fact that law enforcement employee chose to testify or was required to testify or otherwise come forward in other settings does not amount to personal privacy waiver); <u>Tanks v. Huff</u>, No. 95-568, 1996 U.S. Dist. LEXIS 7266, at *10 (D.D.C. May 28, 1996) (holding that requester's knowledge of identities of informants who testified against him does not diminish their privacy interests). For these reasons, Aldrete-Davila's strong privacy interest in his law enforcement records remains undisturbed by any public exposure that he or the Ramos/Compean prosecution received.

**4. The Privacy Interest Outweighs The Public Interest**

Plaintiff argues that the public interest in the requested records "clearly outweighs any . . . privacy concerns" and that "[t]his case clearly presents a situation in which the public interest warrants any invasion of privacy; however, slight, that might result." (<u>See</u> Plaintiff's Opp. at 15; Plaintiff's Motion at 10.) Plaintiff explains that there is a public interest in the requested records because "[t]he records . . . will help answer questions surrounding DOJ's official activities namely, whether and/or how DOJ cooperated with other U.S. government agencies in prosecuting two U.S. Border Patrol Agents, whether and/or how DOJ cooperated with the Government of Mexico in the prosecution of U.S. law enforcement officers, and whether and/or how DOJ regularly offers immunity agreements to illegal drug-smugglers to aid in the prosecution of U.S. law enforcement

officers."[8]  (See Plaintiff's Opp. at 16; Plaintiff's Motion at 11.)

Although Plaintiff cites the Reporters Comm. decision, see Plaintiff's Opp. at 15, it conveniently ignores the fact that in this decision the Supreme Court expressly held that as "a categorical matter [] a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade the citizen's privacy." Reporters Comm. at 780. Plaintiff also ignores the fact that the Favish Court held that "bare suspicion" is completely inadequate to establish public interest, and that a requester must produce evidence that would be credible in the eyes of a reasonable person.  See Favish, 541 U.S. at 172.  If Plaintiff is actually asserting that there is some type of government misconduct, and not that there are just some "questions surrounding DOJ's official activities," see Plaintiff's Opp. at 16, then the Favish public interest standard requires plaintiff to make a "meaningful evidentiary showing" in order to provide even a public interest "counterweight" to the privacy interest and require a balancing of the two.  See id. at 173-75.  Additionally, the requester must establish some "nexus" between the requested documents and the asserted "significant" public interest in disclosure.  See id at 175.  Plaintiff has not alleged any government misconduct involved in the prosecution of U.S. Border Patrol Agents Ramos and Compean, or government misconduct surrounding Aldrete-Davila's role as a witness in

---

[8]  Plaintiff also argues that the requested information will show if the government "regularly offers immunity agreements to drug-smugglers to aid the prosecution of U.S. law enforcement officers."  (See Plaintiff's Opp. at 16; Plaintiff's Motion at 11.)  It is unclear how the requested information pertaining to Aldrete-Davila's immunity agreement would shed any light on how the government "regularly" offers immunity agreements.  Moreover, plaintiff has failed to even allege government misconduct involving Aldrete-Davila's immunity agreement. The D.C. Circuit ruled in Oguaju v. United States, 288 F.3d 448 (D.C. Cir. 2002) that even if the requested records revealed wrongdoing in the requester's case, "exposing a single, garden-variety act of misconduct would not serve the FOIA's purpose of showing 'what the Government is up to.'" Oguaju at 451 (citing Reporters Comm. at 780).

that prosecution. More importantly, plaintiff has failed to make a meaningful evidentiary showing of public interest as required by <u>Favish</u>. Plaintiff has merely stated that the requested records will help answer "questions surrounding DOJ's official activities." (<u>See</u> Plaintiff's Opp. at 16; Plaintiff's Motion at 11.) If a requester fails to assert a public interest purpose in disclosure, even a less-than-substantial invasion of another's privacy is unwarranted. <u>See</u> <u>King v. U.S. Dep't of Justice</u>, 586 F. Supp 286, 294 (D.D.C. 1983), <u>aff'd</u> 830 F.2d 210 (D.C. Cir. 1987). Clearly, plaintiff has not even attempted to meet the public interest standard set forth in <u>Favish</u>.[9]

## III. The Segregability Analysis

Plaintiff argues that the FOIA requires DOJ to perform a segregability analysis of the responsive records and release all non-exempt information, which DOJ has failed to do in this case. (<u>See</u> Plaintiff's Opp. at 17; Plaintiff's Motion at 11.) The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Plaintiff's argument fails to acknowledge that a categorical denial does not require an individualized balancing of interests; therefore, a document-by-document review is not conducted.

As stated above, the <u>Reporters Comm.</u> decision announced the Court's approval of categorical withholding under Exemption 7C. <u>See</u> <u>id.</u> at 777. This decision held further that "the provisions regarding segregability, *in camera* inspections, and burden of proof do not by themselves mandate a case-by-case balancing." <u>Id.</u> at 778. It follows that when an agency categorically denies

_____

[9] To the extent that any public interest in disclosure of the requested records can be found, this interest has already been satisfied by the affirmative disclosures of case-related information by the DOJ regarding the prosecution of U.S. Border Patrol Agents Ramos and Compean, which includes the Internet posting of the Ramos/Compean trial transcripts on the USAO's for the Western District of Texas public website at www.usdoj.gov/usao/txw.

access to information pursuant to Exemptions 6 & 7(C), which by its nature does not include a document-by-document review, the usual segregability analysis cannot be conducted.

In this case, Plaintiff's request seeks access to very specific information, namely, any communications between DOJ and the Government of Mexico and between the Departments of State and Homeland Security "concerning Osbaldo Aldrete-Davila;" the participation of DOJ in coordinating, facilitating, and/or approving the lawful entry(ies) of "Osbaldo Aldrete-Davila" into the United States; all records related to agreements granting any form of immunity to "Osbaldo Aldrete-Davila;" and, records detailing the terms and conditions permitting "Osbaldo Aldrete-Davila" to lawfully enter the United States. (See Plaintiff's Opp. at 3; Plaintiff's Motion at 1-2.) Plainly, the focus of plaintiff's request is Osbaldo Aldrete-Davila, and only Osbaldo Aldrete-Davila. There is no reasonable way to segregate the requested material to protect Aldrete-Davila's privacy because all of the information requested pertains solely to him..[10]   See Schonberger v. Nat'l Transp. Safety Bd., 508 F. Supp. 941, 945 (1981) (finding that there is no reasonable way to segregate the material to protect privacy because it pertains solely to one individual ); see also Cotton v. Adams, 798 F. Supp. 22, 27 (D.D.C. 1992) (adopting Schonberger rationale as to segregability).  For these reasons, the responsive material cannot reasonably be redacted in a way that would protect Aldrete-Davila's privacy.

---

[10]  The strong privacy interest inherent in a third party's criminal law enforcement file is similar to the strong privacy interest in a third party's medical file.  Reasonable segregation of a medical file is hampered by the same concern for protecting the individual's privacy interest in the file, as when protecting the individual's privacy interest in his or her law enforcement file.

## Conclusion

For the foregoing reasons, and based upon the entire record herein, defendant respectfully submits that its Cross-Motion for Summary Judgment should be granted and that plaintiff's Motion for Partial Summary Judgment should be denied.

Respectfully submitted,

/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/_____
BLANCHE L. BRUCE, D.C. BAR # 960245
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4220
Washington, D.C. 20530
(202) 307-6078


Of Counsel
Karen Finnegan
U.S. Department of Justice