UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC., )
)
Plaintiff, )
)
v. ) Civil Case No. 07-506 (RJL)
)
U.S. DEPARTMENT OF HOMELAND )
SECURITY *et al.*, )
)
Defendants. )

## MEMORANDUM OPINION
(September 9, 2010) [#55, #59]

Plaintiff Judicial Watch, Inc. ("Judicial Watch") filed this Freedom of Information Act ("FOIA") lawsuit against the U.S. Department of Homeland Security ("DHS"), the U.S. Department of Justice ("DOJ" or "defendant"), and the U.S. Department of State ("State Department").[1] Before the Court are plaintiff's and DOJ's cross-motions for summary judgment. Upon review of the pleadings, the entire record, and the applicable law, defendant's motion is GRANTED, and plaintiff's motion is DENIED.

## BACKGROUND

On January 24, 2007, Judicial Watch submitted a FOIA request to the defendant agencies seeking certain records concerning Osbaldo Aldrete-Davila ("Aldrete-Davila"), a Mexican national who testified for the Government in the prosecution of two border patrol agents, Ignacio Ramos ("Ramos") and Jose Alonso Compean ("Compean").

---

[1] The parties stipulated to dismissal of the claims against the State Department and DHS. *See* Joint Stip. of Partial Dismissal, Oct. 26, 2007 [#22]; Joint Stip. of Partial Dismissal, May 20, 2008 [#41].

1

Compl. ¶¶ 7-9. Although the defendant agencies were required to respond to this FOIA request within twenty days, *see* 5 U.S.C. § 552(a)(6)(A)(i), they failed to produce any responsive records within that time frame. Compl. ¶¶ 10-12. Accordingly, on March 16, 2007, Judicial Watch brought suit in this Court seeking to compel the defendant agencies to produce the records requested and to pay all attorney's fees and costs. Compl. at 5-6.

On June 15, 2007, the Executive Office for United States Attorneys (the "EOUSA"), a component of DOJ, informed plaintiff that it was withholding records pursuant to FOIA Exemptions 6 and 7(C) and Privacy Act Exemption (j)(2). Def.'s Statement of Mat. Facts ("Def.'s Stat.") ¶ 10. On November 9, 2007, plaintiff filed a motion for partial summary judgment asking this Court to order DOJ to search for and produce all non-exempt responsive records and to create a *Vaughn* index of all exempt records. DOJ filed a cross-motion for summary judgment on March 21, 2008, asserting that it could withhold the documents under FOIA Exemptions 6 and 7(C). Defendant argued that it did not need to conduct a document-by-document review because any law enforcement record mentioning Aldrete-Davila would be categorically exempt from disclosure, claiming that the privacy interest in the types of documents requested by Judicial Watch typically outweighed the public interest in their release. On February 25, 2009, the Court granted plaintiff's motion and denied defendant's cross-motion. *See Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 94 (D.D.C. 2009). The Court ordered defendant to search for and produce any non-exempt responsive records and to compile a *Vaughn* index for all exempt records. *See id.*

On August 24, 2009, the EOUSA made a supplemental release of four pages of

material, consisting of public information pertaining to Aldrete-Davila. Def.'s Stat. ¶ 12. The EOUSA withheld in full thirty-five pages of material pursuant to FOIA Exemptions 2, 5, 6, and 7(C), 5 U.S.C. §§ 522(b)(2), (b)(5), (b)(6), & (b)(7)(C), as well as Privacy Act Exemption (j)(2), 5 U.S.C. §522a(j)(2). *See id.*; Def.'s Ex. I. On November 4, 2009, DOJ, on behalf of the EOUSA, filed a Renewed Motion for Summary Judgment. Plaintiff filed a Cross-Motion for Partial Summary Judgment on December 7, 2009.

## ANALYSIS

### I. Standard of Review

Summary judgment shall be granted when the record demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing same). In a FOIA case, an agency bears the burden of establishing that the search was adequate and that each responsive document is either produced, unidentifiable, or exempt from production. *See Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). In this case, Judicial Watch does not contest the adequacy of DOJ's search for responsive documents or the applicability of Exemption 2, as asserted by DOJ with respect to portions of withheld documents. Plaintiff does, however, dispute the applicability of FOIA Exemptions 5, 6, and 7(C), and Privacy Act Exemption (j)(2), as asserted by defendant.

The Court's review of an agency's justification for non-disclosure is *de novo*, *see* 5 U.S.C. § 552(a)(4)(B), but the Court "may rely on affidavits or declarations submitted by the agency, if those documents describe 'the justifications for non-disclosure with

reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Suzhou Yuanda Enter., Co. v. U.S. Customs & Border Prot.*, 404 F. Supp. 2d 9, 12 (D.D.C. 2005) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). Here, DOJ submitted a *Vaughn* index with their Renewed Motion for Summary Judgment, *see* Def.'s Mot. Attach. 1, and a revised *Vaughn* index with their Opposition to plaintiff's Cross-Motion for Summary Judgment, *see* Def.'s Opp'n Ex. A (hereinafter, "*Vaughn* Index"), the latter of which is referenced in this Opinion. DOJ also submitted three declarations detailing its search for responsive documents and providing further explanations for its decision to withhold certain documents. *See* Def.'s Mot. Attach. 3, Finnegan Decl., Nov. 2, 2009; Def.'s Mot. Attach. 4, Durbin Decl., Oct. 26, 2009; Def.'s Mot. Attach. 5, Swain Decl., Aug. 21, 2009. For the following reasons, I find there are no genuine issues of material fact as to the validity of defendant's application of the exemptions in this case.

## II. FOIA Exemption 5

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). For a document to qualify for this exemption, "it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Courts have incorporated civil discovery privileges into this exemption, such as attorney work-

product, attorney-client privilege, and what is called the "deliberative process" privilege. *See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148-49 (1975); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). In this case, the defendant asserts the deliberative process privilege for documents 4-9, 11-28, 30, 44, 46, and 51; the attorney-client privilege in conjunction with the deliberative process privilege for document 32; and attorney work-product in conjunction with the deliberative process privilege for documents 1, 3, 45, 47-49, and 52-54.[2] *See* Def.'s Mot. 16-17.

### A. Deliberative Process Privilege

The deliberative process privilege exempts from disclosure those documents that contain deliberations comprising part of a process by which governmental decisions and policies are made. *See Klamath*, 532 U.S. at 8. The purpose of the deliberative process privilege is to protect the decision-making process of government agencies and to encourage "'the frank discussion of legal and policy issues' by ensuring that agencies are not 'forced to operate in a fishbowl.'" *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)). Advice, recommendations, and opinions that are part of the decision-making process are protected from disclosure as long as they are "predecisional." *See Sears*, 421 U.S. at 151-53. Thus, "[d]ocuments which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the

---

[2] Judicial Watch does not contest the withholding of document 46, which is marked as "non-responsive" in the *Vaughn* Index.

views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States*, 617 F.2d at 866. Accordingly, "communications made after the decision and designed to explain it" are not covered by this privilege. *Sears*, 421 U.S. at 152.

Here, DOJ asserts the deliberative process privilege over email messages involving recommendations and evaluations for how to respond to Congressional and media requests for information on Aldrete-Davila's legal entry into the United States and the grant of immunity to him. *See* Finnegan Decl. ¶¶ 30-31. These email messages were both intra-agency communications among employees of the U.S. Attorneys Offices ("USAOs") and inter-agency email messages among employees of USAOs, DOJ's Offices of Public Affairs and Legislative Affairs, and DHS's Office of the Inspector General ("OIG") and the Bureau of Customs and Border Protection. *Id.*

The emails discussing the grant of immunity to Aldrete-Davila are from 2006 and later. *See Vaughn* Index Doc. Nos. 6, 13-17. Plaintiff argues that because they post-date the original grant of immunity in 2005, they cannot be pre-decisional. *See* Pl.'s Cross-Mot. 7. However, DOJ indicates that these documents contain discussions of how to respond to inquiries from the press and Congress. *See* Finnegan Decl. ¶ 31. More specifically, Aldrete-Davila was captured for smuggling drugs subsequent to the Ramos-Compean trial, giving rise to the question whether his original grant of immunity would apply. *See* Def.'s Opp'n 4. Because the handling of Aldrete-Davila's case was controversial, it is understandable that, as the defendant asserts, numerous discussions involving the controversy took place and required multiple decisions. Furthermore,

6

because these documents are generated as part of a continuous process of agency decision making, viz., how to respond to on-going inquiries, they are pre-decisional and, given their deliberative nature, I find they were properly withheld under Exemption 5. *See Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1196 (D.C. Cir. 1991) (recognizing that smaller policy decisions may make up major policy positions); *see also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36, 45 (D.D.C. 2007) (finding agency's declaration that the withheld materials concerned deliberations regarding on-going response to Hurricane Katrina to be sufficient identification of deliberative process involved); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 83 (D.D.C. 2007) (finding discussions regarding how to respond to a media report commenting on agency's policies was predecisional and deliberative).

Similarly, although the emails discussing Aldrete-Davila's legal entry into the United States post-date Aldrete-Davila's incarceration in February 2006, *see Vaughn* Index Doc. Nos. 4-5, 7-9, 11-12, 18-23, 44, 51, these documents discuss how to respond to on-going inquiries from the press and Congress regarding Aldrete-Davila's multiple entries into the United States. *See* Finnegan Decl. ¶ 31; Def.'s Opp'n 5. DOJ also indicated that it withheld Documents 24-28 and 30, which contained consultations with DHS OIG, because they contained deliberations among government personnel for how to respond to Congressional and media inquiries related to the investigation and prosecution of Ramos and Compean. *See* Finnegan Decl. ¶ 31. Again, Plaintiff's chronological argument that these documents cannot be pre-decisional is unconvincing given the

7

complexity surrounding the defendant's handling of the entire Aldrete-Davila situation. In addition, I agree with defendant's assertion that disclosure of this information is likely to interfere with the candor necessary for open and frank discussions regarding the preferred course of action in responding to these inquiries. *See Coastal States*, 617 F.2d at 866. Accordingly, I uphold the defendant's classification of the documents as subject to the deliberative process privilege and therefore exempt from disclosure under Exemption 5.

### B. Attorney-Client Privilege

The attorney-client privilege encompasses "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). "Its purpose is to assure that a client's confidences to his or her attorney will be protected, and therefore encourage clients to be as open and honest as possible with attorneys." *Coastal States*, 617 F.2d at 862. In this case, defendant asserts the attorney-client privilege, in conjunction with the deliberative process privilege, over Document 32, which consists of email messages from a DHS special agent to a DHS OIG attorney seeking confidential legal advice regarding the way in which Aldrete-Davila entered into the United States. *See* Finnegan Decl. ¶ 32; *Vaughn* Index Doc. No. 32. Because such communications clearly fall within the protection of the attorney-client privilege, I find that this document was properly exempted from disclosure.

### C. Attorney Work-Product

The attorney work-product privilege protects disclosure of materials prepared by

attorneys, or non-attorneys supervised by attorneys, in contemplation of litigation, that reveal information about an attorney's preparation and strategy relating to a client's case. *See Coastal States*, 617 F.2d at 866. This privilege aims to protect the adversary trial process by providing attorneys a "'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Id.* at 864. Here, defendant invokes the attorney work-product privilege, in conjunction with the deliberative process privilege, over records that were "prepared by or at the request or direction of an AUSA, in anticipation of or during litigation." *See* Finnegan Decl. ¶ 33. DOJ attests that these records reflect trial preparation, trial strategy, interpretations, and personal evaluations and opinions in connection with the criminal prosecution of Ramos and Compean. *See id.* More specifically, the records include evaluations and interpretations regarding the extent of Aldrete-Davila's immunity in connection with prosecution of Ramos and Compean; draft court papers and a prosecution memorandum; and deliberations regarding how to respond to media inquiries, including discussion of witness credibility and biases, attorney opinions on Aldrete-Davila's entry into the United States, and the extent of his immunity, in connection to the prosecution of Ramos and Compean. *See Vaughn* Index Doc Nos. 1, 3, 45, 47-49, 52-54.

It is clear that most of these documents clearly fall within the realm of attorney work-product, as they involve the details of an AUSA's preparation for a criminal prosecution. *See Coastal States*, 617 F.2d at 864. Perhaps plaintiff's strongest argument against DOJ's assertion of the attorney work-product privilege is that Documents 52-54 are email messages that were sent after the conclusion of the Ramos-Compean

prosecution. *See* Pl.'s Reply 6. As such, Judicial Watch argues that these documents could not have been prepared in anticipation of or during that litigation. *See id.* However, defendant's *Vaughn* Index indicates that although the discussions of how to respond to media and Congressional requests in Documents 52-54 did occur subsequent to the trial, those discussions involved "deliberations prior" in connection with the Ramos-Compean prosecution. *Vaughn* Index Docs. 52-54. In other words, Documents 52-54 contained internal deliberations that included consideration of privileged attorney work-product from the prior prosecution. *See* Finnegan Decl. ¶ 33. Thus, I agree that these documents were exempted from disclosure under the attorney work-product privilege in conjunction with the deliberative process privilege. Accordingly, I find that the DOJ properly applied Exemption 5 to the documents at issue in this case.

## II. FOIA Exemption 7(C)[3]

FOIA Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of the individuals mentioned in the records against the public interest in disclosure. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489

---

[3] The DOJ cited Exemption 6 in conjunction with Exemption 7(C). *See* Def.'s Mot. 28. Because the Court finds that the defendant properly asserted Exemption 7(C) over the withheld information, it need not determine whether that same information is protected under Exemption 6. *See Singh v. Fed. Bureau of Investigation*, 574 F. Supp. 2d 32, 47 n.4 (D.D.C. 2008). Similarly, the Court also need not consider the applicability of the Privacy Act to this case.

U.S. 749, 763 (1989). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773). The public interest "sought to be advanced [must be] a significant one[,] more specific than having the information for [one's] own sake." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

In this case, defendant asserts Exemption 7(C) over the information contained in documents that fall into four categories: (1) personal information pertaining to Aldrete-Davila, *see Vaughn* Index Doc Nos. 1, 3-10, 12-23, 36, 44, 50; (2) names and identifying data of federal law enforcement and support personnel, *see id.* Doc. Nos. 24-35, 40, 43, 45-46, 51; (3) names and/or identifying information pertaining to third parties merely mentioned, *see id.* Doc Nos. 36, 38-41, 46; and (4) names and/or identifying information pertaining to third parties of investigative interest to the Government, *see id.* Doc. Nos. 34, 47-49, 51-53. These records "were all compiled during the conduct of a criminal investigation and prosecution by the DHS OIG and the USAO," Finnegan Decl. ¶ 36, and it is undisputed that they meet the threshold for Exemption 7(C). Furthermore, I find that the defendant properly evaluated the privacy interest inherent in each piece of withheld information against the public interest in shedding light on DOJ's performance of its statutory duties as required by Exemption 7(C). How so?

As to the personal information pertaining to Aldrete-Davila, the defendant has identified a strong privacy interest in non-public details pertaining to the grant of

11

immunity given to him as a government witness, as well as non-public details of his entry into the United States in the context of a government prosecution. *See* Finnegan Decl. ¶ 38. I agree with the DOJ that releasing these previously undisclosed details could reasonably be expected to result in stigmatizing public attention and embarrassment by engendering comment and speculation about Aldrete-Davila. *See* Finnegan Decl. ¶ 41; *see also The Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) (stating that witnesses and informants who provided information during the course of an investigation have an "obvious privacy interest cognizable under Exemption 7(C)"); *Fitzgibbon v. Cent. Intelligence Agency*, 911 F.2d 755, 767 (D.C. Cir. 1990) ("It is surely beyond dispute that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.") (internal quotation marks omitted). Despite Judicial Watch's argument to the contrary, the fact that Aldrete-Davila has been mentioned in previously disclosed law enforcement records and published reports does not obviate all of his rights to privacy. *See Fitzgibbon*, 911 F.2d at 767 (citing *Reporters Comm.*, 489 U.S. at 762-64); *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1255 (D.C. Cir. 1981). Furthermore, the Court agrees with defendant that the passage of time has not diluted the privacy interest at stake and, if anything, has actually increased his privacy interest as the events surrounding the Ramos-Compean prosecution have faded from memory. *See* Finnegan Decl. ¶ 39.

Conversely, plaintiff has failed to identify a sufficient public interest in disclosure of Aldrete-Davila's personal information that would outweigh his privacy interests. Indeed, Judicial Watch has made *no* showing of a "significant" public interest as is

required, *see Favish*, 541 U.S. at 172, only obliquely asserting that the information sought would "open[] up government action to the light of public scrutiny." Pl.'s Cross-Mot. 15. Plaintiff has not alleged any government misconduct in the Ramos-Compean prosecution nor identified any other significant reason to disclose Aldrete-Davila's personal information. *See SafeCard Servs., Inc. v. Sec. Exchange* Comm'n, 926 F.2d 1197, 1206 (D.C. Cir. 1991). Therefore, as to that category of information, I find that disclosure would constitute an unwarranted invasion of personal privacy and thus that defendant properly applied Exemption 7(C) to the withheld information.

As to the second category of information, the names and identifying data of federal law enforcement and support personnel, defendant asserts that release of this information "may seriously impair their effectiveness in conducting future investigations," "could trigger hostility towards" these individuals, and could cause them to become "targets of harassing inquiries for unauthorized access to investigative information." Finnegan Decl. ¶¶ 45-46. I agree. It is well-established that information identifying law enforcement and support personnel can be withheld pursuant to Exemption 7(C). *See Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 96 (D.D.C. 2009); *Singh*, 574 F. Supp. 2d at 49. Once again, Judicial Watch has not asserted a significant public interest that would be served in the disclosure of this information. Therefore, DOJ properly asserted Exemption 7(C) over this information as well.

As to the final two categories of information, which pertain to third parties either merely mentioned or of investigative interest to the government, the privacy interests at stake are substantial. For third parties merely mentioned, I agree with the DOJ that "[t]he

13

mention of their names in the context of a federal criminal investigation could cast them in an unfavorable or negative light if released to the public." Finnegan Decl. ¶ 47. For third parties who were of investigative interest, I also agree with defendant that "[t]o release the identity of these individuals to the public as a subject or suspect of a criminal investigation could subject them to harassment or embarrassment, as well as undue public attention." *Id.* ¶ 49. Furthermore, releasing this information serves no public interest because these email addresses would not reveal *agency* conduct. *See Nation Magazine*, 71 F.3d at 894 (quoting *Reporters Comm.*, 489 U.S. at 773). To the contrary, release of the withheld information would constitute a clearly unwarranted invasion of privacy of private citizens. *See Amuso*, 600 F. Supp. 2d at 96; *Singh*, 574 F. Supp. 2d at 49. Thus, the DOJ also properly withheld this information under Exemption 7(C). Finally, the Court finds that all reasonably segregable, non-exempt material was provided to Judicial Watch. *See* Finnegan Decl. ¶ 57.

## CONCLUSION

For all of the foregoing reasons, defendant's Renewed Motion for Summary Judgment is GRANTED, and plaintiff's Cross-Motion for Partial Summary Judgment is DENIED. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge